## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KANI LITTLE; HECTOR RAMOS;  :
JAMES PATTERSON, on their own  :
Behalf and on behalf of all others  :
similarly situated,  :
                Plaintiffs  :
  :    Civil Action No. 4:24-cv-02169
    v.  :
  :    **JURY TRIAL DEMANDED**
DAUPHIN COUNTY; GREGORY  :
BRIGGS, Warden of Dauphin County :
Prison, in his Individual Capacity;  :
LIONEL PIERRE, Chief Deputy  :
Warden, in his Individual Capacity,  :
ROGER LUCAS, Custody Major,  :
In his Individual Capacity; MARK  :
SKELTON, Lieutenant, in his  :
Individual Capacity; and JOHN DOES:
No. 1-12, in their Individual  :
Capacities,  :
              Defendants  :

### BRIEF IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) ON BEHALF OF DEFENDANTS DAUPHIN COUNTY, GREGORY BRIGGS, LIONEL PIERRE, ROGER LUCAS, AND MARK SKELTON, ONLY

Respectfully submitted,

**Lavery Law**

Date:  March 18, 2025

*/s/ Frank J. Lavery Jr.*
Frank J. Lavery Jr., Esquire
Atty. I.D. #42370
*/s/ Andrew W. Norfleet*
Andrew W. Norfleet, Esquire
Atty. I.D. #83894
225 Market Street, Suite 304

Harrisburg, PA 17101-2126
(717) 233-6633 (telephone)
(717) 233-7003 (facsimile)
flavery@laverylaw.com
anorfleet@laverylaw.com

## **Table of Contents**

Table of Authorities ................................................................................................ ii

I.     STATEMENT OF FACTS AND PROCEDURAL HISTORY ....................... 1

II.    STANDARD ................................................................................................ 2

III.   QUESTIONS PRESENTED ........................................................................ 4

IV.   ARGUMENTS ............................................................................................. 4

   1.  This Court Should Deny Plaintiffs' Request For Class Certification And Should Grant The Moving Defendants' Motion To Dismiss ........................ 6

   2.  Plaintiffs' Fourteenth Amendment Claim Of Alleged Deprivation Of Basic Human Needs Against Defendants Briggs And Pierre Fail .......................... 12

   3.  Plaintiff Patterson's Section 1983 Deliberate Indifference Claim Under The Eight Amendment Against Defendants Briggs And Pierre Fail ................... 16

   4.  Plaintiffs' Section 1983 First Amendment, Free Exercise Of Religion Claim Against Briggs And Pierre Fail ..................................................................... 19

   5.  Plaintiffs' Religious Land Use And Institutionalized Persons Act Claims Against Dauphin County Fail. ......................................................................... 22

   6.  Plaintiff Little's Section 1983 Excessive Force Claim Against Pierre, Lucas, And Skelton Fail. .......................................................................................... 24

   7.  Plaintiffs' Section 1983 Municipal Liability Claim Against Dauphin County Fail. .................................................................................................................. 27

   8.  Plaintiffs Little And Ramos' Claims Under Title II Of The Americans With Disabilities Act And The Rehabilitation Act Fail ........................................ 29

V.    CONCLUSION ............................................................................................ 31

CERTIFICATION PURSUANT TO MIDDLE DISTRICT

RULE L.R. 7.8(b)(3) .................................................................................... 32

CERTIFICATE OF SERVICE ............................................................................ 33

i

## <u>Table of Authorities</u>

## Cases

*Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009)...................................................................3

*Baker v. Monroe Township*, 50 F.3d 1186 (3d Cir. 1995).........................................26

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397 (1997) .........28

*Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) ................12

*Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249 (3d Cir. 2010) ........................17

*Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247 (3d Cir. 2014) ............................29

*Byrd v. Aaron's Inc*., 784 F.3d 154 (3d Cir. 2015).................................................7

*Carrera v Bayer Corp*., 727 F.3d 300 (3d Cir. 2013).........................................9, 10

*Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210 (3d Cir. 2015).........................18

*Colburn v. Upper Darby Twp.*, 838 F.2d 663 (3d Cir, 1988)..................................14

*Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011)....28

*Cutter v. Wilkinson*, 544 U.S. 709, 125 S. Ct. 2113, 161 L. Ed. 2d 1020 (2005) ...22

*DeHart v. Horn*, 227 F.3d 47 (3d Cir.  2000)..........................................................19

*Doe v. Luzerne Cty.*, 660 F.3d 169 (3d Cir. 2011)..................................................28

*Dooley v. Wetzel*, 957 F.3d 366 (3d Cir. 2020) .....................................................15

*Estate of Roman v. City of Newark*, 914 F.3d 789 (3d Cir. 2019)..........................28

*Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970,
    128 L. Ed. 2d 811 (1994) ......................................................................... 17, 18

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ......................................3

*Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285 (3d Cir. 2019)..................................30

*Gonzalez v. Corning*, 885 F.3d 186 (3d Cir. 2018) ................................................4

*Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1997) .............................................. 13, 16

*Holden v. Wetzel*, 2021 U.S. Dist. LEXIS 53124, 2021 WL 1090638
    (W.D. Pa. Apr. 20, 2020)....................................................................................30

*Holt v. Hobbs*, 574 U.S. 352, 135 S. Ct. 853, 190 L. Ed. 2d 747 (2015) ...............22

*Hubbard v. Taylor*, 399 F.3d 150 (3d Cir. 2005)........................................ 12, 13, 18

*In re Modafinil Antitrust Litig*., 837 F.3d 238 (3d Cir. 2016) ..................................7

*Islaam v. Kubicki*, No. 20-1917, 838 Fed. Appx. 657, 2020 U.S. App. LEXIS
    38178, 2020 WL 7233089 (3d Cir. Dec. 8, 2020)................................................13

*Jacobs v. Cumberland Cty.*, 8 F.4th 187 (3d Cir. 2021)..........................................25

*Jones-El v. Berg*, No. 00-C-421-C 2001 U.S. Dist. LEXIS 25625
    (W.D. Wisc. 2001)..............................................................................................10

*Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466,
    192 L. Ed. 2d 416 (2015) ........................................................................... 25, 26

