## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KANI LITTLE; HECTOR RAMOS; | : | |
| JAMES PATTERSON, on their own | : | |
| Behalf and on behalf of all others | : | |
| similarly situated, | : | |
| Plaintiffs | : | |
| | : | Civil Action No. 4:24-cv-02169 |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| DAUPHIN COUNTY; GREGORY | : | |
| BRIGGS, Warden of Dauphin County | : | |
| Prison, in his Individual Capacity; | : | |
| LIONEL PIERRE, Chief Deputy | : | |
| Warden, in his Individual Capacity, | : | |
| ROGER LUCAS, Custody Major, | : | |
| In his Individual Capacity; MARK | : | |
| SKELTON, Lieutenant, in his | : | |
| Individual Capacity; and JOHN DOES | : | |
| No. 1-12, in their Individual | : | |
| Capacities, | : | |
| Defendants | : | |

## <u>REPLY BRIEF IN FURTHER SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) ON AND IN RESPONSE TO PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT ON BEHALF OF DEFENDANTS DAUPHIN COUNTY, GREGORY BRIGGS, LIONEL PIERRE, ROGER LUCAS, AND MARK SKELTON</u>

Respectfully submitted,

**Lavery Law**

Date:  May 9, 2025

<u>/s/ Frank J. Lavery Jr.</u>
Frank J. Lavery Jr., Esquire
Atty. I.D. #42370
<u>/s/ Andrew W. Norfleet</u>
Andrew W. Norfleet, Esquire

Atty. I.D. #83894
225 Market Street, Suite 304
Harrisburg, PA 17101-2126
(717) 233-6633 (telephone)
(717) 233-7003 (facsimile)
flavery@laverylaw.com
anorfleet@laverylaw.com

## **Table of Contents**

Table of Authorities ........................................................................................ ii

I.      PROCEDURAL POSTURE .................................................................1

II.     RESPONSES ........................................................................................1

  1.   Plaintiffs' Request For Class Certification Should Be Denied. ......................1

     a.   The Plaintiffs failed to address their non-compliance with the Local Rules ………………………………………………………………………………..1

    b. Plaintiffs did not address the specific deficiencies in Plaintiffs' Complaint raised by the County Defendants ....................................................................3

  2.   Plaintiffs Have Not Sufficiently Alleged Americans with Disabilities Act and Rehabilitation Act Claims...........................................................................4

  3.   Plaintiffs Did Not Rehabilitate Their Alleged First Amendment Free Exercise of Religion and Religious Land Use and Institutionalized Persons Act Claims Against Briggs And Pierre. ..........................................................8

  4.   Plaintiffs Have Not Sufficiently Alleged Municipal Liability Claims..........12

  5.   Plaintiffs Have Not Sufficiently Alleged Excessive Force Claims Under the Fourteenth Amendment. ...............................................................................15

III.    CONCLUSION.................................................................................18

CERTIFICATION OF COUNSEL PURSUANT TO L.R. 7.8 ..............................19

CERTIFICATE OF SERVICE ............................................................................20

## Table of Authorities

**Cases**

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397 (1997) .........13

*Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011)....13

*Coyle v. Montgomery Cty.,* No. 21-4704, 2023 U.S. Dist. LEXIS 46061
   (E.D. Pa. Mar. 20, 2023)...........................................................................14

*DeHart v. Horn*, 227 F.3d 47 (3d Cir. 2000) ............................................................8

*Doe v. Luzerne Cty.*, 660 F.3d 169 (3d Cir. 2011)...................................................13

*Estate of Roman v. City of Newark*, 914 F.3d 789 (3d Cir. 2019)..........................13

*Fraise v. Terhune*, 283 F.3d 506 (3d Cir. 2002)....................................................10

*Furgess v. Pa. Dept' of Corr.*, 933 F.3d 285 (3d Cir. 2019) ...............................5, 6

*Hart v. Gov't Emps. Ins. Co.,* (M.D. Pa. 2023) ......................................................3

*Holden v. Wetzel*, 2021 U.S. Dist. LEXIS 53124, 2021 WL 1090638
   (W.D. Pa. Apr. 20, 2020)...........................................................................8

*Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163 (3d Cir. 2015) ........................4

*McPherson v. Cnty. of Dauphin*, No. 1:19-cv-01865, 2020 WL 1558206
   (M.D. Pa. Mar. 24, 2020)..........................................................................7

