# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KANI LITTLE; HECTOR RAMOS; and JAMES PATTERSON, on their own behalf and on behalf of all others similarly situated,

          Plaintiffs,

      v.

DAUPHIN COUNTY; GREGORY BRIGGS, Warden of Dauphin County Prison, in his Individual Capacity; LIONEL PIERRE; Chief Deputy Warden, in his Individual Capacity; ROGER LUCAS, Custody Major, in his individual Capacity; MARK SKELTON, Lieutenant, in his Individual Capacity; and JOHN DOES No. 1-12, in their Individual Capacities,

          Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 4:24-cv-02169

(Judge Karoline Mehalchick)
(Magistrate Judge Leo Latella)

**JURY TRIAL DEMANDED**

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES......................................................................................... ii

INTRODUCTION......................................................................................................... 1

HISTORY OF THE PARTIES' DISPUTES ................................................................4

STANDARD OF REVIEW ...........................................................................................5

ARGUMENT.................................................................................................................6

    I.    Information About Other People Housed In The RHUs Is Necessary For Plaintiffs' Individual And Class Claims ........................................................................... 6

        A.    Plaintiffs' Class Claims Demand Disclosure of Putative Class Members' Records and Information.......................................................................... 7

        B.    Plaintiffs' Individual Claims Separately Require Disclosure of Information About Relevant Witnesses to the Conditions at Issue ............................... 10

        C.    Defendants' Privacy Objections Hold No Weight....................................12

    II.    Other Instances Of Illicit Drug Use In DCP Are Relevant To The Parties' Claims And Defenses .............................................................................................13

        A.    Other Instances of Drug Issues at DCP Are "Clearly Relevant" To Plaintiffs' Municipal Liability Claims .........................................................................13

        B.    Other Instances of Drug Issues Are Clearly Relevant to the Reasonableness of Defendants' Deprivations .......................................................................15

        C.    Other Instances of Drug Issues Are Relevant to Defendants' Defenses ............17

    III.    DCP Processes, Protocols, Procedures Bear Directly On The Unconstitutional Conduct At Issue.......................................................................................... 18

        A.    Plaintiffs' Requests Are Time-Bound and Sufficiently Tailored to the Constitutional Violations Alleged.......................................................19

        B.    Plaintiffs' Requests Are Not Unduly Burdensome ...............................21

CONCLUSION .....................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Barrett v. City of New York*, 237 F.R.D. 39 (E.D.N.Y. 2006)..............................................14

*Beck v. City of Pittsburgh*, 89 F.3d 966 (3d Cir. 1996).................................................11, 13

*Belbachir v. Cnty. of McHenry*, 726 F.3d 975 (7th Cir. 2013)..............................................19

*Burkhart-Deal v. Citifinancial, Inc.*, No. 2:08-cv-1289, 2009 WL 1750915 (W.D. Pa. June 19, 2009)...............................................................................................................9

*Byrnes v. Moody*, No. 2:15-cv-00570, 2015 WL 14094787 (W.D. Pa. Nov. 16, 2015).... 10

*Doe v. Schuykill Cnty. Courthouse*, 343 F.R.D. 289 (M.D. Pa. 2023).........................17, 18

*Equal Employment Opportunity Comm'n v. Kronos Inc.*, 620 F.3d 287 (3d Cir. 2010)22

*Farmer v. Brennan*, 511 U.S. 825 (1995)......................................................................... 11

*Fletcher v. O'Donnell*, 867 F.2d 791 (3d Cir. 1989).............................................................13

*Furey v. Wolfe*, No. 2:10-cv-1820, 2011 WL 597038 (E.D. Pa. Feb. 18, 2011) .................14

*Gates v. Rohm and Haas* Co., No. 2:06-cv-1743, 2006 WL 3420591 (E.D. Pa. Nov. 22, 2006) ...............................................................................................................................8

*Groark v. Timek,* 989 F. Supp. 2d 378 (D.N.J. 2013)..........................................................14

*Guerrido-Lopez v. City of Allentown*, No. 15-cv-1660, 2016 WL 1182158 (E.D. Pa. Mar. 16, 2016)........................................................................................................................14

*Hernandez v. Cnty. of Monterey*, 110 F. Supp. 3d 929 (N.D. Cal. 2015) ..........................19

*Hickman v. Taylor*, 329 U.S. 495 (1947)........................................................................5, 7

*Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) .................................................. 8

*Hughes v. Herbster*, No. 1:20-cv-02204, 2021 WL 4123977 (M.D. Pa. 2021)............... 10

*Jacobs v. City of Pittsburgh*, 143 F. Supp. 3d 307 (W.D. Pa. 2015) .................................12

*Johnson v. Wetzel*, No. 1:16-cv-864, 2016 WL 4158800 (M.D. Pa. 2016).......................15

*Joyce v. Colter Energy Services USA, Inc.*, No. 2:22-cv-1367, 2024 WL 326664 (W.D. Pa. Jan. 29, 2024).................................................................................................................9

*Knaupf v. Unite Here Loc. 100*, No. 3:14-cv-6915, 2015 WL 7451190 (D.N.J. Nov. 23, 2015) ........................................................................................................... 8

*Leaphart v. Little*, No. 23-cv-1064, 2024 WL 249008 (W.D. Pa. Jan. 23, 2024) ........... 20

*Lee v. Smith*, No. 1:18-cv-02360, 2019 WL 5869747 (M.D. Pa. 2019) ........................... 14

*Madrid v. Gomez*, 889 F. Supp. 1146 (N.D. Cal. 1995) ................................................. 19

