**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KANI LITTLE; HECTOR RAMOS; JAMES PATTERSON, on their own behalf and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>DAUPHIN COUNTY; GREGORY BRIGGS, Warden of Dauphin County Prison, in his Individual Capacity; LIONEL PIERRE; Chief Deputy Warden, in his Individual Capacity; ROGER LUCAS, Custody Major, in his individual Capacity; MARK SKELTON, Lieutenant, in his Individual Capacity; and JOHN DOES No. 1-12, in their Individual Capacities,<br><br>Defendants. | : | Civil Action No. 4:24-cv-02169<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY**

## I. Introduction

Defendants' refusal to produce ordinary discovery material rests on misapprehension, mis-citation, and misrepresentation of the relevant legal standards and is designed to avoid producing basic information relevant to Plaintiffs'

individual and class claims. Defendants ignore many of Plaintiffs' arguments and rely, almost entirely, on inapplicable and distinguishable precedent in opposition to Plaintiffs' Motion to Compel.

This class-action discovery dispute concerns narrow, routine requests that are relevant and proportional to Plaintiffs' allegations of systemic harm in Dauphin County Prison's ("DCP") Restricted Housing Units ("RHU"). Plaintiffs' requests seek to discover who was in the RHU during the Deprivation Period (as relevant witnesses and putative class members), what conditions they faced (as relevant to class certification), what complaints they lodged (as relevant to Defendants' knowledge of conditions), and how DCP responded or did not respond to their conditions (as relevant to Defendants' pattern, practices, and customs). Plaintiffs also ask Defendants to provide discovery regarding previous drug issues in DCP and the source of those drugs, as relevant to Defendants' actions and purported justification here. And lastly, Plaintiffs' request policies, procedures, and protocols related to use of force and conditions of confinement in DCP.

Foundationally, these requests are standard in prison litigation of both individual and class claims. In a class action, relevant, nonprivileged jail records, grievances involving non-named plaintiffs, drug-treatment information, and policies are discoverable. Yet Defendants seek to block this standard discovery by relying on distinguishable *pro se* authority and inapplicable confidentiality laws, disregarding

the operative protective order, assuming bifurcation of class-certification and merits discovery, and overstating the scope and effect of Plaintiffs' requests. For the reasons set out in Plaintiffs' opening brief (ECF No. 76) and below, the Court should grant the motion so that Plaintiffs may meaningfully pursue class certification and the merits issues.

## II. Argument

Plaintiffs allege systemic, inhumane conditions suffered by individuals and putative class members incarcerated at DCP from approximately November to December of 2023. Proving both individual and class claims necessarily requires evidence beyond the named Plaintiffs – Defendants' position therefore ignores the fundamental nature of even basic discovery.

Plaintiffs' requests are common in the prison context, appropriately tailored to the instant case, and proportional. Plaintiffs' counsel routinely litigates these matters and has received such information in other class actions against Pennsylvania Department of Corrections and Pennsylvania County Jail Defendants. *See* Exhibit 1, Declaration of Bret Grote. Indeed, these kinds of requests rarely generate discovery disputes – precisely because they are so common as to represent non-issues.

Three overarching errors run throughout the Defendants' brief in their effort to stymie discovery. **First**, Defendants conflate individual, *pro se* prisoner litigation

with this counseled putative class action. Every case Defendants cite involve litigants that did not have the benefit of counsel, involved litigants who were incarcerated at the time of their suit, and were not able to enter into an attorneys-eyes only agreement that the parties' can enter into in the instant case. Those cases are not "more analogous" and do not control here, where there are multiple individual Plaintiffs and putative class members, represented by counsel, who experienced similar unconstitutional conditions for a period of over a month at a correctional facility. **Second**, Defendants incorrectly assert that Plaintiffs are *only* entitled to class certification discovery, when there is no bifurcation order in effect. Even if there were a bifurcation order, Defendants' proposed modifications would stymy the most narrowly conceived class certification. Aggregated, de-identified data is not an adequate substitute for the individualized evidence Plaintiffs need to satisfy Rule 23. **Third**, Defendants' claimed privacy and security concerns are either wholly inapplicable in a federal case or are already addressed by the confidentiality agreement and protective order. The discovery requested is reasonable and proportionate. Plaintiffs' motion should be granted.

