# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KANI LITTLE; HECTOR RAMOS; JAMES PATTERSON, on their own behalf and on behalf of all others similarly situated; | : | Civil Action No. 4:24-cv-02169 |
| Plaintiffs, | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| DAUPHIN COUNTY; GREGORY BRIGGS, Warden of Dauphin County Prison, in his Individual Capacity; LIONEL PIERRE; Chief Deputy Warden, in his Individual Capacity; ROGER LUCAS, Custody Major, in his individual Capacity; MARK SKELTON, Lieutenant, in his Individual Capacity; and JOHN DOES No. 1-12, in their Individual Capacities, | : | |
| Defendants. | | |

**DECLARATION OF BRET GROTE**

Pursuant to 28 U.S.C. § 1746, I declare that the following is true and correct to the best of my knowledge, information, and belief:

1. My name is Bret Grote. I am the Legal Director of the Abolitionist Law Center (ALC) and am counsel in the above-captioned case. I have practiced prisoner rights and criminal law since November 2013.

2. I have litigated dozens of jail and prison conditions cases in each of the federal district courts in Pennsylvania, winning preliminary injunctions in every district court to release clients from solitary confinement, receive life-saving hepatitis-C treatment, and achieving comprehensive settlements against the Pennsylvania Department of Corrections, Allegheny County Jail, and Philadelphia Department of Prisons in several cases. I was also counsel in a case involving in the largest monetary settlement for a death-in-custody ever achieved in Pennsylvania.

3. In many of those cases, which include both individual lawsuits and class actions and involve municipal liability claims, I have received discovery relating to categories of documents that are substantially similar to the documents at issue here. Those categories of documents include the following:

*Personal Identifying Information of Putative Class Members (RFP No. 4)*

4. I routinely receive the names of putative class members in class-action prison related cases, and the names of other incarcerated people in individual lawsuits, subject to applicable confidentiality agreements or protective orders.

5. This is standard information and absolutely necessary to investigate claims against prison officials and municipalities. Without it, litigating claims of deliberate indifference against prison officials becomes a nearly impossible task. In all cases, I negotiate confidentiality agreements that protect the privacy interests of incarcerated people while balancing the vindication of my client's rights, and the public's interest in knowledge of what is happening in prisons and county jails.

6. In many cases, this has included medical information of non-litigants discovered through medical records, or medical information disclosed through other incidental sources. Such

cases include *Jung v. City of Philadelphia*, 2:24-cv-05618-TJS; *Howard v. Williams*, 2:20-cv-1389; *Bell v. Little*, 2:22-cv-01516.

*Grievances, Complaints, and Incident Reports of Non-Parties (RFP No. 7)*

7. I routinely receive grievances, written complaints, and incident reports submitted by incarcerated individuals who are not named plaintiffs.

8. These materials are critical to understanding the scope and nature of unconstitutional conditions, including whether prison officials had notice of ongoing issues and how they responded.

9. In some cases, Defendants have sought to aggregate data on grievances. That information is not always sufficient to determine the scope of issues relating to prison and jail conditions. For example. In one of my cases, *Remick v. City of Philadelphia*, et. al, 2:20-cv-1959-BMS (E.D. Mar. 3, 2023) (ECF 185), the independent federal monitor investigating Class Members complaints of mistreatment determined their grievances were in some cases, ignored, not properly responded to, or not properly catalogued. ("An alarming lack of grievances about well-established deficiencies outlined…that greatly impact Class Members' basic human needs suggests PDP's grievance system is overwhelmed and ineffective.")

10. Among other cases I have been involved in where non-party members grievance documents have been shared include *Howard v. Williams*, 2:20-cv-1389; *Bell v. Little*, 2:22-cv-01516; *McCray v. Allegheny County*, 2:22-cv-00493.

*Policy, Procedure, and Operational Materials*

11. In cases involving claims of unconstitutional conditions or municipal liability, I routinely receive written policies, procedures, directives, post orders, and other operational materials governing the conduct at issue.

12. These materials are central to assessing whether unconstitutional practices are systemic, whether policies were deficient, and whether officials acted with deliberate indifference.

13. In my experience, such materials are regularly produced in discovery, and can be subject to confidentiality designations but not categorically withheld.

14. Such policies, including prior iterations of those policies, have been regularly produced in every single conditions case that I have litigated that did not resolve prior to the commencement of discovery. I do not recall a single case I have been a part of since 2013 in which a defendant has objected to the production of a relevant policy, especially those dealing with security and/or disciplinary matters, and defendants have only at times sought to maintain the confidentiality of policies that were not already publicly available. Common examples of the types of publicly available policies can be found on the Pennsylvania Department of Corrections website: https://www.pa.gov/agencies/cor/about-us/doc-policies.

*Multi-Year Incident and Institutional Data*

15. I have also received multi-year data and records concerning institutional practices, including records related to contraband, use of force, medical care, and other recurring issues within correctional facilities. In my experience, 6 years is not above the normal amount sought.

16. For example, in *Pennsylvania Institutional Law Project v. Wetzel*, 1:18-cv-02100 (M.D.Pa) our organization along with PILP and the American Civil Liberties Union of Pennsylvania sued the Pennsylvania Department of Corrections (DOC) over their policy of photocopying legal mail. The DOC asserted this policy was in response to alleged concerns

regarding drug contraband entering DOC facilities. To test this defense, Plaintiffs sought and received extensive discovery on the DOC's drug interdiction efforts, including internal investigations into employees and incarcerated people, extraordinary occurrence reports from every DOC facility going back several years for any incident involving drug contraband, data on facility contraband searches and finds, emails from DOC officials regarding contraband policies and investigations, and intelligence reports from DOC security. We received well over 100,000 pages of documents in that case in a compressed time period prior to a preliminary injunction hearing, and a large portion of that involved issues pertaining to drug contraband, interdiction efforts, investigations, and related issues.

17. The DOC never questioned the relevance of this material to the case since their justification for the policy that was being challenged was that the presence of illicit drug contraband in DOC facilities justified it.

DATED: June 4, 2026

Bret Grote
Legal Director
Abolitionist Law Center