**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KANI LITTLE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DAUPHIN COUNTY, *et al.*,<br><br>Defendants. | CIVIL NO. 4:24-CV-02169<br><br>(Judge Mehalchick)<br><br>(Magistrate Judge Latella) |

## MEMORANDUM

Before the Court is a discovery dispute in this putative class action case challenging the conditions of confinement at the Dauphin County Prison. Plaintiffs seek information regarding identities of incarcerated individuals detained in the Restricted Housing Units ("RHUs") at Dauphin County Prison ("DCP") during the approximate time period of November 15 to December 22, 2023 (the "Relevant Period")[1], records of disciplinary actions taken against the incarcerated individuals, copies of any grievances that the incarcerated individuals submitted, and the incarcerated individuals' DCP records (including

[1] Plaintiffs refer to this time period as the "Deprivation Period." Defendants refer to this time period as the "alleged deprivation period." The Court defines it as the "Relevant Period."

medical and disciplinary records). (Doc. 75 at 2)[2]. Plaintiffs also seek from Defendants the identity of "'any and all drugs that were discovered in DCP from January 1, 2020 to present and any staff who were found to have smuggled in drugs, as well as processes, protocols, and policies regarding use-of-force and discipline from 2023 to 2024." (*Id.*). Plaintiffs claim this information is relevant to both their class-wide and individual claims. (Doc. 76 at 7).

Defendants object to Plaintiffs' discovery requests, asserting that the requests are overbroad, compound, vague, disproportionate, and premature as class certification discovery. (Doc. 80 at 5). Defendants further argue that Plaintiffs' requests implicate correctional security, non-party privacy, personnel confidentiality, HIPAA, 42 C.F.R. Part 2, the Pennsylvania Mental Health Procedures Act, and CHRIA. (*Id.*).

For the reasons set forth herein, Plaintiffs' request to compel Defendants to produce these documents will be granted in part and denied in part.

---

[2] For the sake of clarity, we refer, in all instances, to the ECF Document number and pagination located in the upper right-hand corner of each page.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs filed a Complaint on December 17, 2024, on behalf of themselves and others similarly situated, against Defendants Dauphin County, the Warden, Deputy Warden, a major and a lieutenant at DCP, and twelve John Doe defendants, correctional officers at DCP. (Doc. 1). In the Complaint, Plaintiffs alleged that sometime in late 2023, DCP Officials perceived a problem with inmates smoking synthetic marijuana in the RHUs and responded with a lengthy course of retaliatory conduct that exceeded the bounds of humane treatment and violated Plaintiffs' civil, constitutional, and statutory rights. (*Id.*). Plaintiffs raised eight separate causes of action and sought class certification, declaratory relief, compensatory and punitive damages, and attorneys' fees. (*Id.*).

On February 2, 2025, Defendants filed a Motion to Dismiss. (Doc. 16). The Report and Recommendation was issued on August 5, 2025, recommending that: Defendants' request to deny class certification be denied; Defendants' request to dismiss Plaintiffs' claims under the Americans with Disabilities Act and the Rehabilitation Act be granted and Plaintiffs granted leave to file an amended complaint without

prejudice; and Defendants' request to dismiss all remaining claims be denied. (Doc. 34). Defendants objected to the Report and Recommendation. (Doc. 38). On September 29, 2025, United States District Judge Karoline Mehalchick adopted The Court's Report and Recommendation in its entirety. (Docs. 42, 43). Defendants filed an Answer with Affirmative Defenses on November 13, 2025. (Doc. 53).

On March 3, 2026, the parties agreed to a Stipulation and Protective Order Governing Confidentiality of Documents and Information of Dauphin County ("Protective Order"), (doc. 63), which was approved on March 4, 2026. (Doc. 65).

On March 13, 2026, Plaintiffs filed a letter to the docket alleging that Defendants had been improperly refusing to disclose information and produce documents related to the treatment of incarcerated individuals other than Plaintiffs. (Doc. 66). Defendants responded on March 26, 2026, filing a letter to the docket that denied Plaintiffs' allegations and contended that Plaintiffs' discovery requests were improper. (Doc. 67).

The Court conducted a telephonic discovery conference on April 2, 2026. (Doc. 71). During the call, Plaintiffs made an oral motion to file a

Motion to Compel. The Court subsequently issued a verbal Order permitting Plaintiffs to file a Motion to Compel.

Following the conference, Plaintiffs moved for an Extension of Time to Amend/Join Third Parties and Move for Class Certification on April 10, 2026. (Doc. 72). Additionally, on that same date, Plaintiffs filed a letter to the docket with a Proposed Order regarding Defendants' discovery deadlines as discussed during the April 2, 2026 telephonic conference. (Doc. 73). On April 16, 2026, an Order was issued directing the Defendants to provide Plaintiffs with any agreed-on discovery as specified in the Proposed Order, (doc. 73-1), and granting Plaintiffs' Motion to Extend Deadlines. (Doc. 74).

On April 16, 2026, Plaintiffs filed a Motion to Compel Discovery and an accompanying Brief in Support. (Docs. 75, 76). Defendants responded with a Brief in Opposition on May 21, 2026. (Doc. 80). Plaintiffs submitted a Reply Brief on June 4, 2026. (Doc. 84). The matter is ripe for review.

## II. LEGAL STANDARD

Federal courts have broad discretion to determine the scope of discovery and to manage the discovery process. *See Wisniewski v.*

*Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987) ("The conduct of discovery is a matter for the discretion of the district court and its decisions will be disturbed only upon a showing of an abuse of this discretion."). Decisions regarding the proper scope of discovery are considered non-dispositive. *Riley v. Clark*, No. 4:20-cv-325, 2023 WL 6129507, at *2 (M.D. Pa. Sept. 19, 2023). In the Third Circuit, "it is well recognized that the federal rules allow broad and liberal discovery." *Pacitti v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999).

Federal Rule of Civil Procedure 37 governs motions to compel discovery, and "[t]he scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rule of Civil Procedure." *Brewer v. Berks Cty. Sheriff*, No. 13-5763, 2015 WL 13620425, at *2 (E.D. Pa. Oct. 5, 2015) (quoting *Breslin v. Dickinson Twp.*, No. 09-1396, 2011 WL 1577840 (M.D. Pa. Apr. 26, 2011)). Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2)(C) provides:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise

> allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(1)(C); *see Mayo v. City of Scranton*, No. 3:10-CV-935, 2012 WL 6050551, at *3 (M.D. Pa. Dec. 4, 2012).

When deciding a motion to compel, "[t]he moving party bears the initial burden to prove that the requested discovery falls within the scope of discovery as defined by Rule 26(b)(1)." *Atkinson v. Luitpold Pharms., Inc.*, 414 F. Supp. 3d 742, 744 (E.D. Pa. 2019). "If the moving party meets this initial burden, the burden then shifts to the opposing party to demonstrate that the requested discovery (i) does not fall within the scope of discovery contemplated by Rule 26(b)(1), or (ii) is not sufficiently relevant to justify the burden of producing the information."

*Atkinson*, 414 F. Supp. 3d at 744 (citation omitted). Discovery is governed by Rule 26, which provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

"Relevance in this context has been 'construed broadly to encompass any matter that could bear on, or that could reasonably lead to other matter that could bear on, any issue that is or may be in the case.'" *United States ex rel. Bergman v. Abbott Labs.*, No. 09-4264, 2016 WL 4247429, at *2 (E.D. Pa. Aug. 11, 2016) (quoting *Oppenheimer Funds v. Sanders*, 437 U.S. 340 (1978)). The scope of discovery is broad, but it is not unlimited. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Discovery should not serve as a fishing expedition. *See Upshaw v. Janssen Research & Development, LLC*, No. 11-7574, 2014 WL 1244047, at * 3 (E.D. Pa. Mar. 26, 2014); Fed. R. Civ. P. 26(b)(1).

Finally, "[i]t is an obvious truism that a court should not enter an order compelling a party to produce documents where the documents do not exist." *Wells v. JPC Equestrian, Inc.*, No. 3:13-CV-2575, 2014 WL 5641305, at *4 (M.D. Pa. Nov. 4, 2014). It is clear, therefore, that the court cannot compel the production of things that do not exist. Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation. *See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, No. 08-5904, 2010 WL 5186088 (E.D. Pa. Dec. 21, 2010); *Knauss v. Shannon*, No. 08-1698, 2009 WL 975251 (M.D. Pa. April 9, 2009); *Lawson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:17-CV-1266, 2019 WL 5622453, at *4 (M.D. Pa. Oct. 31, 2019).