*Mammana v. Fed. Bureau of Prisons*, 934 F.3d at 373 (3d Cir. 2019) ...................17

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) ...........................9, 10

*Monell v. Dept. of Social Services*, 426 U.S. 658 (1978) ........................................11

*Newton v. Merrill Lynch, et al.*, 259 F.3d 154 (3d Cir. 2001) ...................................4

*Peterkin v. Jeffes*, 855 F.2d 1021 (3d Cir. 1998) .....................................................16

*Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250 (3d Cir. 1994) ..........15

*Proctor v. James*, 811 F. App'x 125 (3d Cir. 2020)..................................................13

*Reinig v. RBS Citizens, N.A.*, 912 F.3d 115 (3d Cir. 2018) .......................................7

*Reitz v. Cty. Of Bucks*, 125 F.3d 139 (3d Cir. 1997) ...............................................29

*Rhodes v. Chapman*, 452 U.S. 337, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981) . 16, 17

*Ricks v. Shover*, 891 F.3d 468 (3d Cir. 2018).........................................................18

*Robinson v. Danberg*, 673 F. App'x 205 (3d Cir. 2016)..........................................25

*Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988)..............................................26

*Rosario v. Strawn*, 2020 U.S. Dist. LEXIS 135559 (W.D. Pa. July 29, 2020) .......27

*Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).........16

*Smith v. Mensinger*, 293 F.3d 641(3d Cir. 2002) ....................................................13

*Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L. Ed. 2d 64 (1987)..................19

*Van Buren v. Abraxas Youth & Fam. Servs.*, No. 2:22-CV-00499,
    2024 U.S. Dist. LEXIS 2024 WL 510084 (W.D. Pa. Feb. 9, 2024) .....................9

*Waterman v. Farmer*, 183 F.3d 208 (3d Cir. 1999)..................................................20

*Whitley v. Albers*, 475 U.S. 312 (1986) ..................................................................11

*Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) .... 16, 17

*Wood v. Williams*, 568 Fed. Appx 100 (3d Cir. 2014) ...........................................29

## Statutes

42 U.S.C. § 1983 ........................................................................................................4

42 U.S.C. § 2000 ......................................................................................................22

42 U.S.C. § 12132 ....................................................................................................30

## Rules

Fed. R. Civ. P. 12 ..................................................................................................2, 3

Fed. R. Civ. P. 23 .......................................................................................... 6, 7, 9, 11

## I.   <u>STATEMENT OF FACTS AND PROCEDURAL HISTORY</u>

On December 17, 2024, Plaintiffs filed a Complaint seeking certification of a Rule 23(b)(3) Class; a Fourteenth Amendment and Eighth Amendment Subclass; and a Mental Health Subclass.  (DOC.1, p.40).  Plaintiffs seek declaratory judgment for the alleged violation of constitutional and statutory rights; compensatory damages and punitive damages against all Defendants except Dauphin County; reasonable costs and attorney's fees; and interest.  *Id*.

Dauphin County, Warden Gregory Briggs, Chief Deputy Warden Lionel Pierre, Major Roger Lucas, and Lieutenant Mark Skelton are named Defendants. (DOC. 1, p.1).  Plaintiffs challenge the constitutionality of various conditions of confinement at the Dauphin County Prison ("DCP") including the alleged deprivation of basic human needs on their behalf and of the suggested class and the Fourteenth Amendment Subclass against Briggs and Pierre (DOC. 1, ¶¶263-270); claims of deliberate indifference on behalf of James Patterson and the Eighth Amendment Subclass against Briggs and Pierre (*Id*. at ¶¶271-277); a claim under Title II of the ADA against  Dauphin County (*Id*. at ¶¶278-289); alleged violations of the Rehabilitation Act on behalf of Plaintiffs Little and Ramos against Dauphin County (*Id*. at ¶¶290-294); a free exercise of religion claim on behalf of all Plaintiffs against Briggs and Pierre (*Id*. at ¶¶295-302); a Religious Land Use and Institutionalized Persons Act (RLUIPA) claim against Defendant Dauphin County

(*Id*. at ¶¶303-313);  a municipal liability claim on behalf of all Plaintiffs and the Class against Dauphin County (*Id*. at ¶¶314-318); and a claim for the alleged use of excessive force on behalf of Plaintiff Little against Pierre, Lucas, and Skelton (*Id*. at ¶¶319-323).

On February 18, 2025, the Moving Defendants filed a Motion to Dismiss Plaintiffs' Complaint. (DOC.16).   On March 3, 2025, this Court granted the Defendants' Motion for Extension of Time to File a Brief in Support (DOC.19) and granted the Defendants' Motion for Leave to Exceed the Word Limit of Local Rule 7.8.  (DOC.20).

Plaintiffs moved for class certification before Moving Defendants filed their Motion to Dismiss, before an Answer to the Complaint was filed, and before the exchange of discovery.  Moving Defendants submit that discovery will show that the administration at DCP was pursuing a legitimate government interest in conditions at DCP caused by inmates smoking synthetic marijuana, including some of the named Plaintiffs.  Moving Defendants also submit that discovery will show that the named Plaintiffs are not proper class representatives and/or that the Plaintiffs cannot demonstrate that class certification is appropriate.  The Moving Defendants oppose class certification.

## II.    <u>STANDARD</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant

to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not require probability, but the litigant must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Facts "merely consistent with" liability do not satisfy this standard. *Id.* At the motion to dismiss stage, the court accepts the complaint's factual allegations as true, but the court does not accept a plaintiff's legal conclusions. *Id.* District Courts must conduct the following analysis when addressing a motion to dismiss a complaint:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions. [*Iqbal*, 129 S.Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips v. Cnty. Of Allegheny,* 515 F.3d 224, 234–35 (3d Cir. 2008).

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

The essential prerequisites for maintaining a class action are set forth under Fed. R. Civ. P. Rule 23(a) which requires, among other things, a showing that (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").  See *Newton v. Merrill Lynch, et al*., 259 F.3d 154, 181 n.25 (3d Cir. 2001);  see also, *Gonzalez v. Corning*, 885 F.3d 186, 192 (3d Cir. 2018).   The party seeking class certification has the burden of establishing each element of Rule 23 by a preponderance of the evidence. *Id*.