*Mutschler v. SCI Albion CHCA Health Care,* 445 F. App'x 617 (3d Cir. 2011)......5

*O'Lone v. Estate of Shabbaz*, 482 U.S. 342 (1987) ..............................................10

*Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988)...........................................15

*Shaw v. Murphy,* 532 U.S. 223 (2001)..................................................................10

*Sutton v. Rasheed*, 323 F.3d 236 (3d Cir. 2023)........................................ 10, 11, 12

*Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296 (3d Cir. 1999) ..............................7

*Turner v. Safley*, 482 U.S. 78 (1987) ...................................................................8, 9

**Statutes**

42 U.S.C. § 12132...................................................................................................5

**Other Authorities**

Federal Class Action Practice Manual.....................................................................2

**Rules**

Fed.R.Civ.P.23 ........................................................................................................2

Local Rule of Civil Procedure 23 .......................................................................2, 3

AND NOW COMES Dauphin County and Defendants Gregory Briggs, Lionel Pierre, Roger Lucas, and Mark Skelton (referred to as the "County Defendants") and file their Reply Brief in Further Support of their Motion to Dismiss Plaintiffs' Complaint and in response to Plaintiffs' Brief in Opposition:

## I.    PROCEDURAL POSTURE

On December 17, 2024, Plaintiffs filed their Complaint.  The County Defendants filed their Motion to Dismiss on February 18, 2025. (DOC.16) and their Brief in Support of the County Defendants' Motion to Dismiss on March 18, 2025. (DOC. 21).  Plaintiffs filed their Brief in Opposition on April 14, 2025. (DOC. 26).

## II.    RESPONSES

### 1.  Plaintiffs' Request For Class Certification Should Be Denied.

Because the Plaintiffs failed to demonstrate why their request for class certification should be granted, the County Defendants have sufficiently shown that class certification is not proper.

#### a.  The Plaintiffs failed to address their non-compliance with the Local Rules

The County Defendants maintain that the Plaintiffs' request for class certification should be denied when the Complaint fails to comply with the applicable Local Rules of Court.  (DOC. 21, p. 11-12).  The Middle District's Local Rules of Court require a complaint to bear next to its caption the legend, "Complaint-

Class Action." LR 23.1.  Plaintiffs' Complaint does not designate the case as a class action. (See, DOC.1; DOC. 21, p.11).  The Plaintiffs' Brief in Opposition does not address their failure to comply with the Local Rules.  (See, DOC.26).

Next, Plaintiffs failed to motion for class certification within ninety (90) days of filing their Complaint.  (DOC. 21, p.11).  LR. 23.3 requires that within ninety (90) days after filing a complaint in a class action, unless this period is extended on motion for good cause appearing, the plaintiff(s) **shall** move for a determination under subdivision (c)(1) of Fed.R.Civ.P.23, as to whether the case is to be maintained as a class action.   Plaintiffs do not dispute that they did not motion for class certification within the required ninety (90) days of filing their Complaint. (DOC. 26).  Instead, Plaintiffs argue that it was proper to allege grounds for class certification in their Complaint while waiting to move for class certification. (DOC. 26, p.10-11).  LR 23.2 and LR 23.3 suggest otherwise.  Specifically, LR 23.3 states that the Plaintiffs **shall** move for a determination under subdivision (c)(1) of Fed.R.Civ.P.23, as to whether the case is to be maintained as a class action.  Plaintiffs did not properly motion for class certification.

Further, while a plaintiff can include a request for class certification in their complaint, the <u>Federal Class Action Practice Manual -Chapter 6: Pleading...</u> states that the filing of the complaint must be followed with a **timely filed motion** seeking certification of the class sought in the complaint.  Parties are encouraged to consult

2

the specific local rules which may have particular requirements for class action litigation. While Plaintiffs maintain they are allowed a reasonable timeframe to move for class certification, LR 23.3 does not equivocate - it mandates that Plaintiffs **shall** motion for class certification within ninety (90) days of the filing of their Complaint, a time that has since passed given Plaintiffs Complaint was filed on December 17, 2024. (DOC. 1). Because Plaintiffs are beyond the permissible ninety (90) days to motion for class certification, Plaintiffs must demonstrate that their untimely filing was due to excusable neglect and that there be good cause. *Hart v. Gov't Emps. Ins. Co.,* (M.D. Pa. 2023). Plaintiffs made no such argument. (DOC. 26). Therefore, this Honorable Court should not certify Plaintiffs' Class and Subclasses.