*Miller v. McGinley*, No. 1:20-cv-2270, 2022 WL 212709 (M.D. Pa. Jan. 24, 2022) ......... 5

*Montanez v. Tritt*, No. 3:14-cv-1362, 2016 WL 3035310 (M.D. Pa. May 26, 2016) ........ 20

*Montgomery v. De Simone*, 159 F.3d 120 (3d Cir. 1998) ............................................... 13

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) ......................................... 7, 8

*Osagie v. Borough of State Coll.*, 586 F. Supp. 3d 314 (M.D. Pa. 2022) ........... 5, 15, 16, 18

*Plavin v. Grp. Health Inc.*, No. 3:17-cv-1462, 2022 WL 1911404 (M.D. Pa. June 3, 2022) ........................................................................................................... 8

*Rapier v. Harris*, 172 F.3d 999 (7th Cir. 1999) ........................................................... 16

*Reid v. Cumberland Cnty.*, 24 F. Supp. 3d 396 (D.N.J. 2013) ...................................... 14

*Ryder v. Bartholomew*, 715 Fed. Appx. 144 (3d Cir. 2017) .......................................... 15

*Scouler v. Craig*, 116 F.R.D. 494 (D.N.J. 1987) ........................................................... 14

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) ...................................................... 5

*Shorter v. Samuels*, 2021 WL 1017375 (M.D. Pa. 2021) .......................................... 14, 18

*Sourbeer v. Robinson*, 791 F.2d 1094 (3d Cir. 1986) ................................................... 19

*Stevenson v. Carroll*, 495 F.3d 62 (3d Cir. 2007) ........................................................ 16

*Tarapchak v. Lackawanna Cnty.*, 173 F. Supp. 3d 57 (M.D. Pa. 2016) ....................... 13

*Turner v. Safley*, 482 U.S. 78 (1987) ........................................................................... 15

*United States v. Con-ui*, No. 3:13-cr-123, 2015 WL 13501329 (M.D. Pa. May 8, 2015) .. 20

*Victor v. Lawler*, No. 3:08-cv-1374, 2010 WL 521118 (M.D. Pa. Feb. 9, 2010) .............. 21

*Washington v. Klem*, 497 F.3d 272 (3d Cir. 2007) ....................................................... 16

*Young v. Quinlan*, 960 F.2d 351 (3d Cir. 1992)................................................................19

## Statutes and Rules

18 Pa. C.S.A. § 9101 et seq. ........................................................................................12

37 Pa. Code § 95.224 ...................................................................................................21

42 U.S.C. § 1983 ..........................................................................................................13

Fed. R. Civ. P. 23 ..................................................................................................... 7, 8

Fed. R. Civ. P. 26(b)(1) ....................................................................................5, 7, 9, 13

Fed. R. Evid. 803(6) .....................................................................................................21

## Constitutional Provisions

U.S. Const. amend. VIII ..........................................................................................11, 20

U.S. Const. amend. XIV ...........................................................................................11, 16

## INTRODUCTION

In the dead of winter, for nearly two months, dozens of people incarcerated at Dauphin County Prison were forced to live for varying durations without heat and in near-total darkness. Dauphin staff deprived them of potable water, vital medications, access to legal materials and calls, communication with family members, and the ability to practice their religion. Plaintiffs— Kani Little, Hector Ramos, and James Patterson—filed this action on behalf of themselves and those similarly situated against Defendants Dauphin County, Gregory Briggs, and Lionel Pierre, along with other Dauphin County Prison ("DCP") officials and staff, alleging eight different causes of action.

Defendants now refuse to provide relevant responses to Plaintiffs' discovery requests regarding three categories of materials: information about putative class members, findings of illicit drugs and smuggling in DCP, and two years of processes, protocols, and/or policies concerning use of force and disciplinary decisions. Defendants' refusal is especially suspect given that, throughout the history of this litigation, they have asked this Court to dismiss Plaintiffs' complaint based on the exact information Plaintiffs seek here. Indeed, Defendants asked this Court to deny class certification in their motion to dismiss, their objections to this Court's Report and Recommendation, and their motion for reconsideration. Despite this Court's ruling that Plaintiffs have adequately pleaded their class claims, Defendants now refuse to provide information relevant to putative class members. At the same time, Defendants sought to dismiss Plaintiffs' claims based on alleged drug issues in DCP but now refuse to provide information that would substantiate whether these allegations are true. By doing so, Defendants further delay and obstruct Plaintiffs' efforts to further prove the claims of dozens of people who were kept in archaic

1

and hazardous conditions over a nearly two-month period. This Court should not allow it, and it should grant Plaintiffs' motion.

First, the information requested by Plaintiffs about putative class members is clearly relevant and discoverable, and Defendants' objections ring hollow. Records, files, grievances, and complaints of the putative class members who were in the Restrictive Housing Units ("RHUs") during the Deprivation Period[1] are directly relevant to both Plaintiffs' class-wide and individual claims. For class certification, Plaintiffs must prove that their class claims meet the standards of numerosity, commonality, and typicality, all of which depend on evaluating the extent to which the named Plaintiffs and others are similarly situated. Discovery regarding putative class members is not just permissible, but necessary when class discovery has not been bifurcated, as is the case here. Plaintiffs are separately entitled to this information because the people housed in the RHUs were all potential witnesses to the conditions in those units, whose names are known to Defendants but not to Plaintiffs. And the DCP records of RHU individuals, along with their grievances and complaints, weigh directly on the question of how much notice the Defendants had about Plaintiffs' harm. Defendants' relevancy arguments fail, and so too, do their arguments regarding privacy concerns: federal actions, like the present matter, are not governed by state privacy regulations, and those privacy regulations do not create a *per se* privilege of non-disclosure.