### a. Defendants' Citations to *Pro Se* Cases are Inapposite, and Their Security Concerns are Otherwise Unsupported.

In each section of their brief that addresses Plaintiffs' contentions, Defendants attempt to pass off a string of non-class-action discovery disputes litigated by *pro se*

plaintiffs as "more analogous Middle District authority." Defs' Brief in Opposition to Plaintiffs' Motion to Compel Discovery, at 10, ECF No. 80 ("Defs' Br."). This is misleading. Each of the cases Defendants cite at pages 10-11, 15-16, and 20 was brought and maintained by an incarcerated plaintiff without counsel, and not a single one involved class-action or *Monell* claims at issue here. *Montanez v. Tritt*, No. 3:14-CV-1362, 2016 WL 3035310, at *1 (M.D. Pa. May 26, 2016) ("Jose Montanez, Huntingdon, PA, pro se" at SCI Frackville); *Allen v. Eckard*, No. 1:17-CV-996, 2019 WL 1099001 (M.D. Pa. Mar. 8, 2019) ("Anthony Allen, Indiana, PA, pro se" at SCI Pine Grove); *Lofton v. Wetzel*, No. 1:12-CV-1133, 2015 WL 5761918, at *2 (M.D. Pa. Sept. 29, 2015) ("Jermaine Lofton, Bellefonte, PA, pro se" at SCI Rockview); *Torres v. Clark*, No. 1:10-CV-1323, 2011 WL 4898168 (M.D. Pa. Oct. 13, 2011) ("Israel Jacob Torres, Marienville, PA, pro se" at SCI Frackville); *McDowell v. Litz*, No. 1:08-CV-1453, 2009 WL 2058712 (M.D. Pa. July 10, 2009) ("John McDowell, Dallas, PA, pro se" at SCI Dallas).

Discovery disputes involving *pro se* incarcerated plaintiffs implicate a distinguishable set of concerns and a distinct body of jurisprudence. The unique challenges faced by incarcerated *pro se* litigants in successfully obtaining discovery is well-recognized in legal scholarship. *See* James Stone, *The Prison Discovery Crisis*, 134 Yale L. J. 2751, 2783-85 (June 2025); William Bennett Turner, *When Prisoners Sue: A Study of Prisoner Section 1983 Suits in the Federal Courts*, 92

Harv. L. Rev. 610, 624-25 (1979). The Federal Rules contain explicit carveouts for such litigants. *See* Fed. R. Civ. P 26(a)(1)(B)(iv). The cases cited by Defendants articulate anxieties that are specific to the *pro se* context, and not generalizable to a counseled action. The *Allen* court, for instance, underscored specific "security risks that are apparent from an *inmate-plaintiff* possessing a floorplan or diagram of the inside of a prison." 2019 WL 1099001 at *3 (emphasis added). The *Torres* court recognized the unique privacy implications of disclosing "mental-health information *about one inmate to another*." 2011 WL 4898168 at *3 (emphasis added).

This is not a *pro se* action. The *pro se* plaintiffs in the cited cases were unable to craft agreements limiting confidential discovery materials to "counsel of record" or their "representatives," "experts or consultants" – the exact provisions that have been operative in the instant case for months. Stipulation and Protective Order Governing Confidentiality of Documents and Information of Dauphin County, ECF No. 63 (March 3, 2026); Order Approving Stipulation, ECF No. 65 (March 4, 2026). This confidentiality agreement is clearly responsive to Defendants' repeated requests for "protective-order restrictions." Defs' Brief, at 12. Defendants are at liberty to mark disclosures "confidential" under the extant protective order, subject to Plaintiffs' challenge should they find a designation overbroad.