## III. DISCUSSION

Plaintiffs argue that Defendants should produce responses to Plaintiffs' discovery requests regarding three categories of materials: (1) information about putative class members; (2) findings of illicit drugs and smuggling in DCP; and (3) two years of processes, protocols, and/or policies concerning the use of force and disciplinary decisions. (Doc. 76

at 6). Plaintiffs stress that this information is relevant to both Plaintiffs' class and individual claims, as it bears on both class certification and the merits. (Doc. 76 at 7-9, 10-12; Doc. 84 at 7).

### A. Information About Putative Class Members

Plaintiffs ask that Defendants answer the following interrogatories and produce documents related to the following requests:

- **Interrogatory #5**: Identify each and every member of DCP Staff who authorized, witnessed, reported, participated in, or documented any use of force or disciplinary action taken against any of the persons kept in RHUs during the Deprivation Period, including medical staff who treated any person for their injuries, and who the action was taken against, by name and inmate identifier.
- **Interrogatory #6**: Identify—by name, housing unit, date of placement in RHUs, status of incarceration (i.e., whether someone was being held pre-trial or convicted), reason for being kept in RHUs, and any inmate identifier—all persons who were kept in RHUs during the Deprivation Period for longer than 24 cumulative hours.
- **Interrogatory #12**: Identify, during the Deprivation Period, each time incarcerated persons kept in the RHUs were let out of their cells, and specify dates they were let out, amount of time (in minutes and hours) persons were allowed out of their cells, and specify if only certain persons were allowed out, the name of those persons allowed out.
- **Request for Production of Documents #4**: Any and all Department of Correction records for people kept in the

RHUs including but not limited to medical and disciplinary records.

- **Request for Production of Documents #7**: Any and all grievances or written complaints received by DCP Staff, DCP administrators, DCP Stakeholders, or County Commissioners from November 15, 2023, to April 30, 2024, concerning the Deprivation Period, including but not limited to grievances or written complaints concerning environmental conditions, utility systems, temperature inside the cell units, lack of bedding or clothing, running water, treatment of incarcerated persons kept in RHUs, use of force, medication or medical attention, food and/or water, out-of-cell time (e.g., shower and recreation time), the Personal Item Seizure, and/or the Tablet Seizure, and any responses thereto or written communications related thereto.

(Doc. 76 at 11).

Plaintiffs argue that they are entitled to the identities, records, files, grievances, and complaints of the putative class members who were in the RHUs during the relevant period because Plaintiffs require such information for class certification. (Doc. 76 at 7). This information, according to Plaintiffs, is also discoverable because it will reveal the identity of potential witnesses and weigh directly on how much notice the Defendants had about Plaintiffs' purported harm. (*Id.*).

Defendants contend that Plaintiffs' requests for this information are overbroad, privacy invasive, and disproportionate. (Doc. 80 at 10). While Defendants acknowledge that Rule 23 requires certification at an

early practicable time, Defendants assert that Rule 23 does not entitle Plaintiffs to every record concerning every potential class member. (*Id.* at 26). Defendants stress that if it is concluded that some class certification discovery is necessary, such discovery should be a "staged and narrowed production limited to non-medical, non-disciplinary, de-identified data sufficient to test numerosity and commonality, subject to a protective order and without disclosure of names, inmate numbers, medical status, medication information, disciplinary histories, or individualized movement records." (*Id.* at 11-12).

In reply, Plaintiffs argue that Defendants support their argument with cases involving *pro se* incarcerated plaintiffs. These cases, according to Plaintiffs, are distinguishable from the present dispute. (Doc. 84 at 5). Plaintiffs also assert that Defendants' proposed limitations would make class certification impossible. (*Id.* at 7).

**1. Identities of Non-Party Inmates in the RHUs**

Plaintiffs request the identity "by name" of "all persons who were kept in the RHUs during the [Relevant Period] for longer than 24 cumulative hours." (Doc. 75-2 at 2). Plaintiffs assert that Defendants

must produce this information pursuant to both Plaintiffs' class and individual claims.

In *Oppenheimer Fund, Inc. v. Sanders*, the Supreme Court recognized that there are circumstances when the discovery rules permit a party to obtain class members' names and addresses. 437 U.S. 340, 354 n. 20 (1978). The Court explained that names of class members can be relevant to a Rule 23 issue – *i.e.*, numerosity, common questions, and adequacy of representation. *Id.* As Plaintiffs note, district courts in the Third Circuit have applied *Oppenheimer* and permitted discovery of putative class member names at the pre-certification stage. *See Joyce v. Colter Energy Servs. USA, Inc.*, No. 2:22CV1367, 2024 WL 326664, at *5 (W.D. Pa. Jan. 29, 2024) (granting plaintiff's motion to compel the names and addresses of putative class members who worked for defendant during relevant period of time); *Plavin v. Grp. Health Inc.*, No. 3:17-CV-1462, 2022 WL 1911404, at *9 (M.D. Pa. June 3, 2022) (holding plaintiff was required to provide defendant the identities of putative class members who expressed an interest to plaintiff in joining the action); *Knaupf v. Unite Here Loc. 100*, No. CV146915PGSDEA, 2015 WL 7451190, at *5 (D.N.J. Nov. 23, 2015)

(denying defendant's motion to limit discovery to plaintiff's individual claims in Rule 23 setting and granting plaintiff's request to discover the names of other similarly situated employees within the proposed class's scope). In *Joyce*, the court explained that "it is quite germane for plaintiff[s] to receive the names and addresses of the putative class members even though the class has not been certified, because it will reasonably lead to information bearing on the issues of numerosity, typicality and commonality." 2024 WL 326664 at *5. In other words, "the need for disclosure of names . . . of potential class members to enable a representative plaintiff to prosecute his case is well-established." *Tomassi v. City of Los Angeles*, No. CV 08-1851 DSF SSX, 2008 WL 4722393, *4 (C.D. Cal. Oct. 24, 2008). All these cases involved employment claims.

But, as Defendants emphasize, this case involves a county prison. The putative class members are not employees – they are inmates. It is noted that revealing the identities of non-party inmates has different privacy implications than revealing the identities of non-party employees. Neither party provides case law that directly answers the question of whether the Court should compel the Defendants to release

the names of putative *inmate* class members prior to certification. Though it appears there is no authority within our circuit, there is precedent in other district courts for the revelation of inmate names in a putative class action. *See Liberty v. Rhode Island Dep't of Corr.*, No. CV 19-573JJM, 2022 WL 1224448 (D.R.I. Apr. 26, 2022); *Smith v. Cnty. of Los Angeles*, No. CV 11-10666 GAF PJWX, 2014 WL 6775756 (C.D. Cal. Dec. 2, 2014); *Whittum v. Saginaw Cnty.*, No. 02-10313-BC, 2005 WL 3271810 (E.D. Mich. Nov. 22, 2005).

In *Liberty*, a putative class action that challenged the Rhode Island Department of Corrections' alleged practice of using solitary confinement to punish and manage individuals that the prison identified as suffering from serious and persistent mental illness, the court ordered the defendant to un-redact information pertaining to prisoners in the putative class (those suffering from serious and persistent mental illness). 2022 WL 1224448 at *1, *3, *9. The court held that the information pertaining to the prisoners suffering from serious mental illness—including the prisoners' identifying numbers and names—was "highly relevant . . . despite its sensitive character . . .

[and] should be unredacted to the extent that it has been concealed." *Id.* at *9.

In *Smith*, the individual plaintiff sued the County of Los Angeles, seeking to represent a class of persons who suffered damages that resulted from being wrongfully detained on warrants for other persons. 2014 WL 6775756, at *1. The plaintiff moved to compel the county to produce contact information for detainees who had been similarly wrongfully detained. *Id.* at 2. While the county produced each wrongfully detained individuals' booking number, arrest date, and release date, the county did not produce the wrongfully detained individuals' first and last names, last known residential and business addresses, and last known telephone numbers. *Id.* The plaintiff argued that establishing the theory of his case required such contact information. *Id.* The county, among other things, refused to produce this information to the plaintiff because the arrestees had "a privacy interest in dissemination of information pertaining to the arrest." *Id.* at 5. The court found that the interest in disclosure outweighed the interest in preventing disclosure of the information. *Id.* The court reasoned that these detainees were unlike normal detainees because

they were wrongfully detained. *Id.* Disclosure of their information would not have a negative impact on their employment or subject them to embarrassment or reputational harm. *Id.* Additionally, the court explained that disclosure was justified because the plaintiff was seeking to vindicate the wrongfully detained individuals' Fourteenth Amendment rights. *Id.* This was not a case where the plaintiff was seeking the wrongfully detained individuals' contact information for solicitation or commercial gain. *Id.* The court remarked that "[o]ne [could] readily posit that these persons would welcome an inquiry that might allow them to vindicate their constitutional rights in this putative class action." *Id.* at *6.