## III.   <u>QUESTIONS PRESENTED</u>

1. Should This Court Deny Plaintiffs' Proposed Class And Subclasses Based Only on Plaintiffs' Request for Certification Included in Plaintiffs' Complaint?

   Suggested Answer:  Yes.

2. Should this Court Deny Plaintiffs' Section 1983 Claims Against the Moving Defendants?

   Suggested Answer:   Yes

## IV.   <u>ARGUMENTS</u>

Plaintiffs bring claims against the Moving Defendants alleging violations of their civil rights under 42 U.S.C. § 1983.  Plaintiffs allege that in late 2023, officials

in charge of DCP believed incarcerated people in the Restricted Housing Units ("RHU") were smoking synthetic marijuana. (DOC.1, ¶1).[1] Plaintiffs also claim that, in recent years, DCP has experienced serious issues with drugs entering the Prison, and the Prison administration has implemented several measures to address the issue. (DOC.1, ¶¶42-43, respectively).[2] Plaintiffs claim that, despite the efforts of the DCP administration, drug use at DCP remains a problem. *Id*. at 46. Without factual support, Plaintiffs allege that the "source" of drugs in DCP is the Prison staff. (DOC.1 at ¶47). This is the type of conclusory statement this Court is not required to accept as true. Regardless, accepting the claim as true for this motion only, inmates smoking synthetic marijuana on the RHU created a safety risk for the inmates on the RHU, the security staff, and third-party medical staff. Measures to stop inmates from smoking marijuana on the RHU served a legitimate government purpose - safety. While ignoring the legitimate government interest in promoting safety, Plaintiffs state, in conclusory fashion, that unnamed prison officials "got angry." *Id*. ¶3. Plaintiffs allege "Defendants" confiscated their legal paperwork, cut off their communication with loved ones on the outside, and deprived inmates of

---

[1] Perhaps realizing that the inmates using synthetic marijuana might include some of the named Plaintiffs, they add "to the extent this was true" as a qualifier.

[2] Plaintiffs state that in 2021, DCP hired a third-party company to process and scan personal mail outside of the facility and upload electronic copies to the incarcerated person's tablet.

necessities from toilet paper to showers to religious texts. *Id.* at ¶7. Next, in conclusory fashion, Plaintiffs claim an alleged "campaign of collective punishment" existed to stop the use of synthetic marijuana at DCP. *Id.* at ¶13.

Where claims are made against the individual Moving Defendants, Plaintiffs' claims are unsupported by factual allegations and rely on "belief" to insufficiently plead their claims. For the reasons discussed below, Plaintiffs' claims against the Moving Defendants should be dismissed with prejudice and the Court should deny Plaintiffs untimely and improper request for class certification.

### 1. This Court Should Deny Plaintiffs' Request For Class Certification And Should Grant The Moving Defendants' Motion To Dismiss.

Plaintiffs improperly request that this Court certify their Complaint as a class action. (DOC.1, p.40). Plaintiffs' request should be denied. Pursuant to the Local Rules of Court for the Middle District, a complaint shall bear next to its caption the legend, "Complaint-Class Action." LR 23.2 The caption of Plaintiffs' Complaint does not designate the case as a class action. (See, DOC.1) Further, LR. 23.3 requires that within ninety (90) days after filing a complaint in a class action, unless this period is extended on motion for good cause appearing, the plaintiff(s) shall move for a determination under subdivision (c)(1) of Fed.R.Civ.P.23, as to whether the case is to be maintained as a class action. Plaintiffs did not motion for class certification after filing their Complaint. Instead, the Plaintiffs request class certification in their Complaint. The Moving Defendants should not be forced to

litigate the issue of class certification until the Plaintiffs file a motion for certification.

Out of an abundance of caution, the Moving Defendants will preliminarily address the Plaintiffs' premature request for class certification. The Moving Defendants maintain the Plaintiffs' lawsuit fails to satisfy the requirements of Fed. R. Civ. P. 23. See, *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 124-125 (3d Cir. 2018)(additional citations omitted). Class certification is proper only if the court is satisfied that, after rigorous analysis, the plaintiff(s) have established each element of Rule 23 by a preponderance of the evidence. *Id*. at 125 (additional citations omitted). The court must undergo a two-step analysis, assessing first whether the plaintiff(s) has satisfied the prerequisites of Rule 23(a), and, second, if the requirements of Rule 23(b)(1),(2), or (3) have been satisfied. (See, *In re Modafinil Antitrust Litig*., 837 F.3d 238, 248 (3d Cir. 2016)(additional citations omitted)).

Plaintiffs have not shown that the proposed class is so numerous that the joinder of all class members is impracticable. (Fed. R. Civ. P. 23(a)(1)). A plaintiff seeking class certification under Rule 23(b)(3) must establish that the proposed class is ascertainable, that the class is (1) defined with reference to objective criteria; and (2) that there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. *Byrd v. Aaron's Inc*., 784 F.3d 154, 162-63 (3d Cir. 2015)(citations omitted).

Plaintiffs allege the proposed class consists of inmates confined at DCP in units P-3, P-5, and/or P-6 of the RHU at any point from November 16, 2023, to December 19, 2023.[3]   Plaintiffs allege the RHU had a residential capacity of up to sixty-two (62) individuals "at any given time and was mostly full during the relevant period." *Id.* at ¶256.   The Complaint contains no further information regarding the composition of the proposed class.  It is also important to note that Plaintiffs do not allege that all of the members of the proposed class suffered the same alleged injuries or were on RHU for the same period of time.  For example, Plaintiffs claim that the length of time it took for individuals to have their tablets returned to them varied, as did their time "in the hole," when they arrived at the RHU, and the availability of tablets when they were released back into the general population,  (DOC. 1, ¶75).[4] Further, Plaintiffs allege while members of the proposed class allegedly had their hygiene products seized, some proposed members received "indigent grade" soap, toothbrushes, and toothpaste.  *Id.* at ¶82.  Plaintiffs suggest that, for the proposed members who received hygiene products, the issue was not availability, but quality (while not explaining how the perceived lower-quality products amount to a constitutional violation).  *Id.*   Plaintiffs also claim that some of the proposed class

_____

[3] Plaintiffs identify these dates as the "Class Period."  (DOC.1, ¶254).