   b. Plaintiffs did not address the specific deficiencies in Plaintiffs' Complaint raised by the County Defendants

After requesting class certification in their Complaint and subsequently arguing that it is premature to consider the County Defendants' request to deny class certification, the Plaintiffs argue, generally, that they have sufficiently addressed the requirements for class certification "at this juncture." (DOC. 26, p.12). In an equally general manner, the Plaintiffs respond that the Defendants' contrary arguments "have no merit." *Id.* p.13. Yet, the Plaintiffs do not address the specific arguments raised by the County Defendants. For example, the County Defendants argued that the allegations set forth in the Complaint demonstrate that the length of time

Plaintiffs allege that members of the proposed class were without a tablet varied from weeks to months. (DOC. 21, p.13; DOC. 21, fn.4). Further, while Plaintiffs again allege that members of the proposed class had their hygiene products seized, for some of the proposed class members, the issue was not availability of hygiene products, but the issue of quality, because some proposed class members received "indigent grade" soap, toothpaste and toothbrushes. (DOC. 21, p.13).

Likewise, Plaintiffs did not address the specific examples relied on in support of the County Defendants' argument that class certification should be denied when claims are directed towards the application of unconstitutional conditions related to individual class members, rather than the class in general, which will require individual analysis of each potential class members' claim(s). (DOC. 21, p.15). The County Defendants also correctly argued that the Plaintiffs alleged some of the inmates on the RHU were denied writing utensils, while at least one of the proposed class representatives acknowledged they had writing utensils to complete grievance slips. (DOC. 21, p.16, citing DOC.1, ¶¶87, 179).

## 2. Plaintiffs Have Not Sufficiently Alleged Americans with Disabilities Act and Rehabilitation Act Claims.

Plaintiffs agree with the Defendants that the standards for liability under both the Americans With Disabilities Act (ADA) and the Rehabilitation Act of 1973 (RA) are functionally equivalent and are interpreted consistently. (DOC. 26, p.31) (citing *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 166-67 (3d Cir. 2015).

4

(Additional citations omitted).    Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.    Plaintiffs cite *Mutschler v. SCI Albion CHCA Health Care,* 445 F. App'x 617, 621 (3d Cir. 2011) (additional citations omitted) for the proposition that a qualified individual under ADA must show that they were excluded from participation in or denied benefits of the services, programs, or activities of a public entity, and "that such exclusion, denial of benefits or discrimination was by reason of their disability." (DOC. 26, p.31).  The Plaintiffs did not allege that the County took any action to exclude them from the benefit of services, programs, or activities because of or by reason of their disability.  (DOC. 21, p.35).   The Plaintiffs argue only that the alleged imposition of a "black out" exacerbated their disabilities and denied them services offered to other individuals incarcerated at the Dauphin County Prison (DCP), but do not allege that the alleged actions were taken were taken because of or by reason of their disability.  (DOC. 1, ¶286).

Next, the Plaintiffs rely on *Furgess v. Pa. Dept' of Corr*., 933 F.3d 285, 290 (3d Cir. 2019) for the proposition that a prison's refusal to accommodate inmates' disabilities in such fundamentals as mobility, hygiene, medical care, and other prison programs constitutes a denial of benefits under Title II. (DOC. 26, p.32).   The facts

in *Furgess* are not analogous to the alleged claims in this case. There, the plaintiff suffered from myasthenia gravis and was provided with an accessible shower stall prior to being moved to the RHU unit. *Id*. at 288. The RHU unit was not equipped with handicapped-accessible shower facilities and, despite plaintiff's requests for an accessible shower, it was not provided. *Id*. The plaintiff brought his action against the Pennsylvania Department of Corrections for failing to provide him with an accessible shower. *Id*. While the Court in *Furgess* determined that the provision of a shower is a part of the programs, activities, or services referred to in the ADA and the RA, the court stated that complaints about not being provided an *accessible* shower are not disagreements about medical treatment. They are requests for reasonable *accommodations* so that inmates with disabilities can take a shower – "just like able-bodied inmates." *Id.* (Emphasis added). Further, when examining causation, the Court in *Furgess* stated "the sole cause of Furgess's deprivation of a shower was his disability." *Id*. Here, the Plaintiffs do not allege that they were denied reasonable requests for accommodation or denied accessible facilities in the RHU. Likewise, Plaintiffs do not allege that the *sole* cause of their alleged deprivation was their claimed disabilities. Accepting the Plaintiffs' allegations as true, for purposes of this motion, only, Plaintiffs are alleging that they were treated like the "able-bodied" inmates on the RHU and were not denied services because of their disability.