Plaintiffs are similarly entitled to information regarding incidents in which Defendants found drugs and/or caught staff smuggling drugs,[2] as this information weighs

---

[1] The "Deprivation Period" is a term used to describe the period of time – approximately November 15 to December 22, 2023 – where Plaintiffs suffered the harm alleged in their complaint.
[2] The parties agreed that Plaintiffs' request only covered "illicit" drugs, as opposed to prescribed medicine, e.g.

directly on both Plaintiffs' claims *and* Defendants' defenses. Courts in the Third Circuit have emphasized that, where plaintiffs assert plausible municipal liability claims, documents regarding prior and subsequent incidents similar to the subject event are highly relevant to assessing policy, custom, and notice. These courts also regularly order the production of *entire* personnel and internal affairs files in prisoner civil rights cases, providing far broader disclosure than Plaintiffs seek here. Lastly, Plaintiffs are entitled to documents relevant to the reasonableness of Defendants' actions and their alleged justification: that Plaintiffs were deprived of heat, electricity, potable water, medical care, communication with their legal counsel and family members, among other things, because there were drug-use issues in DCP.

Third, Plaintiffs' requests for processes, protocols, and/or policies are directly relevant to Defendants' knowledge and acquiescence, and to Plaintiffs' municipal liability claims. Whether Defendants have changed previous policies (or not) weighs directly on whether their actions here were permitted or their policies modified in response to known deficiencies of previous instances of misconduct. If policies were changed and it removed relevant checks and balances on prison staff oversight, for instance, that would weigh directly on Defendants' intent and knowledge of the constitutional violations Plaintiffs allege. And if Defendants' policies have remained the same, that information remains relevant to Plaintiffs' claims: municipalities can be held liable where they have *maintained* or established policies, practices, or customs that have a substantial risk of causing harm or injury to Plaintiffs.

## HISTORY OF THE PARTIES' DISPUTES

This motion comes after nearly seven months of Plaintiffs' efforts to receive discovery material from Defendants. Plaintiffs sent Defendants their first discovery requests on October 10, 2025. On December 11, 2025, Defendants requested a 30-day extension to respond. The following day, Plaintiffs offered to agree to said extension, so long as Defendants 1) first produced their past-due initial disclosures; 2) agreed to an extension of Plaintiffs' deadline to join additional parties and amend their complaint; and 3) produced documents and interrogatories on a rolling basis as they were received. Defendants responded on December 16, 2025, agreeing to produce initial disclosures by December 26, 2025, and respond to Plaintiffs' first discovery request by January 15, 2026. On January 15, 2026, Defendants sent their responses, objecting to every single request from Plaintiffs, and produced approximately 500 documents.

Plaintiffs sent Defendants a letter a few weeks later setting forth the deficiencies in Defendants' discovery responses and requesting a meet-and-confer to discuss the parties' positions. Ex. 1. The parties conferred via phone on February 10, 12, and 17, 2026 for over four cumulative hours. While the parties were able to reach an agreement on some requests, a handful of disputes remained. Plaintiffs promptly sent Defendants a letter detailing the parties' positions, outlining the documents Defendants had agreed to provide and those which Defendants were still withholding. Plaintiffs asked Defendants to confirm the substance of the letter (or to otherwise raise concerns) but never received a response.

Plaintiffs then filed a dispute letter with this Court on March 13, 2026, detailing the parties' discovery disputes and asked the Court to compel Defendants' production of the remaining disputed items. ECF No. 66. Defendants then called Plaintiffs and

confirmed that they would provide the agreed-upon discovery materials by March 24, if not earlier. Defendants did not produce the agreed-upon discovery items (and still have not) but instead filed an untimely response to Plaintiffs' letter on March 26. ECF No. 67. A few days later, Plaintiffs filed a supplemental letter to notify the Court that Defendants had still not provided agreed-upon discovery material. ECF No. 69.

This Court held a conference on April 2, 2026 to discuss the parties' discovery disputes. Despite the parties' continued efforts, the aforementioned impasse remained. As such, the Court granted Plaintiffs leave to file a motion to compel, set a briefing schedule, and directed Plaintiffs to submit a proposed order requiring Defendants to produce the agreed-upon discovery.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Discovery is not limited to matters that will be admissible at trial so long as the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 29–30 (1984). To that end, "either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495 (1947); *see also Osagie v. Borough of State Coll.*, 586 F. Supp. 3d 314, 321 (M.D. Pa. 2022) (citing *Miller v. McGinley*, No. 1:20-cv-2270, 2022 WL 212709, at *2 (M.D. Pa. Jan. 24, 2022) ("Where a party receives what he deems to be 'evasive or incomplete' answers, he may file a motion to compel with the district court.")) (internal quotation marks omitted). The party filing a motion to compel must "demonstrate the relevance of the information sought to a particular claim or defense." *Miller*, 2022 WL 212709, at *2.