Beyond citations to inapposite case law, Defendants' security arguments are unspecific and unpersuasive. They offer only "the sorts of broad allegations lacking

in specific reasoning that the Third Circuit forbids," even as a justification for filing documents under seal, away from *public* view. *Melendez v. Steberger*, No. 2:20-CV-02635, 2022 WL 2239959, at *2 (E.D. Pa. June 22, 2022) (citing *In re Avandia Marketing, Sales Practices and Prods. Liab. Litig*., 924 F.3d 662, 672 (3d Cir. 2019); *In re Cendant Corp*., 260 F.3d 183, 194 (3d Cir. 2001)). It goes without saying that more would be required to withhold attorneys-eyes-only discovery.

**b. Defendants Wrongfully Assume Discovery is Limited to Class Certification, While Their Proposed Limitations Would Render Class Certification Impossible.**

Defendants alternatively criticize Plaintiffs' requests as overbroad for "class certification discovery" purposes and as inappropriate "before certification." Defs' Br., at 10. This betrays a misunderstanding of the case management orders informing Plaintiffs' requests. Defendants have not sought, and none of this Court's orders contemplate, bifurcated class certification and merits discovery. The initial joint case management plan and operative scheduling order set dates for the close of fact and expert discovery, *without* distinct class certification and merits stages. ECF No. 54 at 9 (Nov. 21, 2025), ECF No. 61 at 2-3 (Dec. 22, 2025).

Plaintiffs' discovery requests bear on both class certification and merits. This is appropriate given the consolidated discovery schedule and the inherent overlap between discovery relevant to class certification and the merits of this case. *Compare Conner v. Perdue Farms, Inc.*, 2013 WL 5977361, at *3-6 (D.N.J. Nov. 7, 2013)

(granting bifurcation motion to sever false-advertising class certification discovery from severable merits discovery concerning "actual chicken-raising practices" that would "cost Defendants several millions of dollars and take years to complete") *with Bronstin v. Upstart Network, Inc.*, 2026 WL 893681, at *3 (M.D. Pa. Apr. 1, 2026) (denying motion to bifurcate discovery, noting that "[c]lass determinations generally involve considerations that are enmeshed in factual and legal issues comprising plaintiff's cause of action"). With consolidated discovery, Plaintiffs are under no burden to limit their requests to subject matter strictly limited to class certification. Factual issues concerning this putative class's numerosity, commonality, and typicality are enmeshed with merits questions concerning their abject conditions of confinement.

1. *Aggregated Data is not an Adequate Substitute*

With that being said, several of Plaintiffs' requests are simply necessary for class certification. Defendants' limitations would render even the narrowest class certification briefing impossible, which perhaps is Defendants' point. With the protective order in place, Defendants are already entitled to designate materials "confidential," subject to Plaintiffs' challenge. Any additional redaction, "de-identification," and aggregation is not workable. Such alteration prevents Plaintiffs from identifying and interviewing witnesses, verifying accuracy of documents, or uncovering patterns of misconduct. Moreover, it presupposes that Defendants

employed accurate record-keeping processes without any way of verifying that information. For example, allowing Defendants to merely aggregate the number of grievances presupposes that that number is an accurate reflection of how many grievances were actually submitted. Plaintiffs have already identified Defendants' inaccurate production of documents they agreed to produce, which would have gone undiscovered had Plaintiffs' relied wholly on Defendants' representations. *See* ECF No. 81 at 5-6.

**c. Defendants' Remaining Objections are Not Legitimate**

1. *Privacy objections are overstated and legally insufficient*

Defendants argue that privacy concerns can serve as a categorical bar to much of Plaintiffs' requested discovery. None of their arguments stand up to scrutiny. The privacy protections invoked are either accounted for by the extant protective order, or are wholly inapplicable to the discovery sought.