In *Whittum*, the named plaintiff-prisoners sued Saginaw County and its jail officials for practices relating to the removal of clothing from inmates. 2005 WL 3271810 at *1. The plaintiffs moved for certification; however, the court denied their request on typicality and adequacy grounds. *Id.* Subsequently, the plaintiffs moved to compel the county to produce various internal policies and identify individuals subject to those policies. *Id.* The magistrate judge ordered the county to produce information such as non-party inmate names, last known

addresses, dates of entry and exit from confinement, and charges. *Id.* at *3. Much of the discovery that the plaintiffs sought was directed at learning the names of inmates who the county may have subjected to its policies. *Id.* at *5. The county objected to the magistrate's order, and the court vacated the magistrate's order as the order related to the production of information about non-party inmates. *Id.* The court explained that the information "may have been pertinent to the motion for class certification, but that motion was heard and denied." *Id.* Because the matter was no longer proceeding as a class action, the court could not "discern another basis for allowing the discovery of the names of the [non-party inmates]." *Id.* The court explained that "a different lawsuit with different plaintiffs and a different class definition [might] meet with different results." *Id.*

Plaintiffs here are entitled to the names of the non-party inmates in the RHUs during the Relevant Period. Plaintiffs state that discovery of the names of non-party inmates in the RHUs during the Relevant Period is necessary for Rule 23 purposes. This is exactly what *Oppenheimer* permits. Even though the putative class members here are inmates, as opposed to employees, their names are highly relevant

to Plaintiffs' pursuit of certification. *See Liberty*; *Whittum*. Additionally, there is the Protective Order in place that affords certain safeguards with respect to Plaintiffs' use of the information. Further, this is a case like *Smith* where the named plaintiffs are seeking to justify the putative-class-member inmates' rights. Here, the Plaintiffs bring serious allegations against the Defendants that relate to the putative inmates' constitutional rights. Reading the Plaintiffs' allegations, "[o]ne could readily posit that these persons would welcome an inquiry that might allow them to vindicate their constitutional rights in this putative class action." *Smith*, 2014 WL 6775756, at *6.

Accordingly, Defendants are required to provide Plaintiffs the inmate identifying information they request in Interrogatory #6 for all inmates kept in the RHUs during the Relevant Period for longer than 24 cumulative hours: inmate names, housing units, dates of placement in the RHUs, statuses of incarceration (i.e., whether the inmate was being held pre-trial or convicted), reasons for being kept in the RHUs, and any inmate identifier.

**2. Records, Files, and Grievances of Non-Party Inmates in the RHUs**

In addition to requesting names and identifying information regarding non-party inmates in the RHUs during the Relevant Period, Plaintiffs also request non-party inmate records, files, and grievances for class certification purposes. Plaintiffs also ask Defendants to identify, during the Relevant Period, the dates and times of inmate entry and exit from their cells, lengths of time inmates were outside of their cells, medical records, disciplinary records, and grievances related to conditions in the RHUs. (Doc. 76 at 11).

As the movants, Plaintiffs bear the burden of proving the relevance of the requested information. *Greater New York Mut. Ins. Co. v. Philadelphia Indem. Ins. Co.*, No. 1:11-CV-00451, 2014 WL 939454, at *3 (M.D. Pa. Mar. 11, 2014). Plaintiffs cited authorities supporting the discovery of putative class member *names* at the pre-certification stage; however, these authorities do not speak to the discovery of the other information (inmate movement records, medical records, disciplinary records, grievances, etc.) that Plaintiffs argue is necessary at this stage of the litigation for class certification purposes. The district courts within the Third Circuit in the cases cited by Plaintiff—*Plavin*, *Knaupf*, *Unite Here Loc. 100*, and *Gates*—allowed discovery of

putative class member names prior to certification. (Doc. 76 at 8). The courts in these cases did not grant discovery of the type of expansive information that Plaintiffs request for class certification. Plaintiffs' authorities demonstrate that Plaintiffs are entitled to obtain the identities of non-party inmates in the RHUs, but the authorities do not, as Plaintiffs claim, entitle Plaintiffs to obtain the "related information" at this stage of the litigation for class certification purposes. (*See* Doc. 76 at 9). As will be discussed below, this does not mean that Plaintiffs cannot receive this information for their individual claims at this stage of the litigation.

### B. Information About Relevant Witnesses to the Conditions at Issue in Plaintiffs' Individual Claims

Plaintiffs also seek to discover information about non-party inmates in the RHUs for their individual claims. Plaintiffs argue that "even if this were not a class action, Plaintiffs would still be entitled to . . . discover any documents relating to their experience of the conditions of confinement at issue." (Doc. 76 at 15). Plaintiffs note that class discovery has not been bifurcated. (Doc. 76 at 7; Doc. 84 at 7). Plaintiffs argue that because discovery of their class and individual

claims is consolidated, "Plaintiffs are under no burden to limit their requests to subject matter strictly limited to class certification." (Doc. 84 at 8).

A district court may bifurcate discovery in cases involving issues of class and merits discovery. For example, in *Smith v. Dominion Bridge Corp.*, the court bifurcated class discovery from merits discovery, staying the defendants' responses to the plaintiff's merits discovery until after certification. *Smith v. Dominion Bridge Corp.*, No. CIV.A.96 7580, 2007 WL 1101272, at *1 (E.D. Pa. Apr. 11, 2007); *see also Gates v. Rohm and Hass Co.*, No. CIV.A.06-1743, 2007 WL 1366883, at *2 (E.D. Pa. May 3, 2007) ("At the request of the Defendants, the Court bifurcated discovery between issues related to class certification and issues related to the merits. No discovery on the merits is permitted until after the Court rules on the Plaintiffs' Motion for Class Certification.").

Because discovery has not been bifurcated, Plaintiffs may simultaneously seek discovery for their individual claims in addition to their class claims.

**1. Identities of Non-Party Inmates as Witnesses**

Plaintiffs request the identities of non-party inmates as witnesses for their individual claims. Because Plaintiffs will be permitted to discover the identities of non-party inmates in the RHUs for their class claims, the Court need not address in detail why Plaintiffs may discover the identities of non-party inmates in the RHUs to prove Plaintiffs' individual claims.

For the sake of completeness, the Court agrees with Plaintiffs' argument that the inmates who lived in the RHUs during the Relevant Period are valuable witnesses with the potential to testify on the case's core factual issues regarding the conditions in the RHUs during the Relevant Period – *i.e.*, how cold it was, how dark it was, whether the water was on, whether the electricity was on, and the availability of medication. This potential information is highly relevant to the needs of the case. Defendants do not offer an argument as to how Plaintiffs' request is disproportionate to Plaintiffs' need for this information for Plaintiffs' individual claims. (*See* Doc. 80 at 10-11). Instead, Defendants focus on the class certification aspect of Plaintiffs' request for inmate identities. (*Id.*). Accordingly, Plaintiffs will be permitted to

discover the inmate identifying information that they request in Interrogatory #6 for Plaintiffs' individual claims.

**2. Identities of DCP Staff Members as Witnesses**

Plaintiffs ask Defendants for the identities of DCP Staff "who authorized, witnessed, reported, participated in, or documented any use of force or disciplinary action taken against any of the persons kept in RHUs during the [Relevant Period]." (Doc. 76 at 11). This request includes "medical staff who treated any person for their injuries." (*Id.*).