[4] Plaintiffs allege that different members of the proposed class might have been without tablets for six weeks while others for up to three months.  (DOC. 1, ¶76).

members received their personal belongings back, but others did not. *Id.* at ¶88. Likewise, the proposed inclusion of subclasses further dilutes the alleged numerosity of the asserted class.[5]

Plaintiffs have not produced a reliable estimate for the numerosity of the asserted class and the request for certification under Rule 23(b)(3) fails on the issue of ascertainability. The Plaintiffs are unable to show, by a preponderance of the evidence, that the proposed class is readily ascertainable based on objective criteria and that there is a reliable and feasible mechanism for determining whether putative class members fall within the class definition. See, *Van Buren v. Abraxas Youth & Fam. Servs.*, No. 2:22-CV-00499, 2024 U.S. Dist. LEXIS 2024 WL 510084, at *3 (W.D. Pa. Feb. 9, 2024), citing *Carrera v Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013). The Plaintiffs may not merely propose a method of ascertaining a class without evidentiary support so that the method will be successful. *Id.* citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012) at 306-07. Specifically, Plaintiffs acknowledge that the proposed class is based only "upon information and belief" that the Class and Subclasses are "so numerous" that joinder of all members is impractical. (DOC. 1, at ¶256). In a conclusory fashion, Plaintiffs contend the

---

[5] Pleading in the alternative, Plaintiffs also claim to seek certification pursuant to Fed. R. Civ. P. 23(b)(3) and (c)(5) of one or more of the following subclasses: (i) a Fourteenth Amendment subclass; (ii) an Eighth Amendment subclass; and a (iii) "Mental Health subclass. (DOC. 1, ¶255).

class is ascertainable because "upon information and belief" Defendants maintain records identifying which individuals were housed in each cell in the RHU during the relevant period "thereby making the composition of the class "readily ascertainable." *Id* at ¶262. Plaintiffs' proposed class definition is based on subjective criteria and assumes that each inmate on the RHU during the suggested period was there for more than a minimal period and each inmate suffered the same alleged injuries. It is impractical to believe the Court can ascertain the size of the asserted class (and the injuries each allegedly suffered) without conducting extensive and individual fact-finding. Because Plaintiffs' class definition will require this Court to hold "mini-trials" for each putative class member, Plaintiffs cannot establish ascertainability. (See, *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) citing *Marcus*, 687 F.3d at 593 "[a] plaintiff does not satisfy the ascertainability requirement if individualized fact-finding or mini-trials will be required to prove class membership").

Plaintiffs have failed to allege sufficient common questions of law among the proposed class. Courts have consistently held that class certification should be denied when claims are directed towards the application of unconstitutional conditions to individual class members, rather than the class in general and which will require individual analysis. *Jones-El v. Berg*, No. 00-C-421-C 2001 U.S. Dist. LEXIS 25625 at *38-39 (W.D. Wisc. 2001).

Before this Court can find that an unconstitutional policy, practice, or custom existed under Section 1983, a constitutional violation must have occurred and the Court must determine whether an alleged policy, practice, or custom was the moving force behind the alleged violation. *Monell v. Dept. of Social Services*, 426 U.S. 658, 691 (1978). The Court must then decide whether a prison security measure was applied to cause harm or in a good faith effort to maintain order. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). While Plaintiffs make generalized averments regarding the conditions at DCP, including claims of whether hygiene products were made available to inmates or, if they were, if the inmate disagreed with the quality of the hygiene product. (DOC. 1, ¶¶81-83, 86). Likewise, Plaintiffs allege that the inmates on the RHU were denied writing utensils to complete grievances or medical requests, yet at least one of the representatives acknowledge that they had writing utensils and submitted written grievances. *Id*. at ¶87 and ¶179 ("Mr. Little filed two grievances regarding his treatment"). Plaintiffs have failed to demonstrate why an individualized analysis is not required with respect to the individualized claims of constitutional violations. Likewise, Plaintiffs have not demonstrated that their claims are typical of the claims of the class. (Fed. R. Civ. P. 23(a)(3)). In the alternative, the parties should be permitted to conduct limited discovery with respect to the alleged conditions of confinement before a decision on class certification is made.

This Court should not certify Plaintiffs' Class and Subclasses until Plaintiffs file a motion for certification and the Court can conduct a rigorous analysis after deciding the Moving Defendants' Motion to Dismiss. The Court may determine that some or all of Plaintiffs' claims challenged by the Moving Defendants fail and no constitutional violation occurred, limiting the scope of the claims this Court will ultimately decide when or if Plaintiffs file a Motion for Class Certification.

2. **Plaintiffs' Fourteenth Amendment Claim Of Alleged Deprivation Of Basic Human Needs Against Defendants Briggs And Pierre Fail.**

Plaintiffs allege that Briggs and Pierre deprived them of their rights as pretrial detainees guaranteed by the Fourteenth Amendment by depriving them of electricity, electronic devices, personal belongings, and out-of-cell time. (DOC. 1, ¶¶264, 268). Plaintiffs rely on conclusory statements that Briggs and Pierre acted with deliberate indifference and punitively for punishing individuals housed in RHU. *Id*. at ¶267.

A pretrial detainee's claims regarding conditions of confinement are analyzed under the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 534, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); *Hubbard v. Taylor*, 399 F.3d 150, 166-67 (3d Cir. 2005). There are two types of situations in which conditions of confinement may be unconstitutional. First, a condition of confinement is unconstitutional if it is the result of an **express** intent to punish. *Bell*, 441 U.S. at 538-39. (Emphasis added). Second, the condition of confinement is unconstitutional if it is not rationally related to a legitimate government purpose. *Id.* A district court must look to the totality of

the condition of the specific prison at issue to determine whether condition is rationally related to the legitimate government purpose. *Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008).

Confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of atypical deprivation of prison life necessary to implicate a liberty interest. *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (holding that seven-month confinement in RHU based on false reports did not implicate a protected liberty interest); *see also Islaam v. Kubicki*, No. 20-1917, 838 Fed. Appx. 657, 2020 U.S. App. LEXIS 38178, 2020 WL 7233089, at *2 (3d Cir. Dec. 8, 2020) (federal prisoner failed to state plausible due process claim against correctional officer for placing him in a segregated housing unit for seven months based on false disciplinary reports, absent allegations that prisoner's segregation imposed atypical and significant hardship on the prisoner in relation to the ordinary incidents of prison life); *Proctor v. James*, 811 F. App'x 125, 129 (3d Cir. 2020) (affirming the dismissal of due process claims that stemmed from inmate's disciplinary sanction of 60 days' confinement in the RHU where plaintiff failed to allege conditions that involved an atypical and significant hardship sufficient to create a protected liberty interest); *Griffin v. Vaughn*, 112 F.3d 703, 708-09 (3d Cir. 1997) (placement in administrative segregation for fifteen months

was not an atypical and significant hardship, and did not amount to cruel and unusual punishment).

Here, Plaintiffs allege that for approximately two weeks, electrical power was cut off to the RHU. (DOC. 1, ¶99). For purposes of this motion, only, and without admitting that Plaintiffs' allegation is true, because it is not, this claim, alone, might be sufficient to survive a motion for summary judgment. However, when considering the totality of the circumstances and the goal of stopping the use of synthetic marijuana on RHU, the conditions were not done with an express intent to punish, and the conditions were rationally related to a legitimate government purpose. Other than alleging that prison officials lashed out with a campaign of collective punishment (DOC.1, ¶4), Plaintiffs have offered nothing more to suggest that Briggs or Pierre acted to punish Plaintiffs or that their actions (if there were any) were unreasonable in relation to a legitimate government interest.

Turning to Plaintiffs' claims against Briggs and Pierre, there are generally two ways in which supervisors may be liable for the unconstitutional acts of their subordinates. First, a supervisor's involvement may be shown through personal direction, actual participation in the alleged misconduct, or contemporaneous knowledge of and acquiescence in the alleged misconduct. *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 673 (3d Cir, 1988). The allegations of personal involvement must be particularized, however. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir.

2020) ("Personal involvement requires particular 'allegations of personal direction or actual knowledge and acquiescence.'") (Citations omitted).

First, as to Pierre, and applicable to all of Plaintiffs' Section 1983 claims, the Plaintiffs must demonstrate the alleged conduct in the Complaint was committed by a person or entity acting under color of state law and that such conduct deprived the Plaintiffs of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Plaintiffs must show Pierre was personally involved in the alleged unconstitutional conduct. They do not. Instead, Plaintiffs allege only that Pierre "on information and belief": directed DCP staff to seize tablets and [was] fully aware of the operation (DOC.1, ¶68); directed staff to seize personal belongings without confiscation slips (*Id*. at ¶78); approved changes in recreational time and shower access (*Id.* at ¶91); and that he was aware of, participated in, and agreed with Briggs' decision to cut power (*Id*. at ¶101). None of Plaintiffs' allegations against Pierre consist of more than stock language that mirrors the elements necessary to plead Section 1983 liability – the Plaintiffs could substitute "Pierre" for any other "prison administrator" and the general claims would not change. Plaintiffs rely on the same general claims to attempt to plead liability against Briggs. (See, DOC. 1, ¶¶68,78, and 91 – all claims against Briggs based on "information and belief"). Any allegations against Briggs and Pierre are made "based on information and belief,"

are virtually identical boilerplate language, and are supported by conclusory statements that are insufficient to demonstrate the personal involvement of Briggs or Pierre.

### 3. Plaintiff Patterson's Section 1983 Deliberate Indifference Claim Under The Eight Amendment Against Defendants Briggs And Pierre Fail.

Patterson fails to plausibly plead that Briggs and Pierre acted with deliberate indifference that deprived him of the basic "minimal civilized measure of life's necessities." (See, *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)); (DOC. 1, ¶273).   The Eighth Amendment prohibits cruel and unusual punishment that "violates civilized standards of humanity and decency." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). Prison conditions are cruel and unusual if they deprive inmates of basic human needs, such as food, sanitation, and medical care. *Rhodes v. Chapman*, 452 U.S. 337, 347-48, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). Not all prison conditions described as egregious meet this standard. (See, *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995) ("It is questionable if having a cold cell or a toilet that backs up sometimes is really an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."); [(see *also*, *Peterkin v. Jeffes*, 855 F.2d 1021, 1026-28 (3d Cir. 1998) (holding that being made to sleep on dirty mattress on floor did not make out an Eighth Amendment claim)].

To succeed on a claim brought under the Eighth Amendment, a prisoner must show: (1) that they were subjected to a deprivation that was "objectively, sufficiently serious" such that a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities; and (2) that prison officials acted with "deliberate indifference," which occurs only if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 828, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Deliberate indifference is a high standard. A plaintiff may demonstrate deliberate indifference by showing that the risk of harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past such that the defendants must have known about the risk. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (3d Cir. 2010) (quoting *Farmer*, 511 U.S. at 842-43) (internal quotation marks omitted).

Further, plaintiffs must make both an objective and subjective showing. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). To satisfy the objective prong, a plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Mammana*, 934 F.3d at 373 (citation omitted). The deprivation alleged must be "objectively, sufficiently serious" so as to have resulted in the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) and *Rhodes*, 452 U.S. at 347)). A

prisoner must then show that the prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 229 (3d Cir. 2015) (quoting *Farmer*, 511 U.S. at 847).

Patterson's claims fail both prongs of the analysis. Patterson fails to plausibly plead that his confinement in the RHU rises to the level of an "objectively, sufficiently serious" condition. First, Patterson alleges he was without a tablet for approximately one month. (DOC. 1, ¶223). He also alleges that his hygiene products were taken from him but returned to him after three weeks. (Id. at ¶238). Patterson's claims do not rise to the extreme deprivation required to state a claim for constitutional violations. Further, he fails to demonstrate that Briggs and Pierre were personally involved with any action to punish Plaintiff Patterson (or any member of the proposed subclass) or if they did act, that it was not incident to some other legitimate government purpose. *Hubbard v. Taylor*, 399 F.3d 150, 157-58 (3d Cir. 2005) (citations omitted).