6

Plaintiffs' reliance on *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) is misplaced. The plaintiff in *Taylor* alleged discrimination in the workplace, not a correctional facility. While Plaintiff cites *Taylor* for the proposition that discrimination includes failing to make reasonable accommodation, (DOC. 26, p.32), the context is important. In the very next sentence, the Court concluded the ADA specifies that an employer discriminates against a qualified individual with a disability when the employer fails to make reasonable accommodation . . . unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business. *Id.* at 305. *Taylor* addresses the question of reasonable accommodation in the workplace, not alleged restrictions placed on all inmates in a housing unit of a correctional facility.

Finally, the Plaintiffs' claims can be distinguished from those made by those in *McPherson v. Cnty of Dauphin*, No. 1:19-cv-01865, 2020 WL 1558206 (M.D. Pa. Mar. 24, 2020). There, the plaintiff alleged he suffered from bipolar disorder, his wife took his prescription medication to DCP, prison staff would not take the medication, and plaintiff was without his medication for two weeks. *Id.* at *11. It was the denial of access to any of his prescription medications that satisfied the plaintiff's burden to adequately allege a violation of the ADA. *Id.* at *12. Here, Little does not allege that he was denied access to all of his prescription medications. He alleges only that unnamed "DCP staff" did not administer his psychiatric

medications consistently.  (DOC. 1, ¶148).  Likewise, Ramos alleges he did not receive medications regularly, not that he was denied access to all his medications. (DOC. 1, ¶211).  Finally, Patterson does not allege that he was denied access to prescribed medication.

Plaintiffs rely on conclusory statements to suggest that they were excluded from a particular program or service, or were otherwise discriminated against, *because of* a disability. See *Holden v. Wetzel*, 2021 U.S. Dist. LEXIS 53124, 2021 WL 1090638, at *4 (W.D. Pa. Apr. 20, 2020) (holding plaintiff's conclusory assertions that defendants engaged in disability-related discrimination by subjecting him to the conditions of the RHU and/or subjecting him to a sham investigation and/or failing to transfer him to a different prison did not state a claim under the ADA).  This Honorable Court should grant the County Defendants' Motion to Dismiss with prejudice related to the Plaintiffs' claims under the Americans with Disabilities Act and Rehabilitation Act.

**3.  Plaintiffs Did Not Rehabilitate Their Alleged First Amendment Free Exercise of Religion and Religious Land Use and Institutionalized Persons Act Claims Against Briggs And Pierre.**

The parties rely on *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (en banc) and *Turner v. Safley*, 482 U.S. 78 (1987) when addressing Plaintiffs' claims of the free exercise of religion under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUPIA).  (See, DOC. 21, p.24 and DOC. 26, p.27).

Examining Patterson's claims first and accepting his claims as true, for purposes of this motion, only, if his tablet was seized, he has not plausibly plead that he lacked an alternative means of exercising his religious freedom as he did not claim that he was prohibited from praying upon waking or before meals.  (DOC. 21, p.25).

Turning to Ramos's claims, accepting his claims as true, for purposes of this motion, only, he was not denied a tablet as "punishment" or to restrict his religious freedom.  Instead, he was not given a tablet due to an insufficient number of tablets. (DOC.1, ¶187).   Under the first prong of *Turner*, the complained of "prison regulation" of not providing a tablet to inmates when all available tablets were in use, serves a legitimate government interest and is not "punishment."

Next, while Ramos alleges that his daily religious practice included listening to sermons, Plaintiffs offer no legal support for their argument that a prison must provide an inmate with access to sermons.  Finally, Ramos does not plausibly plead that he was prohibited from praying daily, or that his alleged lack of access to "scriptures" or "sermons" was so essential to his religious practice that he lacked an alternative method of exercising his right.  (DOC. 21, p.26).

Little alleges he was unable to practice Christianity because, without a tablet, he could not access prayer guidance, which is not defined in the Complaint.  (DOC. 1, p.17, ¶137).  Little does not plausibly plead that he was prohibited from praying

daily, or that his alleged lack of access to the Bible or prayer guidance was so restrictive that he lacked an alternative method of exercising his right.