5

## ARGUMENT

### I.    INFORMATION ABOUT OTHER PEOPLE HOUSED IN THE RHUs IS NECESSARY FOR PLAINTIFFS' INDIVIDUAL AND CLASS CLAIMS

Many of the parties' discovery disputes concern Plaintiffs' requests for information relating to putative class members: specifically, incarcerated individuals housed in the RHUs during the Deprivation Period. Specifically, these disputes related to the following requests by Plaintiffs:

**Interrogatory #5**: Identify each and every member of DCP Staff who authorized, witnessed, reported, participated in, or documented any use of force or disciplinary action taken against any of the persons kept in RHUs during the Deprivation Period, including medical staff who treated any person for their injuries, and who the action was taken against, by name and inmate identifier.

**Interrogatory #6:** Identify—by name, housing unit, date of placement in RHUs, status of incarceration (i.e., whether someone was being held pre-trial or convicted), reason for being kept in RHUs, and any inmate identifier—all persons who were kept in RHUs during the Deprivation Period for longer than 24 cumulative hours.

**Interrogatory #12**: Identify, during the Deprivation Period, each time incarcerated persons kept in the RHUs were let out of their cells, and specify dates they were let out, amount of time (in minutes and hours) persons were allowed out of their cells, and specify if only certain persons were allowed out, the name of those persons allowed out.

**Request for Production of Documents #4**: Any and all Department of Correction records for people kept in the RHUs including but not limited to medical and disciplinary records.

**Request for Production of Documents #7**: Any and all grievances or written complaints received by DCP Staff, DCP administrators, DCP Stakeholders, or County Commissioners from November 15, 2023, to April 30, 2024, concerning the Deprivation Period, including but not limited to grievances or written complaints concerning environmental conditions, utility systems, temperature inside the cell units, lack of bedding or clothing, running water, treatment of incarcerated persons kept in RHUs, use of force, medication or medical attention, food and/or water, out-of-cell time (e.g., shower and recreation time), the Personal Item Seizure, and/or the Tablet Seizure, and any responses thereto or written communications related thereto.

6

Defendants have categorically refused to produce any identifying or individualized information concerning these individuals, only agreeing to produce information as it relates to the named Plaintiffs and redacting the names of any other incarcerated individuals in the documents produced so far, including in cell roster sheets. Besides boilerplate objections that these requests are "overbroad, unduly burdensome, vague, and disproportionate to the needs of the case," Defendants primarily contend that the requests are premature and insufficiently tailored unless and until a class is certified. Their objections lack merit.

### A. Plaintiffs' Class Claims Demand Disclosure of Putative Class Members' Records and Information

As a foundational matter, discovery under Federal Rule of Civil Procedure 26(b)(1) is intentionally broad and is not confined to the precise issues raised by the pleadings. Rather, discovery is designed to "narrow and clarify the basic issues" as litigation progresses. *Hickman*, 329 U.S. at 500–01. Consistent with this principle, the Supreme Court has explained that relevance "encompass[es] any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Thus, discovery is not limited to proving the merits of a claim; it extends to a variety of fact-oriented issues that may arise during litigation.

This principle applies with particular force in the class action context. In *Oppenheimer*, the Supreme Court expressly recognized that discovery may be used to develop facts necessary for determining class certification, including issues such as numerosity, commonality, and adequacy of representation under Rule 23. *Id.* at 351–52.

Indeed, the Court specifically rejected the notion that the identities of putative class members are categorically off-limits, explaining that there are circumstances in which "class members' names and addresses" are discoverable, particularly where such information is relevant to Rule 23 requirements or where communication with class members may yield information bearing on those issues. *Id.* at 354 n.20. Consistent with *Oppenheimer*, the Third Circuit has also held that plaintiffs may obtain identifying information for putative class members through discovery. In *Hoffmann-La Roche Inc. v. Sperling*, the Court ruled that representative plaintiffs were allowed to obtain names and addresses of discharged employees from the defendant-employer in order to facilitate collective representation. 493 U.S. 165, 170 (1989).

District courts within the Third Circuit have repeatedly held that discovery related to putative class members is appropriate *before* class certification because it bears directly on whether Rule 23's requirements can be satisfied. *See Plavin v. Grp. Health Inc.*, No. 3:17-cv-1462, 2022 WL 1911404, at *9 (M.D. Pa. June 3, 2022) (granting defendant's motion to compel the identities of putative class members who had expressed an interest in joining the action over the plaintiff's objection on the grounds of privilege); *Knaupf v. Unite Here Loc. 100*, No. 3:14-cv-6915, 2015 WL 7451190, at *5 (D.N.J. Nov. 23, 2015) (denying defendant's motion to limit discovery to only plaintiff's individual claims in Rule 23 setting, thus granting the plaintiff's request to discover the names of other similarly situated employees within the scope of the proposed class); *Gates v. Rohm and Haas* Co., No. 2:06-cv-1743, 2006 WL 3420591, at *2 (E.D. Pa. Nov. 22, 2006) (granting motion to compel the names and addresses of the putative class members in a Rule 23 class action lawsuit).

8

Some district courts have been particularly clear that such information is not only permissible, but potentially even necessary to establish class certification. In *Burkhart-Deal v. Citifinancial, Inc.*, the court held "[t]here is no question that the identity of [putative class members] in Pennsylvania is reasonably calculated to lead to the discovery of admissible evidence regarding commonality, typicality, and numerosity of the proposed class." *Burkhart-Deal v. Citifinancial, Inc.*, No. 2:08-cv-1289, 2009 WL 1750915, at *3 (W.D. Pa. June 19, 2009). Likewise, in *Joyce v. Colter Energy Services USA, Inc.*, the court compelled production of putative class member information over defendants' objections of prematurity, explaining that "it is quite germane for plaintiff to receive the names and addresses of the putative class members even though the class has not been certified, because it will reasonably lead to information bearing on the issues of numerosity, typicality and commonality." *Joyce v. Colter Energy Services USA, Inc.*, No. 2:22-cv-1367, 2024 WL 326664, at *5 (W.D. Pa. Jan. 29, 2024). Notably, the court rejected the argument that discovery should be delayed until after certification, observing instead that class certification could not properly be adjudicated until the relevant discovery had been completed. *Id.*

Taken altogether, these authorities make clear that Plaintiffs are entitled to obtain the identities of putative class members and related information at this stage of the litigation. Courts in this jurisdiction have consistently held that pre-certification discovery of the names and contact information of other putative class members is appropriate. Such discovery falls squarely within Rule 26(b)(1)'s broad relevance standard and is essential to developing the factual record necessary for class certification. Defendants' assertion that these requests are premature is therefore without merit.