Defendants' concerns about HIPAA-protected medical information are already allayed by the protective order. ECF No. 63, 65. Defendants refer to 45 C.F.R. Parts 160 and 164 *in toto* without referencing the specific provision applicable to discovery. A HIPAA-covered entity may disclose otherwise protected information in response to a discovery request, provided that a legally enforceable qualified protective order is in place. 45 C.F.R. § 164.512(e)(1)(ii)(B); *see also Johnson & Johnson Health Care Sys. Inc. v. Save On SP, LLC*, No. 22-02632, 2025 WL

1640192, at *7-8 (D.N.J. June 10, 2025). A qualified protective order must prohibit the parties from using the protected health information (PHI) for any purpose other than the litigation and must provide for the return or destruction of the PHI at the end of the litigation. 45 C.F.R. § 163.512(e)(v)(A)-(B). That is exactly what the court-approved confidentiality stipulation in this case does. ECF No. 63 at ¶ 3 (providing for use of confidential information only in connection with this action), ¶ 9 (providing for return or destruction of confidential information after final disposition). Plaintiffs have never objected to the confidential production of non-party health-related information. Defendants have simply refused to produce any such information at all and make no attempt to argue that the protective order in place is insufficient.

The state confidentiality laws cited by Defendants have no bearing here. In a federal case, the "privilege" referenced in Fed. R. Civ. P. 26(b)(1) is governed by Fed. R. Evid. 501, and in turn the U.S. constitution, federal statute, or rules prescribed by the Supreme Court – not state law. *Pearson v. Miller*, 211 F.3d 57 (3d Cir. 2000) (addressing MHPA specifically).[1] While state confidentiality statutes and state-law privileges may merit consideration as a matter of comity, "the

[1] With that being said, 45 C.F.R. 164 Subpt. E is explicitly incorporated into Pennsylvania's Mental Health Procedures Act at 50 P.S. § 7111(a)(5). If the MHPA operated as an evidentiary privilege in federal court, the qualified protective order would dispense with Defendant's concerns on these grounds as well. Since it does not, Defendants have no legally cognizable concerns to alleviate.

appropriateness of deference to a state's law of privilege is diminished … in cases in which a defendant state actor alleged to have violated citizens' federal rights is asserting the privilege." *Id.* at 67-68; *see also Benedict v. McMahon*, 315 F.R.D. 447, 452 (E.D. Pa. 2016) (CHRIA, 18 Pa. C.S. § 9101 *et seq.*, does not operate as blanket privilege in federal question case); *Curtis v. McHenry*, 172 F.R.D. 162, 164 (W.D.Pa.1997) (same).

Defendants' invocation of 42 C.F.R. Part 2 is misplaced. Faced with allegations that the DCP cracked down on suspected drug use with egregious collective punishment, they now seek to invoke protections meant for substance abuse treatment and rehabilitation records. Plaintiffs' have not sought these records and Defendants' have made no showing that their records contain such information.

2. *Considerations of Proportionality and Burden Favors Production of the Requested Discovery Without Redactions*

On May 28, 2026, Defendants produced a "privilege log" defending 200 distinct redactions across the 1067 pages of discovery produced to date. They invoke the attorney-client privilege exactly one (1) time. They invoke the "privilege" of "Inmate not a party; Privacy and Confidentiality Interests; Protection of Non-Parties from Annoyance, Embarrassment, Oppression or Undue Burden Under Fed. R. Civ. P. 26(c); Security and Institutional Safety Concerns" exactly one hundred and forty-five (145) times. This is not a privilege. Neither is "Blocks not relevant; Non-Responsive Information; Irrelevant Information Outside the Scope of Discovery;

Rule 26(b)(1) Relevance Objection; Institutional Security/Official Information Concerns," invoked thirty-five (35) times. The result is multiple pages that are more redacted than they are legible, with obviously discoverable and necessary information blacked out. *See* Exhibit 2, Sample of Redactions.