The parties did not devote significant attention to this request in their briefs. The section of Plaintiffs' brief[3] related to this request focusses on the discoverability of "the names of people housed in the RHUs during the [Relevant Period]," but does not mention the identities of DCP Staff. (*Id.*). While Plaintiffs do not explicitly explain why they are entitled to the identities of DCP Staff as potential witnesses, they do cite cases to support their proposition that "[t]he identities of known potential witnesses to the very incident that is the

[3] "B. Plaintiffs' Individual Claims Separately Require Disclosure of Information About Relevant Witnesses to the Conditions at Issue." (Doc. 76 at 15-17).

subject of this litigation are plainly discoverable." (*Id.*). Plaintiffs point to *Hughes v. Herbster*, No. 1:20-CV-02204, 2021 WL 4123977, at *2 (M.D. Pa. Sept. 9, 2021). In *Hughes*, the court denied the defendant's motion to quash the plaintiff's subpoena for photographs, names, and badge identifications of officers who responded to the scene of the alleged excessive force incident. *Id.* at *1-2. This information was "relevant to determine witnesses who [might] corroborate [the plaintiff]'s allegations." *Id.* at *2.

Defendants argue that this specific request, in addition to two others, illustrates the central defect in Plaintiffs' motion. (Doc. 80 at 10 ("Interrogatories 5, 6, and 12 illustrate the central defect in Plaintiffs' motion.")). However, Defendants do not specifically state why Plaintiffs should not receive the identities of DCP Staff witnesses. (*See Id.* at 10-11).

DCP Staff members who worked in the RHUs during the Relevant Period are potential witnesses to the alleged events and conditions that are the subject of this litigation. This information is relevant to Plaintiffs' claims. If Defendants have information in incident reports documenting use of force or disciplinary action taken against inmates in

the RHUs during the Relevant Period that name DCP Staff involved in the incidents, they must provide Plaintiffs the identities of DCP Staff members who were involved in these events.

### 3. Complaints Made and Grievances Filed by People Other than Plaintiffs

Plaintiffs argue that "complaints made and grievances filed by people other than Plaintiffs about the conditions at issue in this case are relevant to Defendants' subjective knowledge of the same." (Doc. 76 at 16). Because Plaintiffs' Fourteenth Amendment claims, Eighth Amendment claims, municipal liability claims, and request for damages turn on Defendants' knowledge of conditions in the RHUs before, during, and after the Relevant Period, Plaintiffs argue that discovering this information is necessary to prove what Defendants knew about the deprivations and when they knew it. (*Id.*).

Defendants argue that Plaintiffs' request for non-party grievances or written complaints is improper because the request "extends beyond the [Relevant Period], is not limited to Plaintiffs, is not limited to the RHU, is not limited to pleaded incidents, and improperly seeks institution wide non-party grievances and complaints." (Doc. 80 at 13).

Defendants primarily contend that Plaintiffs are not entitled to this information at this stage of the class action aspect of their claims; however, they also point to several Middle District cases that suggest that Plaintiffs should not be entitled to this information for their individual claims. (*Id.* at 13-14).

Plaintiffs counter in reply that Defendants' authorities are distinguishable because *pro se* litigants brought and maintained each. (Doc. 84 at 5). According to Plaintiffs, "disputes involving *pro se* incarcerated plaintiffs implicate a distinguishable set of concerns and a distinct body of jurisprudence." (*Id.*).

Under Rule 26's relevance standard, non-party inmate grievances and complaints about the conditions in the RHUs during the Relevant Period are relevant to Plaintiffs' claims. There is precedent for the release of inmate grievances to prove intent in our District. In *Paluch v. Dawson*, the court granted the plaintiff's motion to compel inmate grievances after the plaintiff argued that the grievances were necessary to establish the defendant's motive, intent, preparation, or plan. No. 1:CV-06-01751, 2008 WL 2785638, at *8 (M.D. Pa. July 17, 2008). Similarly, Plaintiffs' claims here require Plaintiffs to prove Defendants'

notice, knowledge, and state of mind regarding the alleged conditions in the RHUs during the relevant period. Inmate grievances about the alleged conditions during the Relevant Period provide Plaintiffs a means of proving their case.

Rule 26 also requires proportionality. Defendants cite authorities within our District that propose that plaintiff-inmate requests for non-party inmate grievances are disproportionate because the grievances pose privacy concerns to inmates and security concerns to prisons. (Doc. 80 at 14). *Allen v. Eckard*, one case that Defendants cite, collects multiple cases and aptly summarizes Defendants' argument. No. 1:17-CV-996, 2019 WL 1099001, at *3 (M.D. Pa. Mar. 8, 2019).

In *Allen*, a *pro se* inmate requested copies of grievances filed by other inmates. *Id.* The court cited multiple authorities in holding that the inmate's request was "precisely the kind of sweeping, generalized and overly broad discovery request[] judges in the Middle District of Pennsylvania have rejected as being not only overly broad, but unduly infringing upon the privacy interests of other inmates who may have sought to grieve unrelated issues that they had with the staff." *Id.* As Plaintiffs emphasize, *Allen* and the cases that the *Allen* court cites

involved *pro se* plaintiffs. *Id.* In *Allen*, the court was concerned with the security risks involved with providing sensitive discovery materials directly to an inmate. *Id.* Further, the "discovery request [was] of questionable relevance." *Id.* at 4. Similarly, in *Torres v. Clark*, a case that *Allen* cites, the court denied a motion to compel because of the risk in providing grievances to an inmate that would have disclosed mental-health information about his fellow inmates. No. 1:10-CV-1323, 2011 WL 4898168, at *3 (M.D. Pa. Oct. 13, 2011). Like *Allen*, these grievances had "little relevance" to the plaintiff's claims. *Id.*

This case is unlike *Allen* and the other Middle District cases involving *pro se* inmate-plaintiffs. Plaintiffs are counseled. There is also the operative Protective Order which is "narrowly tailored to protect confidential, private, and security information." (Doc. 63 at 2; Doc. 65). The Protective Order limits the confidential materials to counsel of record for the receiving party, experts or consultants, representatives of the parties, the court, and any other person mutually agreed to in writing by the parties. (Doc. 63 at 3-4). The types of concerns that the *Allen* and *Torres* courts had about *pro se* inmates possessing sensitive information about other inmates are not present

here. Further, there is precedent in this District for the release of inmate grievances to a counseled inmate. *See Paluch*, 2008 WL 2785638 at *8. Accordingly, the Court finds it appropriate to compel Defendants to release certain grievances to Plaintiffs.

However, Defendants will only be required to produce de-identified grievances or written complaints received by DCP Staff, DCP administrators, DCP Stakeholders, or County Commissioners, from the time period November 15, 2023 to April 15, 2023, that are related to events specifically alleged to have taken placed during the Relevant Period. Plaintiffs are only entitled to material from the underlying grievances or written complaints pertaining to conditions specifically alleged to have taken place in the RHUs during the relevant period, such as: environmental conditions, utility systems, temperature inside the cell units, lack of bedding or clothing, running water, treatment of incarcerated persons kept in RHUs, use of force, medication or medical attention, food and/or water, out-of-cell time (e.g., shower and recreation time), the Personal Item Seizure, and/or the Tablet Seizure, and any responses thereto or written communications related thereto. Plaintiffs are not entitled to grievances that do not relate to the specific

conditions alleged during the Relevant Period because such a request is overbroad.

While Plaintiffs are entitled to the names of each inmate in the RHUs during the relevant period, it goes against each inmate's privacy interests to release non-party names tied to specific grievances without the inmate's consent. Accordingly, all grievances or written complaints produced from non-party inmates must de-identified so that the documents cannot be tied to particular inmates.

**4. Other Inmate Records**

Plaintiffs request "any and all Department of Correction records for people kept in the RHUs including but not limited to medical and disciplinary records." Defendants object to this request, arguing that it "is unlimited, vague, disproportionate, directed at non-party inmates, and expressly seeks medical and disciplinary records implicating HIPAA, 42 C.F.R. Part 2, the Pennsylvania Mental Health Procedures Act, and non-party privacy and security interests." (Doc. 80 at 13). In reply to Defendants' privacy objections, Plaintiffs contend that the protective order allays concerns about non-party inmate HIPAA-protected medical information. (Doc. 84 at 9). Plaintiffs also counter

that Defendants' cited state law confidentiality statutes and state-law privileges do not apply because this is a federal case. (*Id.* at 10).