As to the subjective component of the Eighth Amendment test, courts must also consider whether officials "had a legitimate penological purpose" behind their conduct. *Ricks v. Shover*, 891 F.3d 468, 475 (3d Cir. 2018). Patterson does not challenge the reason(s) for his placement in RHU. (DOC. 1). The Defendants have met their burden in demonstrating a legitimate penological purpose behind their

alleged conduct – security at DCP and stopping inmates from smoking synthetic marijuana.

### 4. Plaintiffs' Section 1983 First Amendment, Free Exercise Of Religion Claim Against Briggs And Pierre Fail.

Plaintiffs fail to plausibly plead that they were deprived of their ability to freely exercise their religion.  (DOC. 1, ¶¶ 297-302).  Plaintiffs also fail to demonstrate that any alleged deprivations imposed on them were not rationally related to a compelling government interest.  While prisoners have a right to practice their religion, their constitutional rights are limited by the fact of incarceration as well as valid penological objectives.  Courts generally accord deference to prison officials' adoption and execution of policies, regulations, and practices relating to the preservation of internal order, discipline, and security within the prison environment.

When a prisoner asserts a First Amendment free exercise claim that a prison policy is impinging on their constitutional rights, the court must apply the four factor test set forth in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L. Ed. 2d 64 (1987), to determine whether the curtailment at issue is reasonably related to penological interests. *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir.  2000) (citing *Turner*, 482 U.S. at 89).  Courts must assess reasonableness of prison regulations by weighing four factors. First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, and this

connection must not be so remote as to render the policy arbitrary or irrational. Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right. Third, a court must consider the costs that accommodating the right would impose on prison resources generally. Finally, a court must consider whether there are alternatives to the regulation that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Id.* (citing *Waterman v. Farmer*, 183 F.3d 208, 213 (3d Cir. 1999) (internal citations omitted)).

Patterson claims that he engages in prayer upon waking and before meals. (DOC. 1, ¶222).  Because his tablet was seized for a little more than a month, he claims that he is unable to read scriptures, access religious services or follow prayer guidance.  Patterson's claims fail.  First, a valid, rational connection existed between the prison regulation (seizing tablets) and the legitimate governmental interest put forward to justify it (curtailing or ending the use of synthetic marijuana on RHU). Second, Patterson does not plausibly plead that he lacked an alternative means of exercising his right – he does not allege that he could not pray upon waking or before meals, only that he was denied access to what he seems to describe as guidance. *Id.* at ¶224.

Like Patterson, Ramos alleges that his daily religious practice involves reading scripture, praying, and listening to sermons.  *Id.* at ¶184.  Unlike Patterson,

Ramos cannot allege that his tablet was "taken" as punishment because, due to insufficient numbers, he did not receive a tablet. *Id.* at 187. While Plaintiffs allege inmates on RHU did not have writing utensils, Ramos was able to "put in a request slip" for a tablet and was told that DCP was waiting on additional tablets. *Id.* at ¶188. Finally, like Patterson, Ramos does not plausibly plead that he lacked an alternative means of exercising his right – he does not allege that he could not pray daily, only that he could not supplement prayer with reading scriptures and listening to sermons. Finally, Little claims that he was unable to practice his religion because he was without a tablet for three months and he could not access the Bible or other "prayer guidance." (DOC. 1, ¶137). Like Patterson and Ramos, Little does not claim that he was unable to practice his religion through prayer – only that he could not supplement prayer with access to the Bible or other "prayer guidance." *Id.* Plaintiffs have failed to show that a DCP policy impinged on their ability to practice their religion, so there is no underlying constitutional violation.

Finally, Plaintiffs fail to demonstrate that Briggs or Pierre were personally involved in removing their tablets. (See, DOC. 1, ¶67, "DCP staff" seized tablets on RHU). All Plaintiffs rely on is boilerplate language, based on information and belief, that Briggs and Pierre directed DCP staff to do so. Regardless, Plaintiffs cannot show that no valid, rational connection existed between any action of Briggs and Pierre (allegedly ordering staff to seize tablets) and a legitimate governmental

interest put forward to justify it (curtailing or ending the use of synthetic marijuana on RHU).

### 5. Plaintiffs' Religious Land Use And Institutionalized Persons Act Claims Against Dauphin County Fail.

Maintaining prison safety and security is a compelling interest.  Therefore, Plaintiffs' claims against Dauphin County under the Religious Land Use and Institutionalized Persons Act (RLUIPA) fail.   The RLUIPA provides, in relevant part, that no government shall impose a substantial burden on the religious exercise of a person confined to [a prison] unless the government can demonstrate that the imposition of the burden on the person is in the furtherance of a compelling government interest and is the least restrictive means of furthering that interest.  (42 U.S.C. Section 2000cc-1).   A plaintiff must demonstrate that their exercise of religion was substantially burdened.  That is, a plaintiff must demonstrate that:  (1) each has a sincerely held religious belief, and (2) the prison substantially burdened the exercise of their beliefs.  *Holt v. Hobbs*, 574 U.S. 352, 360-361, 135 S. Ct. 853, 190 L. Ed. 2d 747 (2015); see also, 42 U.S.C. 2000cc-1(a).  The RLUIPA does not require prisons to jeopardize the effective functioning of the institution.  *Cutter v. Wilkinson*, 544 U.S. 709, 726, 125 S. Ct. 2113, 161 L. Ed. 2d 1020 (2005).

When applying RLUIPA, "[c]ontext matters."  *Id.* at 723 (citation omitted). Congress enacted RLUIPA "mindful of the urgency of discipline, order, safety, and security" in prisons, and anticipated courts would give "due deference to the

experience and expertise" of prison officials "in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id.* (internal quotation marks and citations omitted). Thus, Congress recognized that prisons are unique, and their resources are limited.