The Plaintiffs cite *Sutton v. Rasheed*, 323 F.3d 236, 255 (3d Cir. 2023), as amended (May 29, 2003).  In *Sutton*, the Court recognized that the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large. *Id*. at 252, citing *Shaw v. Murphy,* 532 U.S. 223, 229, (2001). (Additional citations omitted).  The Court also recognized that, although prison walls do not form a barrier for separating prison inmates from the protections of the Constitution, inmates' First Amendment rights must, in some respects, be limited in order to accommodate the demands of prison administration and to serve valid penological objectives. *Id*. citing *Fraise v. Terhune*, 283 F.3d 506, 515 n.5 (3d Cir. 2002).  Finally, the Court acknowledged that the Supreme Court established that regulations reasonably related to legitimate penological interests generally pass constitutional muster. *Id*. (Citations omitted).  Courts should accord great deference to the judgment of prison officials "charged with the formidable task of running a prison." *Id*. citing *O'Lone v. Estate of Shabbaz*, 482 U.S. 342, 353 (1987).

Unlike the named Plaintiffs, the plaintiffs in *Sutton* were adherents of various Nation of Islam sects.  *Sutton v. Rasheed*, 323 F.3d 236, 254 (3d Cir. 2023).  The Nation of Islam books requested and denied were essential religious texts, required

"reading by the faithful" and without them, a person could not function well in the Nation of Islam's religious community. *Id*. at 255. Importantly, the plaintiffs claimed that the books were essential to their religious expression because the books taught them how to pray. *Id.* While acknowledging that, where other avenues remain available for the exercise of the inmate's religious faith, courts should be particularly conscious of the measure of judicial deference owed to correction officials, the books that were denied in *Sutton* provided critical religious instruction without which the plaintiffs could not practice their religion generally. *Id.*

Further, and unlike the plaintiffs in *Sutton*, the named Plaintiffs do not argue that the information on their tablets was so critical that they could not practice their religion of choice – Christianity. Little claims that he could not practice Christianity without access to the Bible or other documents vaguely referred to as "other prayer guidance." (DOC. 1, ¶137). His claims remain insufficient. As for Ramos, he alleges he was unable to access "religious materials" but does not explain why these undefined materials were so essential to his religious practice that, without access to them, he could not practice his religion of choice. (DOC. 1, ¶190). Finally, Patterson's general claims that he could not access religious services, read scriptures, or follow prayer guidelines were so essential to his religious practice that, without access to them, he could not practice his religion of choice. (DOC. 1, ¶224). None

of the general allegations raised by the Plaintiffs are analogous to the specific findings raised by the plaintiffs in *Sutton*.

Finally, the Plaintiffs did not discuss the Court's final analysis in *Sutton*. The Court found that it must address the defendants' claims of qualified immunity as they relate to damages claims asserted against them on the basis of their actions to deny the plaintiffs access to Nation of Islam texts. *Id*. at 258. While recognizing courts have not always provided clear guidance on the question of what restrictions on prisoners' rights pass constitutional muster and recognizing that it was questionable whether the likely invalidity of the application of the policy in question was clearly established so that it should have been apparent to the defendants, the *Sutton* Court granted the defendants claim for qualified immunity. *Id*. at 260.

This Honorable Court should grant the County Defendants' Motion to Dismiss with prejudice related to the Plaintiffs' claims under the First Amendment and the RLUIPA.

### 4. Plaintiffs Have Not Sufficiently Alleged Municipal Liability Claims.

The Plaintiffs maintain that their claims regarding municipal liability have been addressed sufficiently to survive the Defendants' Motion to Dismiss. (DOC. 26, p.34). A municipality's failure to train, supervise, or discipline can establish a policy or custom actionable under Section 1983 only where the alleged failure amounts to deliberate indifference. Deliberate indifference is a "stringent standard

of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997). A plaintiff sufficiently pleads deliberate indifference for failure to train, supervise, or discipline by showing that (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights. *Estate of Roman v. City of Newark*, 914 F.3d 789, 798, n.7 (3d Cir. 2019) (quoting *Doe v. Luzerne Cty.*, 660 F.3d 169, 180 (3d Cir. 2011)). In cases such as this, where the plaintiff alleges a municipality's failure to act, a "pattern of similar constitutional violations . . . is 'ordinarily necessary' to demonstrate deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 62, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011).