9

**B. Plaintiffs' Individual Claims Separately Require Disclosure of Information About Relevant Witnesses to the Conditions at Issue**

Moreover, even if this were not a class action, Plaintiffs would still be entitled to know the names of people housed in the RHUs during the Deprivation Period and to discover any documents relating to their experience of the conditions of confinement at issue.

First, Defendants cannot be allowed to produce witnesses of their own choosing to testify that the conditions in the RHUs during the Deprivation Period were not so bad, while hiding from Plaintiffs the names of incarcerated persons who may have contrary knowledge. Among the core factual issues in this litigation are how cold it was, how dark it was, whether the water was on, whether the electricity was on, and whether tablets and medication (among other things) were available in particular housing units on particular dates. The people who lived in those housing units on those dates are *all potential witnesses* to those potentially disputed facts. Defendants know exactly who all these people are because they presumably maintain institutional records identifying who was housed in what cell on what date. Defendants are therefore free to contact those individuals (some of whom may remain in Defendants' custody and under Defendants' control), interview them, and determine whether they may be able to offer relevant testimony that could be used to support Defendants' defenses at trial.

Under these circumstances, it is completely untenable to hide these people's identities from Plaintiffs. The identities of known potential witnesses to the very incident that is the subject of this litigation are plainly discoverable. *See Byrnes v. Moody*, No. 2:15-cv-00570, 2015 WL 14094787, at *1 (W.D. Pa. Nov. 16, 2015) (compelling the disclosure of non-party inmates and dismissing Defendants' arguments regarding

10

confidentiality); *see also Hughes v. Herbster*, No. 1:20-cv-02204, 2021 WL 4123977, at *2 (M.D. Pa. 2021) (compelling "clearly relevant . . . identities of the officers" as "witnesses who may be able to corroborate [plaintiffs'] allegations.").

Second, complaints made and grievances filed by people other than Plaintiffs about the conditions at issue in this case are relevant to Defendants' subjective knowledge of the same. What the leadership of DCP knew about the deprivations in the RHUs—and when they knew it—are key parts of this case. On Plaintiffs' Fourteenth Amendment claims, Plaintiffs allege, among other things, that Defendants acted with an impermissible subjective intent to punish pretrial detainees who were not subject to any punishment. Compl. ¶ 267, On Plaintiffs' Eighth Amendment claims, Plaintiffs must prove that Defendants were subjectively aware of, and deliberately indifferent to, a substantial risk to the health and safety of incarcerated people. *See Farmer v. Brennan*, 511 U.S. 825, 838 (1995). On Plaintiffs' municipal liability claims based on ratification and the acts of final municipal policymakers, they must prove that members of the Dauphin County Jail Oversight Board were subjectively aware of the conditions at issue. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996). To obtain punitive damages, Plaintiffs must show that Defendants acted willfully, wantonly, or recklessly. All these issues turn, in part, on *Defendants' knowledge* of conditions in the RHUs before, during, and after the Deprivation Period.

In evaluating what Defendants knew about the conditions of confinement at issue in this case, it is immaterial whether Defendants learned of those conditions from *Plaintiffs* or from another incarcerated person. If grievances or complaints were filed complaining about conditions in the RHUs during the Deprivation Period, those grievances are equally probative of Defendants' notice, knowledge, and state of mind

11

regardless of whether they were submitted by a Plaintiff or by his neighbor in an adjoining cell. Plaintiffs are therefore entitled to discover whether *anyone* put Defendants on notice of the conditions of confinement at issue at issue in this case. *See Jacobs v. City of Pittsburgh*, 143 F. Supp. 3d 307, 316 (W.D. Pa. 2015) (compelling productions of grievance ledgers and internal affairs documents to "show whether [Warden, Deputy Warden, and internal affairs employee] knew of, and tolerated, past or ongoing misbehavior."). All complaints made and grievances filed by incarcerated persons concerning conditions in the RHUs during the Deprivation Period are therefore relevant.

### C. Defendants' Privacy Objections Hold No Weight

To be clear, Defendants cannot defeat Plaintiffs' efforts to obtain relevant information about putative class members by pointing to the Pennsylvania History Record Information Act ("PHRIA"). *See* Ex. 1. This issue has already been decided: the "PHRIA does not create a privilege" in federal courts considering federal questions. *D.N. ex rel. Nelson v. Snyder*, No. 1:08-cv-0526, 2009 WL 1362665, at *1 (M.D. Pa. May 13, 2009) (citing cases).

The identities, records, grievances, and files of the people kept in the RHUs are directly relevant to Plaintiffs' claims. Both Plaintiffs' class claims and individual claims depend on knowing who these people are, what they saw and experienced, and if they filed grievances and/or complaints based on their experiences. They are witnesses and suffered the same deprived conditions as Plaintiffs. And the privacy statutes referenced by Defendants neglect established precedent and should be ignored. This Court should thus grant Plaintiffs' motion for putative class member information and related files.