Defendants' concerns of burden are improper and entirely self-imposed. The claimed confidentiality interests are either inapplicable, as described above, or appropriately addressed by the protective order; the "non-parties" referenced are discoverable putative class members; and relevance is not a proper basis for unilateral redactions. *See Orion Power Midwest, L.P. v. Am. Coal Sales Co*., 2008 WL 4462301, at *2 (W.D. Pa. 2008) ("Rule 34 talks about production of 'documents,' as opposed to the relevant information contained in those documents… There is no express or implied support for the insertion of another step in the process (with its attendant expense and delay) in which a party would scrub responsive documents of non-responsive information"); *Bartholomew v. Avalon Cap. Grp., Inc*., 278 F.R.D. 441, 451-52 (D. Minn. 2011) ("It is a rare document that contains only relevant information… the Federal Rules of Civil Procedure do not grant parties the power to unilaterally redact information on the basis of relevance"). Fulsome and unredacted disclosures, in accordance with the plain text of the Federal Rules, will satisfy Plaintiffs' need for information and save Defendants considerable time and

expense. There is no justification for Defendants' "redaction campaign." *Orion Power*, 2008 WL 4462301 at *2.

3. *Multi-year Drug Related Discovery is Directly Relevant*

Defendants mischaracterize Plaintiffs' requests on drug-related discovery as a "six-year institutional contraband audit." Defs' Br., at 14. Plaintiffs only request evidence of other drug incidents to ascertain the validity of Defendants' rationale, namely, that the inhumane measures they employed were necessary to address drug issues in DCP. Defendants do not abandon this rationale; rather, they offer that a proportional request would be squarely limited to "the specific deprivation period, the RHU or housing unit in which Plaintiffs were housed, and incidents, if any, directly involving Plaintiffs or forming the basis of Plaintiffs' allegations." Defs' Br., at 17. In doing so, Defendants argue that they should be allowed to offer a justification that Plaintiffs cannot otherwise investigate and again ignore well-plead municipal liability and deliberate indifference claims that require a showing of pattern, practice, custom, and/or prior instances of misconduct. They similarly ignore or mischaracterize Plaintiffs' cited cases that demonstrate the regularity at which courts order production of similar evidence. Pls' Br., at 14. This is untenable and this Court should order Plaintiffs' discovery requests as-is, without limitation.

4. *Policy and Operational Materials Are Directly Relevant and Proportional*

Plaintiffs will not rehash the arguments made in their initial briefing, nor will they recount the arguments made in the foregoing pages. These documents are central to Plaintiffs' claims. Courts have repeatedly compelled production, where, as here, they bear on constitutional harms alleged. Historical policies and procedure intertwine with, for example, the use of multi-year drug data. If there was a drug problem over the course of several years warranting the kind of deprivations that Defendants enacted, then it would be directly relevant to see what policy changes Defendants made in response to each of those incidents, if any.

III. Conclusion

Plaintiffs respectfully request that the Court grant the Motion to Compel in full.

Respectfully submitted,

/s/ Nia O. Holston

ABOLITIONIST LAW CENTER

Bret Grote
Nia Holston
Lolo Serrano
Abolitionist Law Center
990 Spring Garden, Suite 306
Philadelphia, Pennsylvania 19123
412-654-9070
bretgrote@alcenter.org
nia@alcenter.org
lolo@alcenter.org

/s/ Raymond Durham

KAUFMAN LIEB LEBOWITZ & FRICK LLP

Douglas E. Lieb
Raymond Durham
18 East 48th Street, Suite 802
New York, New York 10017
(212) 660-2332
dlieb@kllf-law.com
rdurham@kllflaw.com

* Admitted *pro hac vice*

Dated: June 4, 2026

**CERTIFICATE OF SERVICE**

I, Nia Holston, hereby certify that a true and correct copy of the foregoing was filed via the Court's CM/ECF system on June 4, 2026, and therefore served on the following:

Andrew Norfleet
Jennifer Ruth
Suzanne Tighe
AWNorfleet@mdwcg.com
jlruth@mdwcg.com
sstighe@mdwcg.com
200 Corporate Center Drive
Suite 300
Camp Hill, PA 17011

*Counsel for Defendants*

/s/ Nia O. Holston

ABOLITIONIST LAW CENTER

Nia Holston
Abolitionist Law Center
990 Spring Garden, Suite 306
Philadelphia, Pennsylvania 19123
267-357-0948
nia@alcenter.org