In the portion of their brief regarding the discovery of non-party inmate information, Plaintiffs devote most of their argument to the discovery of non-party inmate identities (doc. 76 at 12-15) and grievances/complaints (doc. 76 at 16-17). Plaintiffs hardly elaborate why non-party medical and disciplinary records are relevant to their claims, explaining that their claims "depend on knowing who [non-party inmates in the RHUs] are, what they saw and experienced, and if they filed grievances or complaints based on their experiences." (*Id.*) Like grievances or complaints, an inmate's medical and disciplinary records are relevant to Plaintiffs' claims because the records might demonstrate what inmates in the RHUs during the Relevant Period experienced or saw. But the entirety of a non-party inmate's medical and disciplinary records is more privacy-sensitive than a non-party inmate's grievances. Both might reveal information about an inmate that an inmate would not want revealed to a third party beyond what a grievance might reveal. Accordingly, Plaintiffs face a greater burden in showing that

identified non-party inmate medical and disciplinary records outweigh potential privacy implications. They do not meet that burden.

Preliminarily, it is noted that Defendants' asserted privacy laws do not apply. First, Plaintiffs are correct that HIPAA does not bar the release of non-party inmate medical records in this case. "The Heath Insurance Portability and Accountability Act of 1996 ("HIPAA") protects the privacy, security, and confidentiality of health information." *Cassidy v. Pocono Med. Ctr.*, No. :12-CV-1191, 2013 WL 2403572, at *1 n.2 (M.D. Pa. May 31, 2013). "HIPAA provides that a 'covered entity . . . may not use or disclose protected health information, except as permitted or required by' the regulations." *U.S. v. Jafari*, 648 F.App'x 226, 231 n.5 (3d. Cir. 2016) (quoting 45 C.F.R. § 164.502(a)). "A 'covered entity' is defined as a health plan, a health care clearinghouse, or a health care provider that transmits health information electronically in certain covered transactions." *Id.* (citing 45 C.F.R. §§ 160.102, 164.104).

But "when a valid protective order permits [protected health information] disclosure tailored to the conditions set forth within it, HIPAA serves as no additional barrier." *Johnson & Johnson Health*

*Care Sys. Inc. v. Save On SP, LLC*, No. 22-02632, 2025 WL 1640192, at *7 (D.N.J. June 10, 2025). A HIPAA-covered entity "may disclose protected health information in the course of any judicial or administrative proceeding . . . [i]n response to a . . . discovery request . . . that is not accompanied by an order of a court . . . if . . . [t]he covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v)." 45 C.F.R. § 164.512(e)(1)(ii)(B). A protective order is "qualified" if it "[p]rohibits the parties from using or disclosing protected health information for any purpose other than the litigation or proceeding for which such information was requested; and . . . [r]equires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding." 45 C.F.R. § 164.512(e)(1)(v).

HIPAA is not a barrier in this case because the Protective Order meets HIPAA's requirements for a qualified protective order. (Docs. 63, 65). The Protective Order defines "Confidential/Proprietary

Information" as "information that the Producing Party demonstrates, with particularity and for good cause a clearly defined and serious injury." (Doc. 63 at 2, ¶ 2). The order further states that "Confidential/Proprietary Information may include personal identifying and private security information such as personal confidential information, surveillance footage of restricted areas or security procedures, or camera angles." (*Id.*). Because 45 C.F.R. § 160.103 defines "protected health information" as "individually identifiable health information," the Protective Order covers "protected health information" by expressly stating that "Confidential/Proprietary Information" includes "personal confidential information." The Protective Order meets Section 164.512(e)(1)(v)'s requirements because it states that Confidential/Proprietary Information "may be used only in connection with [the] action, and not for any other purpose" and "returned or destroyed." (*Id.* at 3, ¶; 7, ¶3).

Second, 42 C.F.R. Part 2 currently does not apply to Plaintiffs' requests. 42 C.F.R. Part 2 "impose[s] restrictions upon the use and disclosure of substance use disorder patient records . . . which are maintained in connection with the performance of any part 2 program."

42 C.F.R. § 2.2(a). Defendants argue that 42 C.F.R. Part 2 applies by insisting that Plaintiffs' requests "potentially" implicate non-party inmates' substance-use information. (Doc. 80 at 10-11). In reply, Plaintiffs counter that "Defendants' invocation of 42 C.F.R. Part 2 is misplaced" because Plaintiffs have not requested substance abuse treatment and rehabilitation records and "Defendants' have made no showing that their records contain such information." (Doc. 84 at 11). Because Plaintiffs claim that they have not requested substance abuse treatment and rehabilitation records and Defendants only state that Plaintiffs' requests "potentially" implicate this information, 42 C.F.R. Part 2's applicability need not be addressed until Defendants demonstrate that Plaintiffs are requesting this information.

Third, state confidentiality laws and state-law privileges do not govern this case. Defendants specifically argue that the Mental Health Procedures Act ("MHPA") and Criminal Records History Information Act ("CHRIA"), two Pennsylvania statutes that protect the rights of third parties, apply. "[T]he MHPA gives rise to 'an absolute confidentiality privilege' covering documents related to the treatment of mental health problems." *Pearson v. Miller*, 211 F.3d 57, 70 (3d Cir.

2000) (quoting *Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456, 465 (3d Cir. 1996). CHRIA "requires confidentiality of certain investigatory materials." *Zielinski v. Mega Mfg., Inc.*, No. 2:18-CV-05113-JDW, 2019 WL 6353203, at *1 (E.D. Pa. Nov. 26, 2019).

Neither Pennsylvania law applies to this case because "discovery disputes in federal courts are governed by federal law." *Pearson*, 211 F.3d at 61. The Federal Rules of Civil Procedure and the Federal Rules of Evidence are instructive. *Id.* Rule 26(b)(1) prevents the disclosure of privileged materials. Fed. R. Civ. P. 26(b)(1). In a civil case like this where federal law supplies the rule of decision, material is privileged based on the common law unless the United State Constitution, a federal statute, or Supreme Court rule provide otherwise. Fed. R. Evid. 501; *see also Williams v. City of Philadelphia*, No. CIV.A. 08-1979, 2014 WL 5393988, at *4 (E.D. Pa. Oct. 22, 2014) ("Because federal law supplies the rule of decision in this case, the only bases for [Defendants] to withhold relevant material are the federal common law of privilege, the U.S. Constitution, federal statute, or rules prescribed by the Supreme Court."). In *Pearson*, the Third Circuit held that the federal common law did not recognize "privileges of the sort contemplated by

the . . . MHPA." 211 F.3d at 66. While federal courts can recognize state privileges, "[t]he appropriateness of deference to a state's law of privilege is diminished . . . in cases in which a defendant state actor alleged to have violated citizens' federal rights is asserting the privilege." *Id.* at 67-68. District courts within this circuit have similarly held that CHRIA does not apply in a federal case governed by federal privilege law. *See Benedict v. McMahon*, 315 F.R.D. 447, 452 (E.D. Pa. 2016) ("Other courts have concluded that CHRIA does not compel a federal court to recognize a blanket privilege against the discovery of police reports containing investigative information or complaints against third persons simply because the Pennsylvania legislature may have enacted a privilege, as that does not render the privilege as one fairly characterized as a principle of common law."); *Guerrido-Lopez v. City of Allentown*, No. CA 15-1660, 2016 WL 1182158, at *2 (E.D. Pa. Mar. 28, 2016) (finding that defendants should not redact any information based on a claim that the information was subject to CHRIA because "a state statute protecting the confidentiality of criminal records does not justify denying discovery of evidence

relevant to a claim brought against police or municipal defendants under federal civil rights statutes").

This decision is based on Rule 26. HIPAA, the MHPA, and CHRIA do not prevent disclosure of non-party inmate medical records in this case; however, Plaintiffs still must clear Rule 26's considerations. When a Rule 26(b)(1) privilege is unavailable, "[t]he Court, in its discretion, is authorized by [Rule 26(c)] to fashion a set of limitations that allows as much relevant material to be discovered as possible, while preventing unnecessary intrusions into the legitimate interests—including privacy and other confidentiality interests—that might be harmed by the release of the material sought." *Pearson*, 211 F.3d at 65. Rule 26(c), which states that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," gives courts the power "to issue protective orders constraining—in any of a variety of ways—the release of sensitive information." Fed. R. Civ. P. 26(c); *Pearson*, 211 F.3d at 70. The Court finds it appropriate to do so in this case.