Plaintiffs only claim that they desire to access religious materials and congregate for religious purposes. (DOC. 1, ¶306). For efficiency, Moving Defendants incorporate their arguments in opposition to Plaintiffs' free exercise of religion claims. That is, Patterson and Little fail to plausibly plead that they were unable to practice their sincerely held religious beliefs – they do not allege they were unable to pray – they allege they could not supplement prayer with the Bible or other "prayer guidance." With that, Plaintiffs fail to demonstrate that any DCP policy imposed a substantial burden on their religious exercise. While the Defendants did not impose a substantial burden on the Plaintiffs, removing tablets from the RHU and limiting "congregation" for religious purposes furthered a compelling government interest - maintaining safety and security at DCP. Plaintiffs acknowledge that individuals in RHU were there for a number of reasons, including individuals suspected of rules violations, for medical observation, or if staff members believed it was necessary for inmate safety. (DOC. 1, ¶60). Understanding that placement in RHU was done for inmate safety and considering steps were taken

to eliminate the use of synthetic marijuana on RHU, removing tablets and limiting "congregation" was the least intrusive means to achieve the goal of safety and security (a compelling interest) for all inmates at DCP.

### 6. Plaintiff Little's Section 1983 Excessive Force Claim Against Pierre, Lucas, And Skelton Fail.

On December 8, 2023, Little was being escorted back to his cell after being seen in the medical unit. (DOC.1, ¶153).[6] He was handcuffed to a belt around his waist. Id. at ¶155. When returned to his cell, Little refused to "lock in." *Id*. at ¶156. Defendants Skelton, Lucas and Pierre talked with Plaintiff through a door. *Id.* at ¶160. Plaintiff was ordered to face the back wall and to get on his knees. *Id*. at ¶162. Plaintiff refused to go to his knees. *Id*. at ¶163. Plaintiff alleges that John Doe Defendants 1-12 entered the block and assaulted him. *Id*. at ¶164. Although Plaintiff alleges he lost consciousness and only woke up when he was being carried from P-6 to P-3, he claims the "assault" occurred in the presence of and in view of Pierre, Lucas, and Skelton who did not intercede to prevent the assault. *Id.* at ¶167. Next, Plaintiff alleges unnamed "guards" took him to P-3 where they continued to assault

---

[6] While the Complaint identifies Little as currently held pre-trial at Franklin County Jail, it is unclear if he was held at DCP pre-trial or as a sentenced inmate. For purposes of this motion, Defendants will consider Little as a pre-trial detainee at DCP. Further, while the Complaint initially describes Little as being held at DCP for 15 months (DOC. 1,¶20), he is also identified as being incarcerated for "approximately two years." *Id.* at ¶132. It is not clear if the described two-year period is inclusive of Little's time at DCP and Franklin County.

him. *Id*. at ¶169. Plaintiff claims Skelton deployed "mace" into his face and an unnamed guard rubbed the "mace" into his face. *Id*. at ¶170. Without more, Plaintiff alleges Lucas and Pierre were present on P-3 but did not intercede or prevent the assault. *Id*. at ¶172.

Claims brought by pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400-01, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015); *Jacobs v. Cumberland Cty.*, 8 F.4th 187, 193-94 (3d Cir. 2021). To state a Fourteenth Amendment claim, a pretrial detainee must show that the force purposely or knowingly used against him was objectively unreasonable. *See Kingsley*, 576 U.S. at 396-97. Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Id.* at 397; *see also Robinson v. Danberg*, 673 F. App'x 205, 209 (3d Cir. 2016). Courts should analyze "these circumstances 'from the perspective of a reasonable officer on the scene'" while keeping in mind that decisions about force require the expertise of correctional officers, "'who must have substantial discretion

to devise reasonable solutions to the problems they face.'" *Id.* at 195 (quoting *Kingsley*, 576 U.S. at 397, 399).

Plaintiff has not alleged that Pierre or Lucas used any force against him. Therefore, Plaintiffs fail to establish personal liability against Pierre or Lucas because they were not personally involved in the alleged wrongdoing and cannot be liable solely on *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Little did not raise a specific claim of supervisory liability against Pierre or Lucas, but if the Court finds Little intended to bring such a claim, it fails. A supervisor may be personally liable under Section 1983 if they directed others to violate the plaintiff's rights or had knowledge of the violation and acquiesced. See, *Baker v. Monroe Township*, 50 F.3d 1186, 1190-91 (3d Cir. 1995). Little offers only insufficient conclusory statements, based on "belief" that Pierre and Lucas personally directed or authorized the use of unreasonable force against him. Little's claims are insufficient to establish liability against Pierre or Lucas.

As to Skelton, a review of the *Kingsley* factors suggests that Little's claim against him for deploying "mace" should be dismissed. Little does not allege that he suffered a lasting injury from the alleged use of mace. Little admits that, prior to any use of force, Skelton, Lucas, and Pierre talked to Little through the window to the block. (DOC. 1, ¶159-160). Following the conversation, Little was ordered to remain outside of his cell, to face the wall, and to go to his knees. *Id.* at ¶162. Little

refused to go to his knees. *Id*. at ¶163. This was the second time Little refused to

comply with orders, having just refused an order to "lock in." *Id*. at ¶156. Therefore,

Plaintiff ignored the efforts of Pierre and Lucas to temper or to limit the amount of

force when they spoke with Little; he created a security risk by refusing two lawful

orders; and, because he refused lawful orders, he was actively resisting. As a result,

Skelton's alleged use of "mace," once, weighs in favor of dismissing Little's claim

against Skelton.

Again, Little does not directly plead claims against Pierre, Lucas, or Skelton

for failing to intervene in the alleged use of unreasonable force. Plaintiff offers

nothing more than a conclusory statement that "the assault" occurred in the presence

of and in view of Pierre, Lucas, and Skelton, and none acted to stop it. (DOC.1,

¶167). First, Little does not plausibly plead that any Defendant has an opportunity

to intervene, because as he describes the event, twelve John Doe guards in riot gear

"stormed" into P-6 and assaulted him. Plaintiff does not suggest how the Defendants

could have intervened when the twelve John Doe guards "stormed" into P-6.