Here, the Defendants argued that the Plaintiffs failed to sufficiently demonstrate deliberate indifference against the County because the Plaintiffs rely on formulaic recitations of a *Monell* claim alleging the Dauphin County Jail Oversight Board failed to adequately discipline and supervise the warden and unidentified prison administrators and to order them to cease the alleged constitutional violations. (DOC. 21, p.29).   Plaintiffs' Brief in Opposition does not correct the insufficiency of Plaintiffs' pleadings.  Plaintiffs did not plausibly plead that the Oversight Board knew that the warden or other "administrators" would confront the alleged situation,

13

that there was a history of mishandling similar situations by the warden or other administrators, or that the Oversight Board was aware that the warden or other administrators making a wrong choice would frequently cause the deprivation of constitutional rights. (DOC. 21, p.33). Further, the Plaintiffs' Brief in Opposition does not offer an argument alleging the Oversight Board was aware of a pattern of similar constitutional violations. (DOC. 26, pp.34-35). Instead, Plaintiffs attempt to rely on the Third Circuit's Jury Instruction 4.6.5 alleging liability based on "agreement after the fact." *Id*. at p. 35. This argument, raised for the first time in Plaintiffs' Brief in Opposition, cannot support Plaintiffs' *Monell* claim. Likewise, Plaintiffs general claim that the Oversight Board was on "full notice" about the alleged "well-known and documented problems" is a conclusory statement made without an attempt to show that the Oversight Board was aware of the specific acts alleged by the Plaintiffs. (DOC. 1, ¶¶ 35–41). Plaintiffs' use of the vague claim that "DCP has a widespread and well-earned reputation as a troubled prison facility" does not notice on the part of the Oversight Board of alleged similar conduct ordered or approved by the warden or other prison administrators. Plaintiffs' unsupported claims, alone, do not establish deliberate indifference and the requisite knowledge and foundation for municipal liability. (See, *Coyle v. Montgomery Cty.,* No. 21-4704, 2023 U.S. Dist. LEXIS 46061 (E.D. Pa. Mar. 20, 2023), where the District Court dismissed with prejudice the plaintiff's section 1983 municipal liability claim

against Montgomery County and the county prison reasoning the plaintiff did not identify any policy issued by a decision-maker, nor did he plausibly plead that the county had a custom or knowledge of similar unlawful conduct.). Therefore, this Honorable Court should grant the County Defendants' Motion to Dismiss with prejudice related to the Plaintiffs' claim of municipal liability.

### 5. Plaintiffs Have Not Sufficiently Alleged Excessive Force Claims Under the Fourteenth Amendment.

In their Brief in Opposition, the Plaintiffs restate the standard for excessive force under the Fourteenth Amendment, requiring the Plaintiffs to demonstrate that the force used against Little was objectively unreasonable. (DOC. 26, p.36). There should be no dispute that Plaintiffs have not alleged that Pierre or Lucas used any force against him. (DOC 1, p.39-40). Further, Plaintiffs do not dispute that liability against Pierre or Lucas cannot be satisfied by demonstrating that they were personally involved in the alleged wrongdoing. (DOC. 26, p.36). Likewise, Pierre and Lucas cannot be liable solely on *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). While Plaintiffs now incorporate and rely "on the arguments made in the Eighth and Fourteenth Amendment sections of their [brief] (DOC. 26, p.36), that Pierre and Lucas are liable because they acquiesced in the alleged used of excessive force, their conclusory statement is not sufficiently supported in their Complaint. Plaintiffs' Brief in Opposition does not address the Defendants' argument that Little was actively resisting when he refused to "lock in"