## II.    OTHER INSTANCES OF ILLICIT DRUG USE IN DCP ARE RELEVANT TO THE PARTIES' CLAIMS AND DEFENSES

Plaintiffs' requests that Defendants "[i]dentify any and all drugs that were discovered or reported in DCP" from January 1, 2020 to present, and that Defendants identify DCP staff who were found to have smuggled in drugs and the actions taken against those staff, are relevant and appropriate. Defendants argue that their discovery obligations require only that they provide information about drugs found during the Deprivation Period, specific to the RHUs, and findings related to Named Plaintiffs. In doing so, Defendants attempt to impermissibly narrow their Rule 26 obligations.

### A. Other Instances of Drug Issues at DCP Are "Clearly Relevant" To Plaintiffs' Municipal Liability Claims

Importantly, to sustain a Section 1983 claim for deliberate indifference or municipal liability, a plaintiff must establish "that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations," and is entitled to discovery to prove as much. *See Beck*, 89 F.3d at 972 (internal quotes omitted); *see also Tarapchak v. Lackawanna Cnty.*, 173 F. Supp. 3d 57, 85 (M.D. Pa. 2016) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."); *see also Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998) ("We have held that a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate."); *Fletcher v. O'Donnell*, 867 F.2d 791,

13

793 (3d Cir. 1989) ("A custom may be established through a municipalities' "knowledge and acquiescence" to governmental conduct and "a single application of the custom suffices to establish . . . the agency's liability.")

Accordingly, "[t]he presence of a *Monell* claim entitles Plaintiff to discovery beyond the scope of [a particular] incident." *Furey v. Wolfe*, No. 2:10-cv-1820, 2011 WL 597038, at *2 (E.D. Pa. Feb. 18, 2011). In fact, courts in the Third Circuit regularly order *broader* discovery than what Plaintiffs seek here, such as entire internal affairs reports of correctional officers. In *Shorter v. Samuels*, the court confirmed: "There can be no question of the relevancy of police personnel files to the allegations of the complaint, particularly where the complaint specifically alleges the inadequacy of the municipality's supervising and training of defendant police officer." 2021 WL 1017375, at *34 (M.D. Pa. 2021) (quoting *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987)) (cleaned up); *see also Guerrido-Lopez v. City of Allentown*, No. 15-cv-1660, 2016 WL 1182158, at *2 (E.D. Pa. Mar. 16, 2016) (upholding order compelling defendants to produce discovery of internal affairs files other than those of named defendants) (citing cases); *see also, Reid v. Cumberland Cnty.*, 24 F. Supp. 3d 396, 415 (D.N.J. 2013) (finding that a defendant's production of "five years of internal affairs documents relating to excessive force is not excessive or overbroad."); *see also Groark v. Timek*, 989 F. Supp. 2d 378, 398 (D.N.J. 2013) (ordering defendants to produce all pre- and post-incident internal affairs files from the previous six years) (quoting *Barrett v. City of New York*, 237 F.R.D. 39, 41 (E.D.N.Y. 2006)).

Plaintiffs' municipal liability claims will depend, in part, on the extent to which the municipal policymakers were aware of similar courses of conduct in other instances of drug issues in DCP. Other instances of similar drug issues and similar deprivations would

14

clearly support Plaintiffs' municipal liability claims. The same can be said for Plaintiffs' requests for drug smuggling records–it is relevant to Plaintiff's municipal liability claims if Defendants have been on notice of instances of drug smuggling in prior years but have improperly investigated or disciplined those employees or officials overseeing those employees, like Defendants Briggs and Pierre. *See Lee v. Smith*, No. 1:18-cv-02360, 2019 WL 5869747, *3 (M.D. Pa. 2019) (finding "prior disciplinary complaints, investigations, or findings concerning prior incidents involving these defendants and failure to intervene to protect inmates . . . clearly relevant.")

Plaintiffs should be allowed to prove up their municipal liability claims by investigating other instances of drugs issues at DCP and Defendants' reactions to the same.

## B. Other Instances of Drug Issues Are Clearly Relevant to the Reasonableness of Defendants' Deprivations

It is also well-established that plaintiffs are entitled to discovery material related to the reasonableness and custom of a defendant's actions in prisoner civil rights cases. *C.f. Ryder v. Bartholomew*, 715 Fed. Appx. 144, 153 (3d Cir. 2017) (reversing summary judgment because plaintiff did not have a full opportunity to conduct *Turner* discovery that directly weighed on the reasonableness or custom of defendant-prison administrators' actions) (relying on *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The Court speaks to this in *Osagie v. Borough of State College*, 586 F. Supp. 3d 314, 323 (M.D. Pa. 2022). In *Osagie*, the Court compelled city defendants to produce prior records of an officer's mental state, substance abuse, and past incidents of domestic abuse where a plaintiff alleged city defendants were deliberately indifferent to the officer's excessive

15

force. 586 F. Supp. 3d 314, 323 (M.D. Pa. 2022). The *Osagie* court ordered the production, in part, because the finder of fact had to determine "whether the harm to [plaintiff] was reasonably foreseeable" by the municipal defendants. *Id.* at 323. *See also Johnson v. Wetzel*, No. 1:16-cv-864, 2016 WL 4158800, at *6 (M.D. Pa. 2016) (ordering defendants to produce records of "similarly-situated inmates" as plaintiff because those records "may bear upon credibility inquiries or otherwise allow [plaintiff's] counsel to test the veracity" of the Defendants' position.).