For Request for Production of Documents #4, Defendants will produce only: (1) aggregated and de-identified medical records pertaining to specific medical incidents or events regarding inmate disciplinary and medical events during the Relevant Period and (2) data demonstrating the number of disciplinary incidents during the Relevant Period. Defendants can satisfy Plaintiffs' request for inmate medical information by producing an inventory of inmate requests for medical treatment during the Relevant Period that numbers each medical incident and labels each numbered incident by medical condition. Similarly, Defendants can satisfy Plaintiffs' request for inmate disciplinary information by producing an inventory of each disciplinary event during the Relevant Period, numbering each incident and labeling the incident by reason for discipline.

Defendants will not be ordered to produce the underlying medical and disciplinary records for non-party inmates for each medical or disciplinary incident.

**C. Information Regarding Findings of Illicit Drugs and Smuggling in DCP**

Plaintiffs request that Defendants identify (1) any and all drugs that were discovered or reported in DCP from January 1, 2020 until the

present and (2) DCP staff who were found to have smuggled in drugs and the actions taken against those staff. (Doc. 76 at 18). Plaintiffs request this information in the following interrogatories:

- Identify any and all drugs that were discovered or reported in DCP including the name of the drug discovered, the date it was discovered, and the source of those drugs (if discovered) from January 1, 2020 to present.
- Identify any and all DCP Staff— by name, date, rank, length of employment, job description, and responsibilities— who were found to have participated, facilitated, or conspired in the import or smuggling of drugs into DCP from January 1, 2020, to present, and any action taken against those DCP Staff, if any.

(Doc. 75-2 at 2-3).

Plaintiffs argue that this information is relevant to: (1) Plaintiffs' municipal liability claims, (2) the reasonableness of Defendants' deprivations, and (3) Defendants' defenses. (Doc. 76 at 18-23).

Defendants characterize Plaintiffs' requests as overbroad and disproportionate. Instead of Plaintiffs' drug-related information request, Defendants offer "information limited to the [Relevant Period], the RHU or housing unit in which Plaintiffs were housed, and incidents, if any, directly involving Plaintiffs or forming the basis of Plaintiffs' allegations." (Doc. 80 at 18).

Additionally, Defendants contend that Plaintiffs' staff-related information request is disproportionate because it "would require a search of years of personnel, disciplinary, internal affairs, investigative, and potentially law enforcement sensitive records for non-party employees, regardless of whether those staff members' alleged actions had any connection to Plaintiffs', the RHU, the alleged deprivation period, or the operational decisions challenged in the Complaint." (*Id.* at 20-21). Defendants' proposed alternative is "nonprivileged, non-confidential information concerning documented contraband events in the RHU during the [Relevant Period] that directly formed the basis for the challenged operational decisions, with personnel, investigative, law-enforcement-sensitive, and non-party identifying information included or protected by further order." (*Id.* at 21).

### 1. Relevance to Plaintiffs' Municipal Liability Claims

Regarding Dauphin County's municipal liability, Plaintiffs alleged the following in the Complaint:

> The Dauphin County Jail Oversight Board and its municipal policymakers were aware of and deliberatively indifferent to Defendant Warden Briggs' imposition of a blackout and punitive deprivations on RHU residents during the relevant

> time period, demonstrating its acquiescence in and tacit ratification of those actions.
>
> By failing to adequately discipline and supervise the warden and other prison administrators who engaged in such misconduct or instruct prison administrators to immediately cease the constitutional violations, Dauphin County was deliberatively indifferent to the constitutional rights of its citizens, including Plaintiffs and other members of the class.
>
> By any and/or all of these means, Defendant Dauphin County caused the violations of Plaintiffs' and class members' Fourteenth, Eighth, and First Amendment rights set forth in the First, Second, and Fifth Causes of Action above.
>
> As a Result, Plaintiffs and other members of the Class Suffered the alleged damages.

(Doc. 1, ¶¶ 315-18).

Plaintiffs assert that a municipal liability claim entitles a plaintiff to discover material beyond the scope of a particular incident. (Doc. 76 at 19) (citing *Furey v. Wolfe*, No. 2:10-cv-1820, 2011 WL 597038, at *2 (E.D. Pa. Feb. 18, 2011)). Plaintiffs cite caselaw for the proposition that a municipal liability plaintiff's request for years' worth of a municipality's internal affairs is not overbroad because the evidence is relevant in showing that the municipality was aware of conduct similar to the particular incident. (Doc. 76 at 19). Plaintiffs insist that, to prove their municipal liability claims, they can discover six years of

information prior to the Relevant Period—the "particular incident," here—regarding the identity of any drugs discovered in the DCP, the identity of DCP staff who participated in the import of drugs into the DCP, and details of actions taken against DCP staff for importing such drugs into DCP. (*Id.* at 18-20). According to Plaintiffs, this information beyond the Relevant Period will aid them in proving that Dauphin County was aware of or deliberately indifferent to Warden Briggs' allegedly faulty reason—drug issues in DCP—for the imposition of the alleged punitive deprivations on RHU residents during the Relevant Period.

Defendants do not specifically address whether Plaintiffs' requests are relevant to Plaintiffs' municipal liability claims. Instead, Defendants generally object to Plaintiffs' requests as overbroad, disproportionate, and outside the relevant question of whether the specific conditions alleged during the Relevant Period were reasonably related to penological and safety concerns. (Doc. 80 at 17-21).

"[T]o sustain a § 1983 claim for municipal liability, the plaintiff must 'simply establish a municipal custom coupled with causation—i.e., that policymakers were aware of similar unlawful conduct in the past,

but failed to take precautions against future violations, and that this failure, at least in part, led to their injury.'" *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 851(3d Cir. 1990)).

The presence of a municipal liability claim entitles a plaintiff to discovery beyond the scope of a particular incident. *See Furey v. Wolfe*, No. 2:10-cv-1820, 2011 WL 597038, at *2 (E.D. Pa. Feb. 18, 2011); *see also Moses v. Sorber*, No. CV 22-3385, 2025 WL 3210075, at *5 (E.D. Pa. Nov. 17, 2025) (plaintiff contended he needed to show facts beyond his own circumstance to support his municipal liability claims); *Klein v. Madison*, No. CV 17-4507, 2018 WL 3535301, at *2 (E.D. Pa. July 20, 2018) (expanding discovery under the municipal liability standard). However, "[w]hile a party who alleges a [municipal liability] claim may discover evidence of a policy or custom based on multiple incidents, requests for such discovery should not be overbroad and instead should be appropriately tailored to the allegations of the [municipal liability] claims." *Nehad v. Browder*, No. 15-CV-1386 WQH NLS, 2016 WL 4216719, at *2 (S.D. Cal. Aug. 10, 2016).

Plaintiffs are entitled to discover information beyond the Relevant Period to prove their claim that Dauphin County was aware of and deliberatively indifferent to Warden Briggs' imposition of the alleged conditions during the Relevant Period. However, their interrogatories focused on discovering drug and staff information are not relevant to their specific municipal liability claim that the Dauphin County Jail Oversight Board and its municipal policymakers were aware of and deliberatively indifferent to Warden Briggs' alleged actions during the Relevant Period. Plaintiffs' interrogatories seek information related to instances of staff misconduct involving drugs at DCP. This information might be relevant to the reasonableness of Warden Briggs' actions, but it is not relevant to proving that the Dauphin County Jail Oversight Board and its municipal policymakers were aware of and deliberatively indifferent to Warden Briggs' actions. An interrogatory targeted at discovering information related to the Dauphin County Jail Oversight Board's awareness of Warden Briggs' conduct and Warden Briggs' reasons for imposing disciplinary measures during the Relevant Period would have been more appropriate because it would have related to Plaintiffs' specific claim.

### 2. Relevance to the Reasonableness of Defendants' Deprivations

Plaintiffs state that it is "well-established that plaintiffs are entitled to discovery material related to the reasonableness and custom of a defendant's actions in prisoner civil rights cases." (Doc. 76 at 20).

Preliminarily, Plaintiffs must assert claims that require them to show that Defendants' actions were unreasonable or require Defendants to justify their actions as reasonable for Plaintiffs' requested information to be "relevant to the reasonableness of Defendants' deprivations." *See Toth v. California Univ. of Pennsylvania*, No. CIV.A. 09-1692, 2011 WL 2436138, at *2 (W.D. Pa. June 15, 2011) ("The complaint and its claims circumscribe the scope of discovery. It is against these claims that discoverability as to each discovery request made.").