Further, because Little fails to plausibly plead that an underlying constitutional

violation occurred, there is no failure to intervene claim where there is no underlying

constitutional violation, *Rosario v. Strawn*, 2020 U.S. Dist. LEXIS 135559 (W.D.

Pa. July 29, 2020).

### 7. Plaintiffs' Section 1983 Municipal Liability Claim Against Dauphin County Fail.

27

Plaintiffs fail to sufficiently state a plausible claim of municipal liability against Dauphin County for failure to supervise and discipline Briggs and unnamed "prison administrators." (DOC. 1, ¶¶315-316). A municipality's failure to train, supervise, or discipline can establish a policy or custom actionable under Section 1983 only where the alleged failure amounts to deliberate indifference. Deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997). A plaintiff sufficiently pleads deliberate indifference for failure to train, supervise, or discipline by showing that (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights. *Estate of Roman v. City of Newark*, 914 F.3d 789, 798, n.7 (3d Cir. 2019) (quoting *Doe v. Luzerne Cty.*, 660 F.3d 169, 180 (3d Cir. 2011)). In cases such as this, where the plaintiff alleges a municipality's failure to act, a "pattern of similar constitutional violations . . . is 'ordinarily necessary' to demonstrate deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 62, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011).

Plaintiffs fail to sufficiently allege deliberate indifference by the County. Plaintiffs' Complaint does not sufficiently identify a form of supervision or

discipline whose absence had a causal nexus with Plaintiffs' alleged injuries and can be reasonably said to reflect deliberate indifference to whether the alleged constitutional deprivations occurred. See, *Reitz v. Cty. Of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). Instead, Plaintiffs allege only formulaic recitations of a *Monell* claim by alleging the County "fail[ed] to adequately discipline and supervise the warden and other prison administrators." (DOC. 1, ¶316). Plaintiffs allege insufficient facts to support an inference that the County was on notice of a risk of Warden Briggs or unnamed administrators committing constitutional violations and deliberately ignored that risk. (See, *Wood v. Williams*, 568 Fed. Appx 100, 105 (3d Cir. 2014). The Court is not required to accept Plaintiffs' reliance on a recitation of the elements of a *Monell* claim or accept their conclusory statements as true in support of their "failure to" claims.

### 8. Plaintiffs Little And Ramos' Claims Under Title II Of The Americans With Disabilities Act And The Rehabilitation Act Fail.

Plaintiffs Little and Ramos allege claims under Title II of the Americans with Disabilities Act ("ADA"). (DOC. 1, ¶¶278-289) and the Rehabilitation Act (*Id*. at ¶¶290-294).[7]  Title II provides that "no qualified individual with a disability shall,

---

[7] Moving Defendants concur with Plaintiffs' position that claims under the Rehabilitation Act are substantively identical to those outlined in Title II of the ADA. Therefore, Moving Defendants incorporate their arguments in opposition to Plaintiffs' claims under the ADA as if fully set forth herein.  (See, *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014)).

**by reason of such disability**, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. (Emphasis added).   A plaintiff must show "that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, **by reason of his disability**." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288-89 (3d Cir. 2019). (Emphasis added).  Plaintiffs claim that the County's act of allegedly imposing a blackout exacerbated their disabilities and services (DOC. 1, ¶286).  Plaintiffs do not allege, because they cannot, that any action by the County was taken to exclude them from any benefit because of their disability.  Likewise, Plaintiffs do not allege that they were treated differently than other inmates housed on RHU without a disability.

Further, while the County did not discriminate against the Plaintiffs, no further accommodation could be made and the Moving Defendants demonstrated that they had a legitimate penological interest for any limitations put in place on RHU. Plaintiffs have not provided anything more than conclusory statements to suggest they were excluded from a particular program or service, or were otherwise discriminated against, *because of* a disability. See *Holden v. Wetzel*, 2021 U.S. Dist. LEXIS 53124, 2021 WL 1090638, at *4 (W.D. Pa. Apr. 20, 2020) (holding plaintiff's conclusory assertions that defendants engaged in disability-related discrimination by

subjecting him to the conditions of the RHU and/or subjecting him to a sham investigation and/or failing to transfer him to a different prison did not state a claim under the ADA).

## V.    <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth herein and in the Moving Defendants' Motion to Dismiss Plaintiffs' Complaint and Defendants' Brief in Support of their Motion, Defendants Dauphin County, Briggs, Lucas, Pierre, and Skelton respectfully request this Court grant their relief requested.

Respectfully submitted,

**Lavery Law**

Date:   March 18, 2025

*/s/ Frank J. Lavery Jr.*
Frank J. Lavery Jr., Esquire
Atty. I.D. #42370
*/s/ Andrew W. Norfleet*
Andrew W. Norfleet, Esquire
Atty. I.D. #83894
225 Market Street, Suite 304
Harrisburg, PA 17101-2126
(717) 233-6633 (telephone)
(717) 233-7003 (facsimile)
flavery@laverylaw.com
anorfleet@laverylaw.com

## <u>CERTIFICATION PURSUANT TO MIDDLE DISTRICT</u>

## <u>RULE L.R. 7.8(b)(3)</u>

The undersigned counsel hereby certifies that the foregoing Brief complies with the Court's Order of March 3, 2025 (DOC. 20) granting leave pursuant to Local Rule 7.8(b)(3) to file a Brief in Support that does not exceed 7,500 words. This Brief is 7,483 words. Counsel relied upon the word count feature of the word processing system used to prepare the brief in obtaining the foregoing number.

DATE:  March 18, 2025                    */s/  Frank J. Lavery, Jr.*
                                                  Frank J. Lavery, Jr., Esquire
                                                  Attorney No. PA 42370

## CERTIFICATE OF SERVICE

I, Aimee L. Paukovits, an employee with the law firm of Lavery Law, do hereby certify that on this 18th day of March, 2025, I served a true and correct copy of the foregoing Brief via the Court's ECF System on counsel of record.


/s/ Aimee L. Paukovits
Aimee L. Paukovits,
Senior Legal Administrative Assistant


This document has also been electronically filed and is available for viewing and downloading from the system.