and instead refused to enter his cell. (DOC. 21, p.29). Therefore, even if Pierre or Lucas ordered corrections officers to respond to address Little's refusal to enter his cell (Plaintiffs do not disagree that Little was actively refusing to obey a command to enter his cell to "lock up") the alleged order was appropriate given the need for the use of force to gain Little's compliance. Therefore, giving the "order," without more, is insufficient to plausibly plead that Pierre or Lucas authorized or acquiesced to the use of alleged "excessive force." Further, Plaintiff ignored and did not address the efforts of Pierre, Lucas, and Skelton to temper or limit the amount of force necessary when they approached the door at P-6 to talk to Little. (DOC. 1, ¶¶159-160). Instead of complying with the order to enter his cell, Little continued to make demands that were denied. *Id*. at ¶¶160-161. Little was then ordered to face the back wall and go down to his knees. *Id*. at ¶162. Little refused to go to his knees. *Id.* It was then, and only then, that the other officers entered P-6 to gain Little's compliance – what the Plaintiffs refer to as an "assault." *Id*. at ¶164. Little's actions, alone, created a security risk by refusing two lawful orders; and, because Plaintiff refused lawful orders, he was actively resisting. Plaintiffs do not address the need for the use of force and the amount applied in the context of Little actively refusing two orders. These are not, as Plaintiff alleges, disputes of material fact the Defendants are asking the Court to decide at the pleadings stage. (DOC. 26, p.36).

16

The circumstances that necessitated the use of force are taken from Plaintiffs' Complaint.

Finally, Plaintiffs' Brief in Opposition does not cure their deficient claim that Briggs, Pierre, and Skelton failed to intervene in stopping the use of force. (DOC. 26, p.37). First, Plaintiffs do not allege that Briggs was present for the use of force. (DOC. 1, pp. 19-20). Next, Plaintiff seems to suggest that it is the Defendants who described the actions of the corrections officers who responded to P-6 as "stormed" the unit. (DOC. 26, p.32). This is incorrect. It was the Plaintiffs who described the actions as "stormed." (DOC. 1, ¶164). While Plaintiffs allege that this occurred in the presence of Pierre and Skelton, Plaintiffs do not describe in their Complaint or in their Brief in Opposition how long the incident lasted, how far from the incident Pierre and Skelton were standing, or what they witnessed. (DOC.1, pp.20-21; DOC. 26, p.32). Instead, Plaintiffs rely on the conclusory statement that Pierre, Lucas, and Skelton took no action to intercede. (DOC. 1, ¶167). The same is true of Plantiffs' description of the alleged incident that occurred on P-3. While Plaintiffs allege that Lucas and Pierre were present (DOC.1, ¶172), there is no further description of how long the incident lasted, how far from the alleged incident Lucas and Pierre were standing, or what they witnessed – alleging only that Lucas and Pierre were on the same block. *Id.* These allegations, alone, remain insufficient to plausibly plead a claim of failure to intervene.

Therefore, this Honorable Court should grant the County Defendants' Motion to Dismiss with prejudice related to the Plaintiffs' claim of excessive force under the Fourteenth Amendment.

## III.    CONCLUSION

WHEREFORE, based on the arguments outlined in Moving Defendants' Motion to Dismiss, Brief in Support of Motion to Dismiss, and Reply Brief, this Court should dismiss with prejudice the Plaintiffs' claims against the County and the individual Defendants with prejudice.

Respectfully submitted,

**Lavery Law**

Date:   May 9, 2025

*/s/ Frank J. Lavery Jr.*
Frank J. Lavery Jr., Esquire
Atty. I.D. #42370
*/s/ Andrew W. Norfleet*
Andrew W. Norfleet, Esquire
Atty. I.D. #83894
225 Market Street, Suite 304
Harrisburg, PA 17101-2126
(717) 233-6633 (telephone)
(717) 233-7003 (facsimile)
flavery@laverylaw.com
anorfleet@laverylaw.com

18

**<u>CERTIFICATION OF COUNSEL PURSUANT TO L.R. 7.8</u>**

The undersigned counsel hereby certifies that the foregoing Brief complies Local Rule 7.8 to file a Reply Brief in Support that does not exceed 5,000 words. This Brief is 4,245 words. Counsel relied upon the word count feature of the word processing system used to prepare the brief in obtaining the foregoing number.

DATE:  May 9, 2025                                    */s/  Andrew W. Norfleet*
                                                              Andrew W. Norfleet, Esquire
                                                              Attorney No. PA 83894

## <u>CERTIFICATE OF SERVICE</u>

I, Aimee L. Paukovits, an employee with the law firm of Lavery Law, do hereby certify that on this 9th day of May, 2025, I served a true and correct copy of the foregoing Brief via the Court's ECF System on counsel of record.


/s/ Aimee L. Paukovits
Aimee L. Paukovits,
Senior Legal Administrative Assistant


This document has also been electronically filed and is available for viewing and downloading from the system.