The records of drugs and smuggling in DCP similarly weigh on Defendants' reasonableness here. Defendants' claim that their decisions–to cut off Plaintiffs' electricity and heat (in the middle of winter), to remove all of their personal belongings and their ability to contact anyone (including loves ones and legal counsel), to leave them without potable water or vital medications, and to prohibit exercise and showers for weeks–must be reasonable or rationally related to a "legitimate, non-punitive purpose." *See Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (providing standards under the Fourteenth Amendment for pretrial detainees) (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)); *see also, Washington v. Klem*, 497 F.3d 272, 277 (3d Cir. 2007) (holding that Defendants cannot "substantially burden" religious exercise without a compelling interest and their action must be the "*least restrictive means* of furthering that . . . interest.") (emphasis added).

Defendants' decisions here were not made in a vacuum: they made these decisions having experience with other drug-related issues in DCP. Like in *Osagie*, Plaintiffs are entitled to investigate whether the deprivations at issue here were "foreseeable" given their experience with "prior instances" of drug issues." *See Osagie*, 586 F. Supp. 3d at 323. Indeed, Defendants' drug interdiction and suppression efforts—if that was their actual

purpose—must be understood in light of what the Defendants knew in regard to how drugs were entering the facility, what actions had been taken in the past, whether those actions were effective, and whether other housing units were being treated similarly as the RHUs. If Defendants have, for instance, used a protocol or practice that effectively prevented drug use in DCP in the past, that would be relevant to the method of deprivation at issue here. In that same vein, if Defendants discovered their employees were previously smuggling in drugs and they took no action to root out and fire those employees, that would weigh directly on the reasonableness of their actions during the Deprivation Period. Indeed, because Plaintiffs must prove that Defendants' actions were *not* reasonable, they are entitled to these records.

## C. Other Instances of Drug Issues Are Relevant to Defendants' Defenses

Discovery bearing on a defendant's defenses or justifications is also clearly discoverable. *Doe v. Schuykill County Courthouse* is illustrative on this point. 343 F.R.D. 289, 293 (M.D. Pa. 2023). In *Doe*, employees brought claims against a county courthouse, alleging they were sexually harassed and retaliated against for making complaints about their supervisor. *Id.* at 292. The defendants insisted "that they had an independent, good faith and non-retaliatory justification for their disciplinary decisions," based on, in part, communications with counsel. *Id.* The plaintiffs sought "communications which may form the basis of a proposed defense in this case." *Id.* The court rejected defendants' arguments that the discovery material was protected by attorney-client privilege and held that defendants "may not use the advice of counsel as both a sword and a shield" and ordered discovery of these communications because they were relevant to defendants'

17

defenses. *Id.* at 296. Here, too, Defendants cannot allege they had drug issues that were so bad they treated Plaintiffs like they were sub-human only to then "shield" Plaintiffs' from investigating the depth of that defense. *See Id.* at 293.

Plaintiffs' requests for documents reflecting on other incidents of drug issues and substantiated findings of smuggling by staff is relevant to establish notice, knowledge, pattern, practice, or custom here. Plaintiffs' municipal liability claims, by themselves, make this information discoverable because Plaintiffs must establish a pattern, practice, or custom on the part of the city Defendants, which may require evidence of prior (and subsequent) instances of misconduct. *See, e.g., Shorter,* 2021 WL 1017375, at *32-33. Separately, prior and subsequent incidents of drug issues and smuggling will weigh on the reasonableness and intention of the Defendants' actions—Plaintiff will have to prove to the factfinder that Defendants Briggs and Pierre acted unreasonably, which independently make these items discoverable like in *Osagie. See,* 586 F.Supp. 314, at 323. And, unless Defendants want to completely abandon their defense—that their actions were justified because of alleged drug use in DCP—they need to turn over documents that weigh on that justification. *See Doe,* 343 F.R.D. at 296 ("[A]bsent some affirmative abandonment of any defense," Defendants "open the door to appropriate discovery.").

### III. DCP PROCESSES, PROTOCOLS, PROCEDURES BEAR DIRECTLY ON THE UNCONSTITUTIONAL CONDUCT AT ISSUE

Plaintiffs have requested Defendants provide "processes, protocols, and/or policies from 2023 to 2024, concerning use of force and disciplinary action." Plaintiffs have additionally requested "DCP written policies, General Orders, training materials, or other written guidance" from January 2020 to present concerning the following topics:

- DCP Staff and their interactions with incarcerated persons as it relates to their job roles;

- DCP Staff carrying out duties of care;

- Requirements under statutory law and/or common law;

- Use of solitary confinement;

- Electronic and physical mail;

- Placement decisions and determinations concerning where incarcerated persons are kept during their time in DCP, including decisions to transfer persons inside of DCP to and from different cell units or blocks;

- and, use of force and use of force reporting.

Defendants have yet to produce any policies to date, and complain that any policies active either previous or subsequent to the Deprivation Period are irrelevant. This is simply untrue. Defendants must produce policies governing the conditions at issue because they bear directly on central constitutional issues, are essential to their resolution, and impose minimal burden.