Plaintiffs' Fourteenth Amendment Deprivation of Basic Needs claim, (doc. 1 at 33, ¶¶ 263-270), requires Plaintiffs to show that Defendants' drug interdiction and suppression efforts were unreasonable. To succeed on their Deprivation of Basic Needs claim, Plaintiffs must show that Defendants' alleged deprivations were not "reasonably related" to the purpose of drug suppression. *See Union*

*County Jail Inmates v. Di Buono*, 713 F.2d 984, 992 (3d Cir. 1983). Accordingly, the issue is whether the extensive drug and staff related information that Plaintiffs request is relevant to whether Defendants' alleged deprivations were reasonably related to drug suppression and interdiction.

Plaintiffs argue that their requested drug and staff related information is relevant because it might reveal "what the Defendants knew in regard to how drugs were entering the facility, what actions had been taken in the past, whether those actions were effective, and whether other housing units were being treated similarly as the RHUs." (*Id.* at 21-22). As an example, Plaintiffs reason that the existence of an effective prior protocol or practice for eliminating drug use would be relevant to assessing the reasonableness of Defendants' actions during the Relevant Period. (*Id.* at 22). Moreover, Plaintiffs claim that information revealing that Defendants knew of their employees smuggling drugs, but took no action, also bears directly on whether Defendants acted reasonably toward RHU inmates during the Relevant Period. (*Id.*).

Defendants counter that Plaintiffs' requests are disproportionate to the relevant question of whether the specific conditions alleged during the Relevant Period were reasonably related to legitimate penological and safety concerns. (Doc. 80 at 17). Specifically, Defendants charge that Plaintiffs' request for drug information is disproportionate because it would be burdensome for Defendants to search for six-years' worth of information such as "any report of medication in an inmate's possession that was not prescribed to him/her." (*Id.* at 17-18). Defendants rely on the same Middle District prisoner discovery cases that they cite in support of their argument against providing Plaintiffs inmate names and grievances to emphasize that Plaintiffs should not receive this drug related information because of the security-sensitive nature of a correctional setting. (Doc. 80 at 19-20).

In reply, Plaintiffs state that they "only request evidence of other drug incidents to ascertain the validity of Defendants' rationale, namely, that the inhumane measures they employed were necessary to address drug issues in the DCP." (Doc. 84 at 13). Further, Plaintiffs insist that Defendants' narrower alternatives ignore the fact that

Plaintiffs' claims "require a showing of pattern, practice, custom, and/or prior instances of misconduct." (*Id.*).

Plaintiffs' complaint alleges that inmates in the RHUs were allegedly smoking synthetic marijuana "principally because prison staff brought contraband into the facility." (Doc. 1 at ¶¶ 1-2). Plaintiffs claim that DCP officials punished the inmates in the RHUs rather than disciplining their own staff. (*Id.* at ¶¶ 3-4). It appears that the theory of Plaintiffs' Fourteenth Amendment Deprivation of Basic Needs claim is that Defendants' actions were unreasonable in relation to any legitimate government purpose because Defendants punished RHU inmates instead of supervising prison staff. (*See Id.* at ¶ 266). Accordingly, Plaintiffs should be able to discover some information related to instances of staff misconduct relating to drugs at the DCP because the information is relevant to proving that Defendants' measures during the Relevant Period were unreasonable and not related to the legitimate government purpose of drug suppression.

Defendants are correct that Plaintiffs' requested information is overbroad. Identifying "any and all drugs" over a six-year period is overly broad and unduly burdensome on Defendants. Plaintiffs are only

entitled to discover identities of all illegal drugs discovered and reported in DCP during and one year prior to the Relevant Period. Information accompanying each illegal drug identified (synthetic marijuana, for example) should include: the number of times it was discovered, the date(s) for each time it was discovered, and the source of the drug. The source of the drug should not reveal a specific staff member or inmate; the information should be general ("inmate" or "staff," for example).

Plaintiffs are not entitled to the identities of DCP staff members who were found to have participated, facilitated, or conspired in the import of drugs into the DCP. Instead, Plaintiffs are only entitled to generalized staff information during and one year prior to the Relevant Period. This means that Defendants need only provide an anonymized list of incidents, during and one year prior to the Relevant Period, involving staff members in possession of illegal drugs in the DCP. Defendants must identify each incident in a way that does not reveal the identity of staff members involved. For each incident, Defendants must identify the date each incident took place, the rank or title of the employee involved, whether disciplinary measures were taken against the employee following the incident, and if the employee was

terminated because of the incident. It is stressed that this list must not reveal information identifying any particular employee.

**3. Relevance to Defendants' Defenses**

Plaintiffs argue that they can discover information related to alleged DCP employee drug smuggling and findings of illicit drugs in the DCP because the information bears on Defendants' defenses or justifications. (Doc. 76 at 22). Specifically, Plaintiffs assert that they can discover information to test the validity of Defendants' defense "that [Defendants'] actions were justified because of alleged drug use in DCP." (Doc. 76 at 23). Defendants asserted as an affirmative defense in their Answer: "Any and all actions taken by DCP staff were undertaken in furtherance of legitimate penological interests, including but not limited to maintaining institutional order, discipline, and safety and security of all incarcerated individuals and staff within the facility." (Doc. 53 at 147).

Defendants counter that "Rule 26 does not permit Plaintiffs to rummage through six years of institutional drug incidents and staff investigations merely because contraband may be generally referenced in Defendants' explanation." (Doc. 80 at 17). According to Defendants,

the scope of the information that Plaintiffs request goes beyond the relevant question of "whether the specific conditions alleged during the [Relevant Period] were reasonably related to legitimate penological and safety concerns." (*Id.*). Defendants insist that "[t]he issue is not whether contraband may be mentioned somewhere in Defendants' explanation of RHU operational decisions." (*Id.* at 19). Instead, they frame the issue as "whether Plaintiffs are entitled to institution-wide, multi-year drug discovery unrelated to the named Plaintiffs, unrelated to the RHU during the alleged deprivation period, unrelated to any specific pleaded event, and unrelated to any identified decisionmaker." (*Id.*).

As Rule 26 allows, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "It is plain that [a] plaintiff is entitled to discovery relevant to [a defendant]'s defenses." *Groark v. Timek*, No. CIV. 12-1984 RBK/JS, 2014 WL 3556367, at *4 (D.N.J. July 18, 2014).

Just as Plaintiffs are entitled to information regarding the reasonableness of Defendants' deprivations, Plaintiffs are entitled to

information related to Defendants' asserted defenses. Defendants asserted in their answer that DCP staff acted in furtherance of legitimate penological interests. Accordingly, Plaintiffs are entitled to discover information pertaining to the validity of Defendants' defense that Defendants' actions were in furtherance of legitimate penological interests.

But this basis does not entitle Plaintiffs to the entirety of the information that their drug and staff related interrogatories request. The discovery granted to Plaintiffs above for Plaintiffs to prove the reasonableness of Defendants' deprivations accomplishes this goal. *See supra* pp. 50-51.

### D. Two Years of Processes, Protocols, and/or Policies Concerning the Use of Force and Disciplinary Decisions

Plaintiffs request that Defendants identify:

> [A]ll written DCP processes, protocols, and/or policies, in place from January 2023 to January 2024, concerning use of force and disciplinary action.

(Doc. 75-2 at 3).

Plaintiffs request that Defendants produce:

> [A]ny and all DCP written policies, General Orders, training materials, or other written guidance concerning the following topics from January 2020 to present:
> - DCP Staff and their interactions with incarcerated persons as it relates to their job roles;
> - DCP Staff carrying out duties of care;
> - Requirements under statutory law and/or common law;
> - Use of solitary confinement;
> - Electronic and physical mail;
> - Placement decisions and determinations concerning where incarcerated persons are kept during their time in DCP, including decisions to transfer persons inside of DCP to and from different cell units or blocks;
> - and, use of force and use of force reporting.

(Doc. 75-2 at 3-4).

Plaintiffs assert that these requests "bear directly on central constitutional issues, are essential to their resolution, and impose minimal burden." (Doc. 76 at 24). Plaintiffs maintain that these requests are proper because they are time-bound and sufficiently tailored to the constitutional values that they allege. (*Id.*). Plaintiffs argue that their request for policies before, during, and after the Relevant Period are appropriate because the policies "may reveal whether Defendants modified their practices in response to known issues, including emergent concerns such as contraband or institutional security." (*Id.* at 25). Without these policies, Plaintiffs claim that they

"cannot meaningfully access whether the challenged conditions were authorized, tolerated, or contrary to official standards." (*Id.* at 25-26). Plaintiffs also state that their requests are not unduly burdensome because Defendants are expected to maintain policies and procedures in an organized and retrievable format in the ordinary course of business; production of the policies imposes a minimal burden relative to the probative value of the policies to Plaintiffs; and production of the policies remedies the asymmetry of information between the parties. (*Id.* at 26-27).