## A. Plaintiffs' Requests Are Time-Bound and Sufficiently Tailored to the Constitutional Violations Alleged

In conditions-of-confinement cases, institutional policies and practices lie at the heart of the constitutional inquiry, because the analysis concerns systemic conditions under which a prisoner is confined, not merely isolated acts. *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992); *see also Sourbeer v. Robinson*, 791 F.2d 1094, 1101 (3d Cir. 1986). Policies–evaluated in their quality, purposes, or lack thereof–are a common evidentiary basis factored in by courts because they govern said conditions and bear directly on the

19

challenged conduct. *Hernandez v. Cnty. of Monterey,* 110 F. Supp. 3d 929, 946-947 (N.D. Cal. 2015) (holding that jail policies were essential to evaluating deliberate indifference and municipal liability); *Belbachir v. Cnty. of McHenry,* 726 F.3d 975, 983 (7th Cir. 2013) (discussing jail policies in their assessment of notice, training, and constitutional violations); *Madrid v. Gomez,* 889 F. Supp. 1146, 1220–30 (N.D. Cal. 1995) (relying extensively on prison policies to evaluate Eighth Amendment violations). So too, is the case here.

Plaintiffs have requested policies from 2023 to 2024 and that temporal scope is appropriate. Policies outside the immediate Deprivation Period are relevant because they may reveal whether Defendants modified their practices in response to known issues, including emergent concerns such as contraband or institutional security. If Defendants changed their policies after the events at issue, those changes may bear directly on the inadequacy of prior policies or demonstrate a departure from accepted practices and customs. Conversely, if policy changes occurred before the Deprivation Period, Plaintiffs are entitled to explore the reasons for those changes and whether they reflect policymakers' knowledge of the unconstitutional conditions alleged. *See United States v. Con-ui,* No. 3:13-cr-123, 2015 WL 13501329, at *2-3 (M.D. Pa. May 8, 2015) (finding prison policies over a five-year time span to be relevant and discoverable); *see also Montanez v. Tritt,* No. 3:14-cv-1362, 2016 WL 3035310, at *3 (M.D. Pa. May 26, 2016) (granting Plaintiff's motion to compel all documents that contain, mention, construe, or refer to policies on staff responses to inmate on inmate violence); *Leaphart v. Little,* No. 23-cv-1064, 2024 WL 249008, at *8 (W.D. Pa. Jan. 23, 2024) (directing Defendants to identify and provide Plaintiff copies of all relevant policies requested). Without access to Defendants' policies from previous and subsequent years, Plaintiffs cannot meaningfully

20

assess whether the challenged conditions were authorized, tolerated, or contrary to official standards. Nor can Plaintiffs test Defendants' anticipated justifications or establish whether the conduct at issue reflects deliberate indifference, punitive intent, or institutional custom.

Defendants' characterization that Plaintiff seeks "all prison policies" is just false. Courts deny motions to compel only where requests are untethered to the claims at issue or facially overbroad. See, e.g., *Victor v. Lawler*, No. 3:08-cv-1374, 2010 WL 521118, at *3 (M.D. Pa. Feb. 9, 2010). Here, Plaintiffs seek only policies that govern topics underlying the conditions and municipal liability claims alleged: specifically, those concerning "DCP Staff and their interactions with incarcerated persons as it relates to their job roles; DCP Staff carrying out duties of care; Requirements under statutory law and/or common law; Use of solitary confinement; Electronic and physical mail; Placement decisions and determinations concerning where incarcerated persons are kept during their time in DCP, including decisions to transfer persons inside of DCP to and from different cell units or blocks; and, use of force and use of force reporting." Unlike the sweeping requests rejected in other cases, Plaintiffs' requests are narrowly tailored in subject matter, directly correspond to the constitutional violations alleged, and seek a time-bound range of policies that are relevant to Defendants' culpability. Such targeted requests fall squarely within permissible discovery.

### B. Plaintiffs' Requests Are Not Unduly Burdensome

Contrary to the objections asserted by Defendants in their response to Plaintiffs' requests, the requested discovery is neither unduly burdensome nor disproportionate. As a prison facility, Defendants are expected to maintain policies and procedures in an

21

organized and retrievable format in the ordinary course of business. FRE 803(6); *see also* 37 Pa. Code § 95.224 (specifying how correctional institutions are required to maintain written policies and procedures governing operations). Producing prior and subsequent versions of policies over a limited and recent time period imposes, at most, a minimal burden, particularly when weighed against the significant probative value of the information. Without access to the governing policies, Plaintiffs cannot assess whether Defendants complied with their own standards, test Defendants' purported justifications, or establish that the challenged conditions were the result of institutional practices or customs. In addition, these policies are in Defendants' sole possession, and courts recognize that discovery is particularly appropriate where, as here, there exists a significant asymmetry of information between the parties. *Equal Employment Opportunity Comm'n v. Kronos Inc.*, 620 F.3d 287 (3d Cir. 2010).

Because the requested policies are directly relevant, narrowly tailored, and essential to Plaintiffs' claims, Defendants should be compelled to produce them.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion to compel discovery.

Respectfully submitted,

/s/ Margaret Hu

ABOLITIONIST LAW CENTER

22

Bret Grote
Margaret Hu
Abolitionist Law Center
990 Spring Garden, Suite 306
Philadelphia, Pennsylvania 19123
412-654-9070
bretgrote@alcenter.org
margo@alcenter.org


/s/ Raymond Durham


KAUFMAN LIEB LEBOWITZ & FRICK
LLP

Douglas E. Lieb
Raymond Durham
18 East 48th Street, Suite 802
New York, New York 10017
(212) 660-2332
dlieb@kllf-law.com
rdurham@kllflaw.com

\* Admitted *pro hac vice*

Dated: April 30, 2026

23