Defendants contend it goes against Rule 26 for Plaintiffs to receive "every prior or subsequent policy, draft, protocol, practice document, disciplinary directive, or security procedure across a year long-period" because Plaintiffs have not shown a specific, proportional connection to a claim or defense. (Doc. 80 at 22). Defendants emphasize that "the correctional context makes Plaintiffs' request especially improper," citing the familiar Middle District cases in which courts denied inmate discovery requests due to the privacy and security concerns associated with allowing inmates to possess sensitive prison information. (*Id.* at 23-24). Defendants object to disclosing sensitive materials without

appropriate safeguards in place. (*Id.* at 24). Defendants state that, at most, Plaintiffs' requests "should be limited to nonprivileged written policies actually in effect during the [Relevant Period], directly governing the specific RHU conditions pleaded in the Complaint, and produced only subject to redaction and a protective order restricting use, copying, dissemination, and disclosure of security-sensitive operational content." (*Id.* at 25).

In reply, Plaintiffs emphasize that "[i]f there was a drug problem over the course of several years warranting the kind of deprivations that Defendants enacted, then it would be directly relevant to see what policy changes Defendants made in response to each of those incidents, if any." (Doc. 84 at 14).

Plaintiffs' request for "DCP written policies, General Orders, training materials, or other written guidance" is reasonable and understandable. Even Defendants concede that "[p]olicies actually in effect during the [Relevant Period] and directly tied to the alleged conditions may be discoverable." (Doc. 80 at 22). But plaintiffs are not entitled to all their specific sub requests, some of which are overbroad,

lacking in precision, and almost impossible for a court to evaluate or a defendant to respond to.

Defendants' objections to Plaintiffs' request for policies in general will be addressed first before the court evaluates Plaintiffs' specific sub requests. Generally, Defendants' object to Plaintiffs' request for prior and subsequent policies that were not in effect during the Relevant Period, the relevance of Plaintiffs' requests, and the security-sensitive nature of some of Plaintiffs' sub requests.

The parties disagree whether Plaintiffs are entitled to policies (and other similar materials) that were not in effect during the Relevant Period. Plaintiffs' argument that prior and subsequent policies are relevant to determining whether Defendants made policy changes in response to a possible longstanding drug problem is persuasive. (Doc. 84 at 14). The evolution of certain policies may be relevant to Defendants' knowledge of or response to incidents at issue in this litigation. Further, the information is relevant to Plaintiffs' need to test the validity of Defendants' possible defense that a legitimate penological safety concern necessitated Defendants' response during the Relevant Period. Accordingly, Plaintiffs are entitled to some of

Defendants' prior and subsequent policies that were not in effect during the Relevant Period.

Plaintiffs' requests are also relevant to Plaintiffs' specific claims. Plaintiffs' general request for policies is relevant to Plaintiffs' municipal liability claim. As Plaintiffs note, "institutional policies and practices lie at the heart of the constitutional inquiry." (See Doc. 76 at 24). Indeed, "[t]o sustain a *Monell* municipal liability claim a plaintiff must 'identify a municipal 'policy' or 'custom' that caused the plaintiff's injury' to prevail." *Balliet v. Luzerne Cnty.*, No. 3:22-CV-02032, 2024 WL 2275252, at *6 (M.D. Pa. May 20, 2024) (quoting *Bd. Of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997)). Plaintiffs also tie some of their sub requests to policies regarding Defendants' measures during the Relevant Period that are relevant to Defendants' defense that they acted to respond to penological safety concerns. Plaintiffs' request for policies in general is clearly relevant to both Plaintiffs' claims and Defendants' possible defense.

Defendants' concerns about institutional security are significant, but not a total bar to Plaintiffs' request for some policies. In a case like this involving inmate plaintiffs "there are certain internal procedures

which must be protected from disclosure to the public" in order to secure the prison facility. *Lyons v. Beard*, No. CIV 3:CV-07-2278, 2010 WL 890009, at *4 (M.D. Pa. Mar. 8, 2010). As Defendants note, multiple district courts within the Third Circuit have refused to permit inmate-plaintiffs to discover prison policies and procedures because the materials reveal privileged and confidential information with the potential to jeopardize an institution's safety and security. *See*, *e.g.*, *McDowell v. Litz*, No. CIV. 1:CV-08-01453, 2009 WL 2058712, at *3-4 (M.D. Pa. July 10, 2009), *aff'd*, 419 F. App'x 149 (3d Cir. 2011) (denying plaintiff's request for specific prison policies because the policies would reveal privileged and confidential information and jeopardize prison safety and security); *Houser v. Pa. Dep't of Corr.*, No. 13-CV-1068, 2015 WL 757552, at *6 (W.D. Pa. Feb. 23, 2015) (denying request for policy that would disclose the ins and outs of prisoner transport because the release of such policy could pose a danger to staff and to the public); *Palmer v. York Cnty.*, No. 1:20-CV-539, 2022 WL 4120261, at *4 (M.D. Pa. Sept. 9, 2022) (counseled case in which the court agreed with defendants' decision to designate policies as confidential on institutional

security grounds because requests for information related to security procedures can raise security concerns).

This case, however, is different than most of these cases because Plaintiffs are counseled and the Protective Order is in place. As noted *supra*, there are differing considerations in releasing information related to institutional security to a counseled plaintiff compared to a *pro se* plaintiff. In addition to the presence of counsel here, there is also an active protective order in place. The Protective Order mitigates some of Defendants' security concerns because it is "narrowly tailored to protect confidential, private, and security sensitive information" and states that "Confidential/Proprietary Documents . . . may be used only in connection with this action." (Doc. 63 at 2-3; Doc. 65).

While Defendants' objections do not bar Plaintiffs' general request for policies, Plaintiffs are not entitled to *all* their specific sub requests.

Plaintiffs' request for "any and all DCP written policies, General Orders, training materials, or other written guidance concerning . . . DCP Staff and their interactions with incarcerated persons as it relates to their job roles" is vague and overbroad. This request can be interpreted to cover all policies. Further, Plaintiffs' request for "any

and all DCP written policies, General Orders, training materials, or other written guidance concerning . . . DCP Staff carrying out duties of care" is vague and difficult for the court to evaluate. The same can be said for Plaintiffs' request for "any and all DCP written policies, General Orders, training materials, or other written guidance concerning . . . Requirements under statutory and/or common law."

Plaintiffs' request for "any and all DCP written policies, General Orders, training materials, or other written guidance concerning . . . Placement decisions and determinations concerning where incarcerated persons are kept during their time in DCP, including decisions to transfer persons inside of DCP to and from different cell units or blocks" is denied because its relevance to Plaintiffs' claims is outweighed by the potential security implications for Defendants. Internal information involving inmate placement decisions and determinations concerning where incarcerated persons are kept "may gravely impair institutional security." *Robinson v. Wetzel*, No. 3:11-CV-2194, 2013 WL 5202489, at *3 (M.D. Pa. Sept. 13, 2013). In *Robinson*, the court denied the plaintiff's request for "prison manuals, and pre-decisional documents relating to inmate placement decisions" because of the "substantial

security concerns, and staff safety issues, which may arise in this setting if these records were to be released." *Id.* While the presence of the Protective Order and counsel might alleviate concerns associated with providing an inmate plaintiff de-identified grievances or less sensitive prison policies, both factors do not mitigate the security concerns involved with this specific request. *See Paluch*, 2008 WL 2785638 at *4 (denying plaintiff's request for confidential prison procedures manuals related to facility security despite the presence of counsel).

In sum, for this multi-layered request, Plaintiffs are entitled to DCP written policies, General Orders, training materials, or other written guidance from January 2020 to present that are related to: the use of solitary confinement, inmates' access to electronic and physical mail, use of force, and use of force reporting. Plaintiffs are also entitled to DCP written policies, General Orders, training materials, or other written guidance from January 2020 to present that are publicly accessible.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiffs' motion to compel will be granted in part and denied in part consistent with the above.

An appropriate Order is attached.

Dated: September 30, 2026

**/s/ Leo A. Latella**
LEO A. LATELLA
United States Magistrate Judge